#10
PWB
3-7-02

D-1086

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

In re Application of                )

     **Harold V. Putman**      )     Art Unit:  **2162**

                                )

Serial No.:   **09/233,249**      )     Patent Examiner

                                )       **Jeffrey D. Carlson**

Filed:       **January 19, 1999**    )

                                )

For:        **Automated Transaction Machine** )

         **And Method**

Board of Patent Appeals and Interferences
Commissioner for Patents
Washington, D.C. 20231

## BRIEF OF APPELLANT'S PURSUANT TO 37 C.F.R. § 1.192

Sir:

    The Appellant hereby submits his Brief pursuant to 37 C.F.R. § 1.192, in triplicate,

concerning the above-referenced Application.

## REAL PARTY IN INTEREST

    The Assignee of all right, title and interest to the above-referenced Application is

Diebold, Incorporated, an Ohio corporation.

1

## RELATED APPEALS AND INTERFERENCES

Appellant believes that there are no related appeals or interferences pertaining to this

matter.

## STATUS OF CLAIMS

Claims 1-56 are pending in the Application.

Claims 31-34 were rejected under 35 U.S.C. § 102(b) as being anticipated by Bosak.

Claims 12-22, 28-30, 41 and 43 were rejected under 35 U.S.C. § 103(a) as being

unpatentable over Bosak.

Claims 1-11, 23-27, 33-40, 42 and 44 were rejected under 35 U.S.C. § 103(a) as being

unpatentable over Rivett-Carnac in view of Bosak.

Claims 45-49 and 51 were rejected under 35 U.S.C. § 103(a) as being unpatentable over

Zeanah, et al. ("Zeanah").

Claims 50 and 52-56 were rejected under 35 U.S.C. § 103(a) as being unpatentable over

Zeanah in view of Bosak.

Claims 21, 22, and 41 were rejected under 35 U.S.C. § 112, second paragraph.

Claims 45 and 47 were objected to pursuant to 35 U.S.C. § 132.

These rejections were the only rejections present in the Office Action ("Action") dated

October 19, 2001, which was made Final.  Appellant appeals the final rejection of claims 1

through 56, inclusive.  Copies of all pending claims are included in the attached Appendix.

## STATUS OF AMENDMENTS

A final rejection was made October 19, 2001. No amendments to the claims were requested to be admitted after the final rejection.

## SUMMARY OF INVENTION

Overview of the Invention

One of the embodiments of the present invention is directed to an automated transaction machine such as an automated teller machine (ATM) (3) (Figure 1) in which the hardware specific software components are decoupled from the human interface software components. As shown schematically in Figure 2, the ATM includes a computer (10) connected to a plurality of transaction function devices (30) which may include for example a cash dispenser and a depository. The ATM further includes a transaction machine interface software component (TMI) (18) operative in the computer and at least one event processor software component (16) operative in the computer. The TMI is operative responsive to command instructions (22) in one or more documents (20) to cause the computer to generate a user interface output through an output device (23) of the ATM. In addition, the TMI is operative to cause an event to be directed to an event processor responsive to instructions (221) (Figure 4) in a document (2) which specify the particular event processor to send the event. The event processor is operative to process the event and in response thereto control the operation of the ATM. For example, the event processor is operative responsive to the event to selectively cause the TMI to change the user

3

interface output generated by the computer. Further, the event processor is operative to cause the computer to operate the transaction function devices.

In an embodiment of the invention, the document includes a text-based document with command instructions conforming to an XML or other markup language format. Also a single document (20) may include a plurality of sets of XML tags (241-243) (Figure 10) which specify different user interface screens or outputs (1591-1593). Such sets of XML tags are delineated by page command instructions such as page tags (2291-2293) which segregate and identify the sets of XML tags. Each set of XML tags delineated by page tags may each include a command instruction (2211-2213) which specifies a specific event processor (161-163) that is operative to process events for the user interface screen generated from the corresponding set of XML tags.

Also in an embodiment of the invention, the TMI includes an API (28) (Figure 6) with a plurality of API subroutines or functions (281-286). The event processor is operative to call the API functions of the TMI to selectively retrieve information from the TMI related to the user interface output, and to cause the TMI to change features of the user interface output. The event processor is operative to process events and cause transaction function devices to operate responsive to the information retrieved from calls to the API functions of the TMI.

In further embodiments, the ATM may include multiple sets of output devices and input devices. The TMI is operative responsive to the same set of command instructions in a document (203) (Figure 9) to cause at least one computer of the ATM to generate user interface screens (1591, 1592) through each output device (141, 142) with different visual features (1521, 1522) responsive to the types of the output devices and the types of the input devices associated

4

with the output devices. Such different visual features may include different visual screen

elements such as buttons or other visual objects which are selectable by the different types of

input devices (page 19, line 17 to page 20, lines 3).


## CONCISE STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The questions presented in this appeal are:

1)      Whether Bosak teaches every limitation and relationship recited in pending claims
31-34 so as to anticipate these claims pursuant to 35 U.S.C. § 102(a) by Bosak.

2)      Whether Bosak teaches or suggests every limitation and relationship in claims 12-
22, 28-30, 41 and 43 so as to render these claims obvious pursuant to 35 U.S.C. §
103(a).

3)      Whether Rivett-Carnac in view of Bosak teaches or suggests every limitation and
relationship in claims 1-11, 23-27, 33-40, 42 and 44 so as to render these claims
obvious pursuant to 35 U.S.C. § 103(a).

4)      Whether Zeanah teaches every limitation and relationship recited in pending
claims 45-49 and 51 so as to render these claims obvious pursuant to 35 U.S.C. §
103(a).

5)      Whether Zeanah, in view of Bosak, teaches every limitation and relationship
recited in pending claims 50 and 52-56 so as to render these claims obvious
pursuant to 35 U.S.C. § 103(a) over Zeanah in view of Bosak.

6)    Whether Appellant's claims 21, 22, and 41 are indefinite under 35 U.S.C. § 112,

second paragraph for failing to particularly point out and distinctly claim the

subject matter which applicant regards as the invention.

7)    Whether Appellant's claims 45 and 47 are not supported by the Specification

under 35 U.S.C. § 132.

## GROUPING OF CLAIMS

Each of Appellant's claims, 1-56 each constitute a separate group.  Each of claims 1-56

recites at least one element, combination of elements, or step not found or suggested in the

Bosak, Rivett-Carnac, and Zeanah references, which patentably distinguishes the claims.

The rejected claims include nine independent claims (claims 1, 12, 23, 28, 31, 33, 45, 47,

and 52).  Claims 2-11 depend from claim 1.  Claims 13-22 and 41 depend from claim 12.  Claims

24-27 depend from claim 23.  Claims 29, 30 and 42 depends from claim 28.  Claims 32, 43, and

44 depend from claim 31.  Claims 34-40 depend from claim 33, Claim 46 depends from claim

45.  Claims 48-51 depend from claim 47.  Claims 53-56 depend from claim 52.  All of the

rejected claims 1-56 are reproduced in the Appendix.

## ARGUMENT

In the Action from which this appeal has been taken, all the pending claims (1-56) were

rejected pursuant to: 35 U.S.C. § 102(b) with respect to Bosak;  35 U.S.C. § 103(a) with respect

6

Bosak alone, Rivett-Carnac in view of Bosak, Zeanah alone, and Zeanah in view of Bosak; 35 U.S.C. § 112, second paragraph; or 35 U.S.C. § 132.

Appellant traverses the rejections under Bosak, based on the Bosak reference not being prior art. Further, Appellant traverses all of the rejections on the grounds that Appellant's claims recite steps, features, and relationships which are neither disclosed nor suggested in the prior art, and because there is no teaching, suggestion, or motivation cited so as to produce Appellant's invention. Also, Appellant traverses the rejections on the grounds that all of the claims are supported by the Specification and all of the claims particularly point out and distinctly claim the subject matter which Appellant regards as his invention.

**The Applicable Legal Standards**

Anticipation pursuant to 35 U.S.C. § 102 requires that a single prior art reference contain all the elements of the claimed invention arranged in the manner recited in the claim. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548, 220 USPQ 193, 198 (Fed. Cir. 1983).

Anticipation under 35 U.S.C. § 102 requires in a single prior art disclosure, each and every element of the claimed invention arranged in a manner such that the reference would literally infringe the claims at issue if made later in time. *Lewmar Marine, Inc. v. Barient, Inc.*, 822 F.2d 744, 747, 3 USPQ2d 1766, 1768 (Fed. Cir. 1987).

Before a claim may be rejected on the basis of obviousness, the Patent Office bears the burden of establishing that all the recited features of the claim are known in the prior art. This is

7

known as *prima facie* obviousness.  To establish *prima facie* obviousness, it must be shown that all the elements and relationships recited in the claim are known in the prior art.  MPEP § 2142.

Absent a showing of a teaching, suggestion, or motivation to produce a claimed combination, an obviousness rejection is not proper.  *Panduit Corp. v. Denison Mfg. Co.*, 810 F.2d 1561, 1568, 1 USPQ2d 1593 (Fed. Cir. 1987).  *In re Newell*, 891 F.2d 899, 901, 902, 13 USPQ2d 1248, 1250 (Fed. Cir. 1989).

The teaching, suggestion, or motivation to combine the features in a prior art reference must be clearly and particularly identified in such prior art to support a rejection on the basis of obviousness.  It is not sufficient to offer a broad range of sources and make conclusory statements.  *In re Dembiczak*, 50 USPQ2d 1614, 1617 (Fed. Cir. 1999).  If the Office does not produce a *prima facie* case of obviousness, then the Appellant's are under no obligation to submit evidence of nonobviousness.  MPEP § 2142.

It is respectfully submitted that the cited references do not anticipate the pending claims because the claims specifically recite steps, features and relationships which are not disclosed or suggested by the references.  Further, it is respectfully submitted that the pending claims are not obvious in view of the cited references.  These references do not disclose all of the steps, features and relationships recited in the claims, and there is no showing of a teaching, suggestion or motivation in these references to produce Appellant's claimed combination.

### Bosak

Bosak is directed to a discussion of the XML language. However, Bosak is not prior art. The Bosak reference appears to be an electronic or Internet publication retrieved from the URL:

**http://ibiblio.org/pub/sun-info/standards/xml/why/xmlapps.htm.**

Prior art disclosure on the Internet or on an online database can only be considered to be publicly available as of the date the item was publicly posted. As indicated in MPEP § 2128, "If the publication does not include a publication date (or retrieval date), it cannot be relied upon as prior art under 35 U.S.C. 102(a) or (b)."

In the first Office Action dated May 23, 2001, the Office asserted that a "Last revised" date of "1997.03.10." in the text of Bosak corresponds to a publication date. However, the Bosak reference does not indicate that this "Last revised" date is a publication date or a retrieval date. In the second Office Action dated October 19, 2001, the Office asserts that a "Last Modified" date of 3/10/1997, associated with the Bosak reference, corresponds to a "posting (and therefore, publication) date." Appellant disagrees.

As shown in the "Page Info" printouts attached to the Action, the date associated with the Bosak HTML file is labeled "Last Modified". Such a "Last Modified" date corresponds to a date that someone has associated with the Bosak HTML file. Just because the date is associated with the file does not mean it is accurate. The Office has produced no evidence which can be used to establish when the Bosak HTML file was actually created or changed.

The "Last Modified" date is also not a publication date or a retrieval date, and therefore is not evidence that the Bosak HTML file was posted or publicly available on 3/10/1997. For

9

example, the URL where the Bosak reference is now located may not have even existed on the 3/10/1997 date the Office asserts that the Bosak HTML file was created or last modified.  Even if the Bosak file existed on 3/10/1997 (and there is no evidence that it did), it may have not been publicly accessible.  The Office has provided no evidence to corroborate that the URL associated with the Bosak HTML file was publicly available prior to Appellant's priority date of October 19, 1998 and filing date of January 19, 1999

In addition, the web site where the URL is located, suggests that the URL did not exist in its present form prior to May 24, 1999, which is after Appellant's priority and filing dates.  A directory listing of the files currently found at the URL where the Bosak reference is located can be publicly displayed by pointing a browser to:

**http://www.ibiblio.org/pub/sun-info/standards/xml/why/**

This URL corresponds to the URL of the Bosak reference without the Bosak HTML file name: "xmlapps.htm".  A copy of the web page associated with this URL is attached in the Appendix.

This directory listing displays the "Last Modified" file date associated with each of the files in this directory including the "Last Modified" file date of the Bosak reference.  One of the entries in the directory listing corresponds to the "Parent Directory" for the portion of the URL named "/xml/".  The "Last Modified" date for this portion of the URL is May 24, 1999 which is after Appellant's priority and filing dates.   Thus, if the Office is relying on "Last Modified" dates to establish when the Bosak reference was posted, the date for the "/xml/" directory indicates that the Bosak reference was not posted at the present URL until May 24, 1999.

The inconsistencies between the "Last Modified" dates for portions of the URL and the Bosak HTML file further indicate that such dates cannot be relied upon to establish creation or publication dates. Such dates are readily falsified, not capable of corroboration and cannot be used to establish prior art status. Nothing of record indicates or in any manner establishes that the Bosak document existed, was posted on the Internet and publicly available as of the purported revision or last modified date of 3/10/1997.

The Office purports to show by way of example that uploading a file to a web site establishes its "Last Modified" date. Appellant disagrees. Transferring an HTML file to a specific directory or URL on a web server may or may not change its "Last Modified" date depending on the method used to transfer or copy the file. For example, copying a file on a web server from one directory to another directory using a standard Unix/Linux command such as "cp" or a DOS command such as "copy" will not change the "Last Modified" or file date associated with an HTML file.

As the Office has provided no evidence to show how the Bosak reference was transferred to the web site associated with the URL of Bosak, the Office has failed to establish that a "Last Modified" date for the Bosak reference corresponds to a publication date or even that the Bosak reference existed as of the date associated with the file. Furthermore, even if the uploading of the Bosak reference to a web site did establish its "Last Modified" date, such an occurrence does not prove that the URL associated with the Bosak reference was publicly available as of the "Last Modified" date. As a result, the Office has not met its burden of showing that the Bosak reference is prior art. As rejections of claims 1-44, 50, and 52-56 under 35 U.S.C. § 102(b) and

11

35 U.S.C. § 103(a) in the Action were based fully or in part on the Bosak reference, the rejections

of claims 1-44, 50, and 52-56 a should be withdrawn on this basis.

### Rivett-Carnac

Rivett-Carnac is directed to a set of library components and transaction capture

applications for developing a "dealing room system" (page 126, column 1).  Rivett-Carnac

discusses an architecture or framework which defines a set of classes, available as components

for the developer to implement a transaction capture process.  In general the framework separates

the GUI interface (presentation layer) and business rules.  Programmers can use the framework

components as the basis for developing further reusable components.

### The Zeanah Reference

Zeanah et al. ("Zeanah") is directed to a system and method for delivering financial

services.  The disclosure of Zeanah (both the patent and the provisional application) is

incomprehensible due to lack of details concerning operation of the system.  Due to Zeanah's

lack of a disclosed operation, Appellant's has been required to speculate as to how the Zeanah

system could be made to operate.  Therefore, the description of Zeanah herein or any comments

thereto shall not be construed as agreement or an admission by Appellant that the Zeanah system

is capable of operation or of achieving any of the functions carried out by Appellant's system.

Zeanah's arrangement appears to have a delivery system (12), intermediate plural remote

devices (14, 16, 18, 20, 24) and other computer data systems (e.g., a bank's internal computer

system).  Zeanah requires that all of the remote devices (including ATMs) communicate directly through the delivery system (12) in order to provide financial services to the remote devices (Figure 1; col. 3, lines 63-67; col. 4, lines 54-56; col. 5, lines 44-60; col. 29, lines 20-35). Zeanah's delivery system (12) acts like a host server.  The remote devices pass along input data to the delivery system (12) which then performs services on behalf of the remote devices.

## Claims 31-34 Recite Features Not Found in Bosak

In the Action claims 31-34 were rejected under 35 U.S.C. § 102(b) as being anticipated by Bosak.  These rejections are respectfully traversed.  Appellant's response to these rejections is based on the Office's referenced interpretations of Bosak.  Thus, any change in the Office's interpretation of this reference shall constitute a new ground of rejection.

As indicated previously, Appellant traverses these rejections on the grounds that Bosak is not prior art.  In addition Appellant traverses these rejections on the grounds that the Bosak reference does not contain all the steps, features, and relationships of the claimed invention arranged in the manner recited in the claims.  The features recited in Appellant's claims patentably distinguish over the Bosak reference.

It is respectfully submitted that Bosak does not anticipate the pending claims because the claims specifically recite features and relationships which are not disclosed or suggested by Bosak.

13

## Claim 31

Claim 31 is an independent claim directed to a method of operating an automated transaction machine. The claim recites: a) operating a computer in the machine to receive at least one document; b) operating the computer to receive data in at least one style sheet; and c) providing an output through at least one visual output device on the machine responsive to operation of the computer. Claim 31 further recites that the at least one component of the output is produced responsive to the document, and at least one visual attribute of the component is produced responsive to the style sheet.

The Action alleges that Bosak teaches the basics of XML and style sheets. However, the Action does not show where Bosak discloses the elements and steps specifically recited in claim 31. For example claim 1 recites operating a computer in an automated transaction machine. Bosak does not disclose or suggest an automated transaction machine. Claim 31 recites operating the computer in the automated transaction machine to receive a document. Bosak does not disclose or suggest a computer in an automated transaction machine that receives a document. Claim 31 also recites operating the computer in the automated transaction machine to receive a style sheet. Bosak does not disclose or suggest a computer in an automated transaction machine that receives a style sheet. Claim 31 further recites providing an output through a visual output device on the automated transaction machine where at least one component of the output is produced responsive to the document, and at least one visual attribute of the component is produced responsive to the style sheet. Bosak does not disclose or suggest providing an output

on an automated transaction machine with components and visual attributes that are produced

response to a document and a style sheet.

The Action asserts that the claims do not positively recite an automated transaction

machine and that the claims only mention an automated transaction machine in the preamble.

Appellant disagrees. Claim 31 specifically recites the steps: "operating a computer in the

**machine** to receive at least one document" and "providing an output through at least one visual

output device on the **machine** . . ." (emphasis added). The phrase "the machine" in this portion

of the claim has antecedent basis with respect to the phrase "an automated transaction machine"

recited in the preamble. Thus claim 31 recites the element of an automated transaction machine

in the method steps which comprise the body of the claim.

Further, the Specification indicates at page 1, lines 9-23, that a common type of

automated transaction machine used by consumers is an automated teller machine ("ATM").

ATMs enable customers to carry out banking transactions such as dispensing of cash, making

deposits, transferring funds between accounts, payment of bills and account balance inquiries.

The Specification further indicates that other automated transaction machines may allow

customers to charge against accounts or to transfer funds. Other types of automated transaction

machines may print or dispense items of value such as coupons, tickets, wagering slips,

vouchers, checks, food stamps, money orders, scrip or travelers checks. Furthermore, the

Specification states that "For purposes of this disclosure an automated transaction machine shall

encompass any device which carries out transactions including transfers of value."

15

The Action alleges that "value" in this definition is quite broad and does not require currency. On this basis, the Action alleges that computer instructions when processed can be taken to be "transactions" and thus a processor which carries out instructions is taken to be an automated transaction machine. Appellant disagrees.

The Specification defines an automated transaction machine as a device which carries out transactions including transfers of value. The use of the word "including" indicates that the automated transaction machine may perform other transactions which presumably do not include value. However, for purposes of Appellant's disclosure an automated transaction machine is a device that must carry out at least some transactions including transfers of value.

Thus, a generic computer, as described in the Bosak reference, which is not disclosed as being an automated transaction machine, and is not disclosed as carrying out transactions including transfers of value, cannot be characterized as the automated transaction machine recited in the claims. If Appellant intended claim 31 to recite a generic computer, Appellant would not have recited "An automated transaction machine" in the preamble and "the machine" throughout the body of the claim. Further, claim 31 recites the separate element of "a computer" which is "in the machine". Given the Action's assertion that an automated transaction machine is a computer processor, such a phrase would correspond to reciting a computer in a computer processor. Such an interpretation does not correspond to a logical reading of the claims. Also such an interpretation is not supported by the Specification. Thus, the "automated transaction machine" recited in claim 31 does not read on a generic computer or processor which carries out computer instructions.

16

Bosak does not disclose each and every element of the claimed invention arranged in the manner recited in the claim, as is required to sustain the rejection. Hence, Appellant's claim 31 patentably distinguishes over the Bosak reference. Therefore, it is respectfully submitted that the 35 U.S.C. § 102(b) rejection has been overcome. It follows that claim 32 and claims 43 and 44 which depend from claim 31 are likewise allowable.

**Claim 32**

Claim 32 depends from claim 31. Claim 31 recites computer readable media bearing instructions which are operative to cause at least one computer in the automated transaction machine to cause the machine to carry out the method steps recited in claim 31. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 32 is further allowable on this basis.

**Claim 33**

Claim 33 is an independent claim directed to a method for operating an automated transaction machine. The method comprises: a) generating a user interface responsive to at least one document, at least one input device, and at least one output device; b) outputting the user interface through the output device; c) receiving an input from the input device; d) generating an event responsive to the input and the user interface; e) sending the event to a first event processor responsive to the document; f) modifying the user interface responsive to the event processor; and g) outputting the modified user interface through the output device.

As discussed previously Bosak is not prior art.  Also, Bosak is not directed to the operation of an automated transaction machine.  In addition, Bosak does not disclose or suggest generating a user interface responsive to: 1) a document; 2) an input device; and 3) an output device.  Further, Bosak does not disclose or suggest sending an event to a first event processor responsive to the document.  In addition Bosak does not disclose or suggest modifying the user interface responsive to the event processor and outputting the modified user interface through the output device.

The Action alleges that "event processing" is provided inherently by standard browsers, the programming (event processor) for it is packaged with the browser.  However, Appellant's claim 33 does not recite and Appellant's  Specification does not disclose the "event processing" of "standard browsers".  Rather the Specification discloses a TMI (transaction machine interface) which is a software component that is independent of the event processors.  Bosak does not disclose or suggest the use of separate software components which function as event processors.  Although standard browsers may include integrated event processing for button clicks, such a feature does not imply the inherent existence of separate event processor software components which are sent events responsive to a document.

It is respectfully submitted that Bosak does not disclose or suggest the features and relationships that are specifically recited in claim 33.  As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 33 is allowable for these

18

reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn. It follows that claims 34-40 which depend from claim 33 are likewise allowable.

**Claim 34**

Claim 34 depends from claim 33 and further recites (h) processing the event with the event processor responsive to the user interface. As discussed previously Bosak does not disclose or suggest event processors. Further, Bosak does not disclose or suggest processing an event with an event processor responsive to a user interface. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 34 is further allowable on this basis.

**Claims 12-22, 28-30, 41, and 43 Are Not Obvious Over Bosak**

In the Action claims 12-22, 28-30, 41 and 43 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Bosak. These rejections are respectfully traversed. Appellant's response to these rejections is based on the Office's referenced interpretation of Bosak. Thus, any change in the Office's interpretation of this reference shall constitute a new ground of rejection.

As indicated previously, Appellant traverses these rejections on the grounds that Bosak is not prior art. In addition Appellant traverses these rejections on the grounds that Appellant's claims recite steps, features and relationships which are neither disclosed nor suggested in the prior art, and because there is no teaching, suggestion or motivation cited so as to produce

Appellant's invention.  The features recited in Appellant's claims patentably distinguish over the applied references.

## Claim 12

Claim 12 is an independent claim directed to an automated transaction machine apparatus.  Claim 12 recites that the automated transaction machine apparatus includes a first computer of a first type.  The first computer includes at least one first output device that is operative to provide at least one output to users of the first machine.  The first computer further includes at least one first input device that is operative to receive at least one input from users of the machine.  Claim 12 further recites that the apparatus includes a first transaction function device, first transaction machine interface software and a first instruction document in operative connection with the first computer.  The first transaction function device is operative to carry out a transaction function.  The first instruction document includes at least one command instruction.  Claim 12 also recites that the first computer is operative responsive to at least one first input to the first input device, to cause the first transaction function device to carry out the transaction function.  The first computer is further operative to generate a first output through the first output device responsive to the first input, the first transaction machine interface software and at least one command instruction in the first instruction document.

In rejecting claim 12 as well as claims 13-22, 28-30, 41, and 43, the Action asserts that it would have been obvious to one of ordinary skill at the time of the invention to have provided standard printers and driver software with the types of computers described by Bosak so that

users could make printouts of various screens. The Action asserts that a standard printer is taken to meet Appellant's transaction function device of these claims. The Action also asserts that any software, including print driver software is taken to be an instruction document. The Action further asserts that it would have been obvious to one of ordinary skill at the time of the invention to have employed print driver features to enable the web clients of Bosak to print screens/information. Appellant disagrees.

Claim 12 recites an automated transaction machine. Bosak does not disclose or suggest an automated transaction machine. In addition Bosak does not disclose or suggest an automated transaction machine with a transaction function device that is operative to carry out a transaction function. Further, with regard to the example cited in the Action, Bosak does not disclose or suggest print drivers with features that correspond to the instruction document recited in claim 12.

Bosak does not disclose or suggest an automated transaction machine with a computer that is operative responsive to at least one input to an input device, to cause a transaction function device to carry out the transaction function. Further, Bosak does not disclose or suggest that such a computer of the automated transaction machine is further operative to generate an output through the output device responsive to the first input, a first transaction machine interface software and at least one command instruction in the first instruction document.

It is respectfully submitted that Bosak does not disclose or suggest the features and relationships that are specifically recited in claim 12. As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there

21

is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 12 is allowable for these reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn. It follows that claims 13-22 and claim 41 which depend from claim 12 are likewise allowable.

## Claim 28

Claim 28 is an independent claim directed to an automated transaction machine. Claim 28 recites that the automated transaction machine comprises at least one computer and at least one visual output device in operative connection with the computer in the automated transaction machine. The visual output device is operative to provide outputs to users of the machine. Claim 28 further recites that the automated transaction machine comprises a plurality of documents and at least one style sheet in operative connection with the computer. The computer is operative responsive to at least one of the documents to cause at least one visual output to be produced by the visual output device. Claim 28 also recites that at least one visual feature of the at least one visual output is produced responsive to the at least one style sheet.

As discussed previously, Bosak does not disclose or suggest an automated transaction machine. Further, Bosak does not disclose or suggest an automated transaction machine which includes a style sheet. In addition Bosak does not disclose or suggest an automated transaction machine which is operative to cause a visual output to be produced by a visual output device of the automated transaction machine responsive to a document. Bosak also does not disclose an

22

automated transaction machine with a visual feature of a visual output that is produced responsive to a style sheet.

As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 28 is allowable for these reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection has been overcome. It follows that claims 29-30 and claim 42 which depend from claim 28 are likewise allowable.

## Dependent Claims

Each of the dependent claims depends directly or indirectly from an independent claim, and it is asserted that these dependent claims are allowable on the same basis. Furthermore, each of the dependent claims additionally recites specific features and relationships that patentably distinguish the claimed invention over the applied art. The applied references do not disclose or suggest the recited steps, features and relationships of the dependent claims. There is no teaching, suggestion, or motivation to combine features of the applied references so as to produce the claimed invention. Thus, it is respectfully submitted that these dependent claims are further allowable.

**Claim 13**

Claim 13 depends from claim 12 and recites that the apparatus further comprises a second automated transaction machine. The second automated transaction machine includes a second computer of a second type different from the first type. The second computer includes at least one second output device that is operative to provide at least one output to users of the second machine, and at least one second input device that is operative to receive at least one input from users of the machine. The second automated transaction machine further includes a second transaction function device, second transaction machine interface software, and a second instruction document in operative connection with the second computer. The second transaction function device is operative to carry out the transaction function. The second instruction document is substantially identical to the first instruction document. Claim 13 further recites that the second computer is operative responsive to at least one second input to the second input device to cause the second transaction function device to carry out the transaction function. The second computer is further operative to generate a second output through the second output device responsive to the second input, the second transaction machine interface software and at least one command instruction in the second instruction document.

As discussed previously, Bosak does not disclose or suggest an automated transaction machine. In addition Bosak does not disclose or suggest an apparatus which includes both a first and a second automated transaction machine. Further, Bosak does not disclose or suggest a second automated transaction machine which includes a second transaction function device that is operative to perform the same transaction function as the first transaction function device of

24

the first automated transaction machine. Further, Bosak does not disclose or suggest first and second automated transaction machines which include first and second computers that are operative responsive to substantially identical instruction documents to generate first and second outputs through first and second output devices respectively. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 13 is further allowable on this basis.

## Claim 14

Claim 14 depends from claim 13 and further recites that the first machine of the first type differs from the second machine of the second type in that the first output device comprises a different type of output device than the second output device. Bosak does not disclose or suggest two automated transaction machines which include different types of output devices. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 14 is further allowable on this basis.

## Claim 15

Claim 15 depends from claim 13 and further recites that the first computer of the first type differs from the second computer of the second type in that the first computer includes a different type of operating system than the second computer. Bosak does not disclose or suggest two automated transaction machines which include computers with different types of operating

systems. As nothing in the applied art discloses or suggests this feature, it is respectfully

submitted that the claim is further allowable on this basis.

## Claim 16

Claim 16 depends from claim 13 and further recites that the first computer of the first

type differs from the second computer of the second type in that the first computer is operative to

cause the first transaction function device to carry out the transaction function responsive to a

first input that is different than the second input that is operative to cause the second computer to

cause the second transaction function device to carry out the transaction function.

Bosak does not disclose or suggest two automated transaction machines which carry out

the same transaction function with transaction function devices responsive to different inputs. As

nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim

16 is further allowable on this basis.

## Claim 17

Claim 17 depends from claim 13 and further recites that the first computer of the first

type differs from the second computer of the second type in that the first input device comprises

a different type of input device than the second input device. Bosak does not disclose or suggest

two automated transaction machines which carry out a transaction function with transaction

function devices responsive to inputs from different types of input devices. As nothing in the

26

applied art discloses or suggests this feature, it is respectfully submitted that claim 17 is further allowable on this basis.

## Claim 18

Claim 18 depends from claim 14 and further recites that the first output device includes a character-based display device and the second output device includes a graphical display device. Bosak does not disclose or suggest two automated transaction machines, wherein one has a character based display device and the second output device includes a graphical display device. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 18 is further allowable on this basis.

## Claim 19

Claim 19 depends from claim 17 and further recites that the first input device includes a key and the second input device includes a touch screen. As discussed previously, Bosak does not disclose or suggest two automated transaction machines which carry out a transaction function with transaction function devices responsive to inputs from different types of input devices. Bosak further does not disclose or suggest that the different types of input devices correspond to a key and a touch screen. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 19 is further allowable on this basis.

## Claim 20

Claim 20 depends from claim 12 and recites that the apparatus further comprises event processor software in operative connection with the first computer, wherein the event processor software is operative to cause the first transaction function device to carry out the transaction function responsive to an event, wherein the first transaction machine interface software is operative to generate the event responsive to the first input.

As discussed previously, Bosak does not disclose or suggest an automated transaction machine apparatus with event processor software. In addition Bosak does not disclose or suggest event processor software that is operative to cause a transaction function device to carry out a transaction function responsive to an event. Further, Bosak does not disclose or suggest transaction machine interface software that is operative to generate the event responsive to an input. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that the claim is further allowable on this basis.

## Claim 21

Claim 21 depends from claim 20 and further recites that the first transaction machine interface software includes at least one output indicative function, wherein when the first input is entered, the output indicative function is operative to indicate a value associated with at least one element included in an initial output through the first output device, wherein the event processor software is operative to call the output indicative function and is operative to cause the first

28

transaction function device to operate responsive to the event and the value indicated by the output indicative function.

Bosak does not disclose or suggest transaction machine interface software that includes an output indicative function that is operative to indicate a value associated with an element included in an output presented by the automated transaction machine. Bosak further does not disclose or suggest an automated transaction machine which includes an event processor that is operative to call an output indicative function of transaction machine interface software. Further, Bosak does not disclose or suggest that such an event processor is operative to cause a transaction function device to operate responsive to an event and a value indicated by the output indicative function. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 21 is further allowable on this basis.

**Claim 22**

Claim 22 depends from claim 21 and further recites that the event processor software responsive to the event and the output indicative function is operative to cause the first computer to generate an event response, wherein the first transaction machine software is operative to cause the computer to generate the first output responsive to the event response.

Bosak does not disclose or suggest an automated transaction machine that includes event processor software that is operative to cause a computer to generate an event response, responsive to an event and an output indicative function. In addition Bosak does not disclose or suggest an automated transaction machine that includes transaction machine software that is

29

operative to cause a computer to generate an output responsive to the event response. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 22 is further allowable on this basis.

## Claim 29

Claim 29 depends from claim 28 and recites that the automated transaction machine further comprises at least one input device in operative connection with the computer, wherein the at least one visual feature of the at least one visual output is further produced responsive to the visual output device and the input device.

As discussed previously, Bosak also does not disclose or suggest an automated transaction machine with a visual feature of a visual output that is produced responsive to a style sheet. In addition Bosak does not disclose or suggest that such a visual feature is produced responsive to a visual output device and an input device. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 29 is further allowable on this basis.

## Claim 30

Claim 30 depends from claim 29 and recites that the automated transaction machine further comprises at least one event processor. The at least one visual feature of the at least one visual output is further produced responsive to the event processor.

As discussed previously, Bosak does not disclose or suggest an automated transaction machine with an event processor. Also, Bosak does not disclose or suggest that the visual feature is further produced responsive to the event processor. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 30 is further allowable on this basis.

## Claim 41

Claim 41 depends from claim 21 and further recites that the event processor software is operative to specify the at least one element when calling the output indicative function of the first transaction machine interface software.

As discussed previously, Bosak does not disclose or suggest an output indicative function of a transaction machine interface software or an event processor software. In addition Bosak also does not disclose or suggest an event processor that specifies at least one element of an initial output, when calling an output indicative function of the transaction machine interface software. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 41 is further allowable on this basis.

## Claim 43

Claim 43 depends from claim 31 and further recites that the method comprises: receiving at least one input through at least one input device on the machine, wherein the input is associated with the at least one component of the output; and performing a transaction with at least one transaction function device on the machine responsive to the input and the document.

31

Bosak does not disclose or suggest receiving an input through an input device of an automated transaction machine. Further, Bosak does not disclose or suggest receiving with an automated transaction machine an input associated with a component of the output. Also Bosak does not disclose an automated transaction machine with a transaction function device. Further, Bosak does not disclose or suggest performing a transaction with at least one transaction function device of an automated transaction machine responsive to the input and a document.

The Action asserts that a standard printer is taken to meet Appellant's transaction function device and any software including print driver software is taken to be an instruction document. Appellant disagrees. Documents as described in the Specification include command instructions which are read by the transaction machine interface software (TMI) (Page 4, lines 16-18). Bosak itself describes documents such as XML documents which include tags that are interpreted by software applications. Bosak does not disclose or suggest that any software such as print driver software corresponds to a document.

Further, even if a print driver could be constructed as a document with command instructions that are read by a TMI, Bosak does not disclose or suggest such a print driver document. In addition, Bosak does not disclose an automated transaction machine which performs a transaction with a transaction function device responsive to such a print driver document or any other type of document or software. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 43 is further allowable on this basis.

32

**Claims 1-11, 23-27 and 33-40 Are Not Obvious Over Rivett-Carnac In View Of Bosak**

In the Action claims 1-11, 23-27 and 33-40 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Rivett-Carnac in view of Bosak. These rejections are respectfully traversed. Appellant's response to these rejections is based on the Office's referenced interpretation of Rivett-Carnac and Bosak. Thus, any change in the Office's interpretation of these references shall constitute a new ground of rejection.

As indicated previously, Appellant traverses these rejections on the grounds that Bosak is not prior art. In addition Appellant traverses these rejections on the grounds that Appellant's claims recite features and relationships which are neither disclosed nor suggested in the cited art. Further, Appellant traverses these rejections on the grounds that there is no teaching, suggestion or motivation cited to combine the references so as to produce Appellant's invention.

Bosak does not disclose or suggest the steps, features, and relationships that are specifically recited in the claims. The Action relies on Bosak to disclose documents with command instructions such as XML tags. However, Bosak does not teach an automated transaction machine. Further, Bosak does not teach an automated transaction machine with at least one event processor software component.

The Action asserts that Rivett-Carnac teaches a framework for transaction processing systems for a bank where the user interface is decoupled from the business logic. However, Rivett-Carnac does not disclose or suggest an automated transaction machine. Further, Rivett-Carnac does not disclose or suggest instruction documents which include a plurality of command instructions.

33

The Action further asserts that it would have been obvious to one of ordinary skill at the time of the invention to have provided such a banking transaction system (Rivett-Carnac) with XML and style sheets as described by Bosak so that the data handling and transaction logic can be constructed without regard to output/interface, relying on style sheets to define the arrangement of the XML content. The Action asserts that such an approach would be obvious for an ATM cash dispensing machine so that many geographically dispersed machines (end users) can access the financial transaction system over a controlled network.

Appellant disagrees. Bosak cannot overcome the deficiencies of Rivett-Carnac as it does not disclose or suggest the recited features which are not found in Bosak. Furthermore, the Action is silent as to how Rivett-Carnac could be modified by Bosak to include the recited features and relationships. The Action is devoid of any prior art teaching, suggestion, or motivation for combining the features of references. Neither Rivett-Carnac nor Bosak alone or in combination disclose or suggest the steps, features, and relationships that are specifically recited in the claims.

The attempts to combine Rivett-Carnac with Bosak is clearly an attempt at hindsight reconstruction of Appellant's claimed invention, which is legally impermissible and does not constitute a valid basis for a finding of obviousness. *In re Fritch*, 22 USPQ2d 1780 (Fed. Cir. 1992). The rejections, which lack the necessary evidence and rationale, are based on knowledge gleaned only from Appellant's disclosure. For example, a reason provided for the motivation to combine is "so that many geographically dispersed machines (end users) can access the financial transaction system over a controlled network". However, the only hint of such reasoning comes

34

directly from Appellant's own novel disclosure. It follows that it would not have been obvious to one having ordinary skill in the art to have combined the references in the manner alleged. Furthermore, without a proper motivation to combine, which is the current situation, a rejection based obviousness is improper (MPEP § 2143.01). Thus, it is respectfully submitted that the 35 U.S.C. § 103(a) rejections should be withdrawn.

The applied references, taken alone or in combination, neither disclose nor suggest the recited steps, features, and relationships. Thus, it would not have been obvious to one having ordinary skill in the art to have combined the references to have produced the recited invention. The Office does not factually support any *prima facie* conclusion of obviousness. If the Office does not produce a *prima facie* case, then the Appellant's are under no obligation to submit evidence of nonobviousness (MPEP § 2142). Appellant's respectfully submit that such is the current situation. Therefore, the rejections are improper and should be withdrawn.

### Claim 1

Claim 1 is an independent claim directed to an automated transaction machine. Claim 1 recites that the automated transaction machine comprises a computer operative to generate a user interface output and to receive a plurality of input signals. Claim 1 further recites that the machine includes at least one event processor software component, a transaction machine interface (TMI) and a document in operative connection with the computer. The document includes a plurality of command instructions. The TMI is operative responsive to the command instructions in the document to cause the computer to generate a user interface output. The TMI

35

is further operative responsive to the user interface output and at least one input signal received by the computer, to cause an event to be generated. In addition the TMI is further operative responsive to at least one of the command instructions to cause the event to be directed to an event processor. Claim 1 further recites that the event processor is operative responsive to the event to selectively cause the TMI to cause a change in the user interface output generated by the computer.

As discussed previously, Bosak is not prior art. Also, Bosak does not disclose or suggest an automated transaction machine. In addition Rivett-Carnac also does not disclose an automated transaction machine. Rather Bosak is directed to a discussion of the XML language and Rivett-Carnac is directed to a set of library components for programming a "dealing room system" (Page 126). Neither Rivett-Carnac nor Bosak discloses or suggests an automated transaction machine with the specific elements and features recited in claim 1.

In addition the Action shows no teaching, suggestion or motivation in the prior art to combine Rivett-Carnac and Bosak. Although Bosak discloses the XML language, Bosak does not include any teaching, suggestion, or motivation to create an automated transaction machine with both a transaction machine interface (TMI) software component and an event processor. Although Rivett-Carnac is directed to a programming architecture which separates the GUI interface (presentation layer) and business rules (page 126), Rivett-Carnac does not include any teaching, suggestion or motivation to create an automated transaction machine with a document that includes command instructions for generating both a user interface output and for directing an event to an event processor.

36

Even if it were possible to combine Bosak with Rivett-Carnac, such a theoretical combination would still not include all the elements and features recited in claim 1. For example, neither reference discloses a TMI that is operative to cause an event to be directed to an event processor responsive to a command instruction in a document. In addition, neither reference discloses a TMI that is operative to both direct an event to an event processor and generate a user interface output responsive to command instructions in a document. Further, neither reference discloses an event processor that is operative responsive to an event, which is directed to it by a TMI responsive to a command instruction in a document.

It is respectfully submitted that Rivett-Carnac and Bosak do not disclose or suggest the features and relationships that are specifically recited in claim 1. As nothing in the cited art discloses or suggests the features and relationships that are specifically recited, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 1 is allowable for these reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn. It follows that claims 2-11 which depend from claim 1 are likewise allowable.

## Claim 23

Claim 23 is an independent claim directed to a method for operating an automated transaction machine. The method comprises: (a) reading an instruction document accessible to a computer with a TMI software component in operative connection with the computer, wherein the instruction document includes a plurality of command instructions; (b) controlling a user

interface output from the computer through operation of the TMI software component responsive to the command instructions; (c) receiving an input through an input device operatively connected with the computer; and (d) generating an event through operation of the TMI software component responsive to the input to the input device and the user interface being output from the computer. In addition claim 23 recites that the method comprises: (e) selectively directing the event through operation of the TMI software component to an event processor in operative connection with the computer responsive to the command instructions; (f) generating an event response through operation of the event processor responsive to the event; and (g) modifying the user interface output from the computer through operation of the TMI software component responsive to the event response.

As discussed previously, Bosak does not constitute prior art. Also, neither Rivett-Carnac nor Bosak discloses or suggests the steps, features, and relationships recited in the claim. Neither reference is directed to the operation of an automated transaction machine. Further, neither reference discloses or suggests operating an automated transaction machine by selectively directing an event through operation of a TMI software component to an event processor responsive to command instructions in an instruction document.

Neither reference discloses or suggests operating the automated transaction machine by generating an event response with the event processor, responsive to the event generated and directed by the TMI software component. Further, neither reference discloses or suggests operating an automated transaction machine by modifying a user interface output with the TMI software responsive to the event response generated by the event processor.

It is respectfully submitted that Rivett-Carnac and Bosak do not disclose or suggest the features and relationships that are specifically recited in claim 23. As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 23 is allowable for these reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn. It follows that claims 24-27 which depend from claim 23 are likewise allowable.

## Claim 33

Claim 33 is an independent claim directed to a method for operating an automated transaction machine. The method comprises: a) generating a user interface responsive to at least one document, at least one input device, and at least one output device; b) outputting the user interface through the output device; c) receiving an input from the input device; d) generating an event responsive to the input and the user interface; e) sending the event to a first event processor responsive to the document; f) modifying the user interface responsive to the event processor; and g) outputting the modified user interface through the output device.

As discussed previously, Bosak is not prior art. Also, neither Rivett-Carnac nor Bosak discloses or suggests the steps, features and relationships recited in the claim. Further, neither reference is directed to the operation of an automated transaction machine. In addition neither reference discloses or suggests generating a user interface responsive to: 1) a document; 2) an

39

input device; and 3) an output device.  Further, neither reference discloses sending an event to a first event processor responsive to the document.

It is respectfully submitted that Rivett-Carnac and Bosak do not disclose or suggest the features and relationships that are specifically recited in claim 33.  As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 33 is allowable for these reasons.  Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn.  It follows that claims 34-40 which depend from claim 33 are likewise allowable.

## The Dependent Claims

### Claim 2

Claim 2 depends from claim 1 and further recites that the event processor is operative responsive to the event, to generate an event response.  The TMI is operative responsive to the event response to cause the change in the user interface output generated by the computer.  As discussed previously, neither Rivett-Carnac nor Bosak discloses or suggests an automated transaction machine which includes an event processor that is operative to generate an event response responsive to an event, where the event is directed to the event processor responsive to command instructions in a document.  As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 2 is further allowable on this basis.

40

## Claim 3

Claim 3 depends from claim 1 and further recites that the TMI includes a plurality of subroutines which are operative to modify the user interface output. The event processor is operative to selectively call at least one of the subroutines responsive to the event. Neither Rivett-Carnac nor Bosak discloses or suggests an automated transaction machine with an event processor that is operative to selectively call subroutines of a TMI responsive to an event. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 3 is further allowable on this basis.

## Claim 4

Claim 4 depends from claim 1 and recites that the machine further comprises a style sheet in operative connection with the computer, wherein the TMI is further operative to cause the computer to generate the user interface output responsive to the style sheet. As discussed previously, neither reference discloses or suggests that an automated transaction machine include a style sheet. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 4 is further allowable on this basis.

## Claim 5

Claim 5 depends from claim 1 and further recites that the command instructions include an XML instruction. Neither Rivett-Carnac nor Bosak discloses or suggests an automated transaction machine with a TMI that is operative to direct an event to an event processor

41

responsive to command instructions in a document that includes XML instructions.  As nothing

in the applied art discloses or suggests this feature, it is respectfully submitted that claim 5 is

further allowable on this basis.


## Claim 6

Claim 6 depends from claim 1 and recites that the machine further comprises an output

device in operative connection with the user interface output, and wherein the command

instructions include an action menu command instruction, and wherein the TMI is further

operative responsive to the action menu command instruction to cause the user interface output

generated by the computer to produce a visual representation of an action menu on the output

device.

The Action asserts that it would have been obvious to one of ordinary skill at the time of

the invention to have included operable action menus as part of the interfaces, as these are well

known GUI techniques that end users would be comfortable with.  However, the Action fails to

cite a single reference which shows a document with a plurality of command instructions which

include an action menu command instruction.   As nothing in the applied art discloses or suggests

this feature, it is respectfully submitted that claim 6 is further allowable on this basis.


## Claim 7

Claim 7 depends from claim 1 and further recites that the event processor includes a DLL.

Although Rivett-Carnac discloses that business logic rules may be implemented as library

42

functions, neither Rivett-Carnac nor Bosak discloses or suggests an automated transaction

function device with an event processor that includes the specific element of a DLL. As nothing

in the applied art discloses or suggests this feature, it is respectfully submitted that claim 7 is

further allowable on this basis.

## Claim 8

Claim 8 depends from claim 1 and recites that the machine further comprises at least one

transaction function device in operative connection with the computer. The transaction function

device is selectively operative to carry out a transaction function. The event processor is further

operative responsive to the event, to cause the computer to operate the transaction function

device.

It is respectfully submitted that neither Rivett-Carnac nor Bosak discloses or suggests an

automated transaction machine with a transaction function device. Further, neither reference

discloses or suggests an automated transaction machine which includes an event processor that is

operative responsive to an event, to both cause a TMI to change a user interface output and to

cause a transaction function device to operate. As nothing in the applied art discloses or suggests

these features, it is respectfully submitted that claim 8 is further allowable on this basis.

## Claim 9

Claim 9 depends from claim 1 and further recites that the instruction document includes a

plurality of instruction pages. Each instruction page includes a corresponding set including at

least one command instruction. The TMI is further operative responsive to at least one command instruction in the instruction document to select a first one of the instruction pages. The TMI is operative to cause the computer to generate a user interface output responsive to a first set included in the first instruction page. Claim 9 further recites that the TMI is further operative to cause the event to be directed to the event processor, responsive to the first set included in the instruction page.

Neither Rivett-Carnac nor Bosak discloses or suggests an automated transaction machine with a document that includes a plurality of instruction pages. In addition, neither reference discloses a TMI that is responsive to a command instruction in the document to select one of the instruction pages in the document, and to generate a user interface output responsive to a set of command instructions included in the selected instruction page. In addition neither reference discloses a TMI that is responsive to direct an event to an event processor responsive to the set of command instructions included in the selected instruction page. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 9 is further allowable on this basis.

**Claim 10**

Claim 10 depends from claim 9 and further recites that the TMI is operative responsive to at least one input signal received by the computer, to select a second instruction page. The TMI is operative to cause the computer to generate a user interface output responsive to the second

44

instruction page. The TMI is operative to direct a further event to an event processor responsive to at least one command instruction included in a second set in the second instruction page.

Neither Rivett-Carnac nor Bosak discloses or suggests an automated transaction machine with a TMI that is operative to select a second instruction page in a document responsive to a received input signal. In addition neither reference discloses a TMI that is operative to generate a user interface output responsive to the selected second instruction page. In addition neither reference discloses a TMI that is operative to direct a further event to an event processor responsive to a command instruction in the selected second instruction page. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 10 is further allowable on this basis.

## Claim 11

Claim 11 depends from claim 1 and further recites that the computer further comprises a display screen in operative connection with the user interface output, and wherein the user interface output is operative to cause a visible output to be produced on the display screen. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 11 is further allowable on this basis.

## Claim 24

Claim 24 depends from claim 23 and further recites that the TMI software component comprises at least one subroutine operative to provide information indicative of at least one user

45

interface output. Claim 24 further recites that the method comprises calling the subroutine through operation of the event processor responsive to the event.

Neither Rivett-Carnac nor Bosak discloses or suggests operating an automated transaction machine by calling a subroutine of a TMI through operation of an event processor responsive to an event. Further, neither reference discloses that the subroutine of the TMI provides information indicative of at least one user interface output. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 24 is further allowable on this basis.

**Claim 25**

Claim 25 depends from claim 23 and further recites that the TMI software component comprises at least one subroutine that is operative to enable at least one element included in the user interface output. Claim 25 further recites that the method comprises calling the subroutine responsive to operation of the event processor.

Neither Rivett-Carnac nor Bosak discloses or suggests operating an automated transaction machine by calling a subroutine of a TMI responsive to operation of an event processor. Further, neither reference discloses that the subroutine of the TMI is operative to enable an element included in a user interface output. Nothing in the applied art discloses or suggests these features, and it is respectfully submitted that claim 25 is further allowable on this basis.

46

**Claim 26**

Claim 26 depends from claim 23 and further recites operating a transaction function device in operative connection with the computer responsive to the event processor. The transaction function device is operated responsive to the event being directed to the event processor.

Neither Rivett-Carnac nor Bosak discloses or suggests operating an automated transaction machine by operating a transaction function device responsive to an event processor being directed an event. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 26 is further allowable on this basis.

**Claim 34**

Claim 34 depends from claim 33 and further recites (h) processing the event with the event processor responsive to the user interface. Neither Rivett-Carnac nor Bosak discloses or suggests processing an event with an event processor responsive to a user interface, where the event was sent to the event processor responsive to a document. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 34 is further allowable on this basis.

**Claim 35**

Claim 35 depends from claim 34 and further recites (i) performing a transaction with at least one transaction function device responsive to the event processor. Neither Rivett-Carnac

47

nor Bosak discloses or suggests performing a transaction with a transaction function device responsive to an event processor. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 35 is further allowable on this basis.

**Claim 36**

Claim 36 depends from claim 35 and further recites that step (i) includes dispensing cash from a cash dispenser. Neither Rivett-Carnac nor Bosak discloses or suggests dispensing cash from a cash dispenser. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 36 is further allowable on this basis.

**Claim 37**

Claim 37 depends from claim 33 and further recites that in step (a) the user interface is further generated responsive to a style sheet. Neither Rivett-Carnac nor Bosak discloses or suggests generating a user interface of an automated transaction machine responsive to a style sheet. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 37 is further allowable on this basis.

**Claim 38**

Claim 38 depends from claim 33 and further recites that in step (a) the document includes a plurality of pages and the user interface is further generated responsive to a first one of the plurality of pages, wherein in step (f) the user interface is further modified responsive to a second

one of the plurality of pages.   Neither Rivett-Carnac nor Bosak discloses or suggests a document

that includes a plurality of pages.   In addition neither reference discloses generating a user

interface responsive to a first page of a document, and modifying the user interface responsive to

a second page of a document.   As nothing in the applied art discloses or suggests this feature, it is

respectfully submitted that claim 38 is further allowable on this basis.

**Claim 39**

Claim 39 depends from claim 38 and further recites that the first page specifies the first

event processor and the second page specifies a second event processor.   As discussed

previously, neither Rivett-Carnac nor Bosak discloses or suggests a document that includes a

plurality of pages.   In addition neither reference discloses that a first page specifies a first event

processor and a second page specifies a second event processor.   As nothing in the applied art

discloses or suggests these features, it is respectfully submitted that claim 39 is further allowable

on this basis.

**Claim 40**

Claim 40 depends from claim 33.   Claim 40 recites computer readable media bearing

instructions which are operative to cause at least one computer in the machine to cause the

machine to carry out the method steps recited in claim 33.   As nothing in the applied art discloses

or suggests these features, it is respectfully submitted that claim 40 is further allowable on this

basis.

49

**Claim 42**

Claim 42 depends from claim 30 and recites that the automated transaction machine further comprises a cash dispenser in operative connection with the computer, wherein the cash dispenser is operative to perform a function responsive to the event processor. Neither Rivett-Carnac nor Bosak discloses or suggests a cash dispenser. In addition, neither reference discloses or suggests performing a function with a cash dispenser responsive to an event processor. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 42 is further allowable on this basis.

**Claim 44**

Claim 44 depends from claim 43 and recites that the at least one transaction function device includes a cash dispenser. Neither Rivett-Carnac nor Bosak discloses or suggests a cash dispenser. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 44 is further allowable on this basis.

**Claims 45-49 and 51 Are Not Obvious Over Zeanah**

In the Action claims 45-49 and 51 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Zeanah. These rejections are respectfully traversed. Appellant's response to these rejections is based on the Office's referenced interpretation of Zeanah. Thus, any change in the Office's interpretation of these references shall constitute a new ground of rejection.

50

Appellant traverses these rejections on the grounds that Appellant's claims recite features and relationships which are neither disclosed nor suggested in the cited art, and because there is no teaching, suggestion or motivation cited so as to produce Appellant's invention. The features recited in Appellant's claims patentably distinguish over the applied references.

## Claim 45

Claim 45 is an independent claim directed to an ATM. The Action alleges that with regard to claim 45, it would have been obvious to one of ordinary skill at the time of the invention to have provided various types of input hardware such as keypads and/or touch screens to capture user information/requests. The Action further alleges that it would have been obvious to one of ordinary skill at the time of the invention to have called the event processor to generate the interface screen using the style templates specific to the selected/enabled input device. Appellant disagrees.

Claim 45 recites an ATM that comprises transaction machine interface software. The transaction machine interface software is operative to cause the computer of the ATM to access an instruction document which includes a set of command instructions. The ATM includes a transaction function device, and first and second input devices of different types. The set of command instructions defines features of a single user interface. The interface software is further operative to cause the computer to output through the at least one output device a first user interface responsive to the set of command instructions when a first input device of the

ATM is enabled and a second user interface responsive to the set of command instructions when a second input device of the ATM is enabled.

The transaction machine interface software is operative to cause the computer of the ATM to operate a transaction function device of the ATM responsive to a first input through the first input device when the first user interface is being output. Also the transaction machine interface software is operative to cause the computer to operate the transaction function device responsive to a second input through the second input device when the second user interface is being output.

As best it can be understood, Zeanah discloses a system which provides information in different formats to various types of computing devices. Zeanah does not disclose or suggest an ATM which is operative to output first and second user interfaces responsive to a common set of command instructions when first and second input devices of different types are respectively enabled. Further, Zeanah does not disclose or suggest that a transaction function device of the ATM is operated responsive to inputs from the different first and second types of input devices of the ATM when the respective user interface screens are being output.

It is respectfully submitted that Zeanah does not disclose or suggest the features and relationships that are specifically recited in claim 45. As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 45 is allowable for these

reasons.  Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be

withdrawn.  It follows that claim 46 which depends from claim 45 is likewise allowable.


**Claim 47**

Claim 47 is an independent method claim.  The Action alleges that with regard to claim

47, Zeanah teaches various user interface data capture elements such as fields, choices, etc.

However, the Action does not recite where Zeanah teaches the specific steps, features, and

relationships recited in the claim.  Zeanah is directed to a client server arrangement, where

various types of remote devices (10) interface with a delivery system (12).  Although Zeanah

discusses that such remote devices may include an ATM, Zeanah does not disclose the method

steps involving an ATM as recited in claim 47.

Claim 47 recites accessing an instruction document with an ATM.  The instruction

document includes a set of command instructions that define features of a single user interface

screen.  In addition claim 47 recites presenting through at least one display device on the at least

one ATM responsive to the set of command instructions, a first view of the user interface screen

including at least one first visual element adapted for selection using a first type of input device.

Claim 47 also recites presenting through the at least one display device on the at least one ATM

responsive to the same set of command instructions, a second view of the user interface screen

including at least one second visual element different from the at least one first visual element

and adapted for selection using a second type of input device.  Zeanah does not disclose or

suggest presenting different views of a user interface through at least one display device of an

53

ATM responsive to a common set of command instructions in a document, where the first and second views include different first and second visual elements respectively adapted for selection using different first and second types of input devices of the ATM respectively.

Claim 47 further recites operating the at least one transaction function device on the at least one ATM responsive to receipt of a first input through the first input device of the first type while the first view is being presented. Claim 47 also recites operating the at least one transaction function device on the at least one ATM responsive to receipt of a second input through the second input device of the second type while the second view is being presented. Zeanah does not disclose or suggest operating a transaction function device of an ATM responsive to input signals from different types of input devices of the ATM which are received while user interface views adapted for selection using the different types of input devices are presented through at least one display device of the ATM.

It is respectfully submitted that Zeanah does not disclose or suggest the features and relationships that are specifically recited in claim 47. As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 47 is allowable for these reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn. It follows that claims 48-51 which depend from claim 47 are likewise allowable.

**The Dependent Claims**

## Claim 46

Claim 46 depends from claim 45 and further recites that the transaction function device includes a cash dispenser. Although Zeanah discloses an ATM, Zeanah does not disclose a cash dispenser of an ATM that is operated responsive to a first input from a first input device of a first type when a first user interface is being output and is operated responsive to a second input from a second input device of a different second type when a second user interface is being output. Further, Zeanah does not disclose or suggest that the two user interfaces are outputted responsive to a common set of command instructions from a document accessed by a computer of the ATM. Further, Zeanah does not disclose that the first user interface is output when the first input device of the first type is enabled in the ATM, and the second interface is output when the second input device of the second type is enabled in the ATM. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 46 is further allowable on this basis.

## Claim 48

Claim 48 depends from claim 47 and further recites that in steps (d) and (g), the at least one transaction function device operated includes a cash dispenser. Zeanah does not disclose or suggest operating a transaction function device that includes a cash dispenser responsive to input signals from different types of input devices. Further, Zeanah does not disclose or suggest operating a cash dispenser of an ATM responsive to input signals from different types of input

devices of the ATM which are received while user interface views adapted for selection using the different types of input devices are presented. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 48 is further allowable on this basis.

**Claim 49**

Claim 49 depends from claim 47 and further recites that in step (d) the first input device includes a key, and where in step (f), the second input device includes a touch screen. Zeanah does not disclose or suggest presenting different first and second views of user interface screens with different first and second visual elements, where the visual element is adapted for selection using a key and the second visual element is adapted for selection with a touch screen. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 49 is further allowable on this basis.

**Claim 51**

Claim 51 depends from claim 47 and further recites computer readable media bearing instructions which are operative to cause at least one computer in the ATM to cause the ATM to carry out the method steps recited in claim 47. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 51 is further allowable on this basis.

## Claims 50, 52-56 Are Not Obvious Over Zeanah in View of Bosak

In the Action claims 50, 52-56 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Zeanah in view of Bosak. These rejections are respectfully traversed. Appellant's response to these rejections is based on the Office's referenced interpretations of Zeanah and Bosak. Thus, any change in the Office's interpretation of these references shall constitute a new ground of rejection.

As indicated previously, Appellant traverses these rejections on the grounds that Bosak is not prior art. In addition, Appellant traverses these rejections on the grounds that Appellant's claims recite steps, features and relationships which are neither disclosed nor suggested in the cited art, and because there is no teaching, suggestion or motivation cited so as to produce Appellant's invention. The features recited in Appellant's claims patentably distinguish over the applied references.


## Claim 52

Claim 52 is an independent claim directed to a method. Claim 52 recites accessing an XML document with an ATM. The Action admits that Zeanah does not teach XML. However, the Action alleges that it would have been obvious to one of ordinary skill at the time of the invention to have employed XML document instructions/tags/programming to carry out the software elements of Zeanah. The Action alleges that this would enable Zeanah to take advantage of the machine/OS independent nature of XML programming. Appellant disagrees.

Neither Bosak nor Zeanah disclose or suggest that an ATM use an instruction document with XML tags. The Action fails to show that any portion of Bosak or Zeanah includes a motivation, teaching or suggestion to use an XML instruction document in an ATM as recited in the claims. As discussed previously, the teaching, suggestion or motivation to combine the features in prior art references must be clearly and particularly identified in such prior art to support a rejection on the basis of obviousness. It is not sufficient to offer a broad range of sources and make conclusory statements. *In re Dembiczak*, 50 USPQ2d 1614, 1617 (Fed. Cir. 1999).

The Action further alleges it would have been obvious to one of ordinary skill at the time of the invention to have provided code sections/pages/modules/documents in XML to render each type of screen required. The Action alleges that it is well known and would have been obvious to one of ordinary skill at the time of the invention to have delineated such programming code with delineating tags. Appellant disagrees.

Claim 52 specifically recites accessing with an ATM an XML document which includes at least two sets of XML tags. The two sets of XML tags correspond to user interface elements for constructing at least two different user interface screens. Each set of XML tags is delineated by page tags which segregate and identify the sets of XML tags. Zeanah and Bosak do not disclose or suggest these features. In addition, the Action has failed to cite any other prior art reference which shows an ATM that accesses an XML document with these features.

In addition Claim 52 recites presenting a first user interface screen through at least one output device on the ATM responsive to the first set of XML tags in the instruction document.

Claim 52 also recites receiving at least one first input through at least one input device on the ATM and presenting a second user interface screen through at least one output device on the ATM responsive to the second set of XML tags in the instruction document. The first set of XML tags is delineated by a first set of page tags and the second set of XML tags is delineated by a second set of page tags. Neither Zeanah nor Bosak discloses an ATM which operates in this manner. Neither reference discloses XML instructions for constructing different user interface screens which are delineated by page tags.

It is respectfully submitted that Zeanah in view of Bosak does not disclose or suggest the features and relationships that are specifically recited in claim 52. As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 52 is allowable for these reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn. It follows that claims 53-56 which depend from claim 52 are likewise allowable.

## The Dependent Claims

### Claim 50

Claim 50 depends from claim 48 and further recites that the instruction document includes XML tags. Neither Zeanah nor Bosak disclose operating a cash dispenser of an ATM

responsive to input signals from different types of input devices of the ATM which are received while user interface views adapted for selection using the different types of input devices are presented. Further, neither reference discloses that such user interface views are presented through at least one display device on the at least one ATM responsive to a set of command instructions in a document that includes XML tags. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 50 is further allowable on this basis.

## Claim 53

Claim 53 depends from claim 52 and further recites that in step (b) the first set of XML tags specifies a first event processor, and further recites: e) calling the first event processor responsive to the at least one first input, the first user interface screen, and the first set of XML tags; and f) operating a first transaction function device on the ATM responsive to the event processor.

As discussed previously, neither Zeanah nor Bosak discloses or suggests XML tags in a document which specifies an event processor. In addition, neither reference discloses or suggests calling an event processor which is specified by the XML tags responsive to an input, a user interface screen, and the XML tags. Further, neither reference discloses or suggests operating a transaction function device of an ATM responsive to the event processor. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 53 is further allowable on this basis.

**Claim 54**

Claim 54 depends from claim 53 and recites that the first transaction function device includes a cash dispenser. Neither Zeanah nor Bosak discloses or suggests operating a cash dispenser responsive to an event processor specified by XML tags in a document. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 54 is further allowable on this basis.

**Claim 55**

Claim 55 depends from claim 53 and recites that the second set of XML tags specifies a second event processor, and further recites: g) receiving at least one second input from the at least one input device of the ATM; h) calling the second event processor responsive to the second input, the second user interface screen and the second set of XML tags; and i) operating a second transaction function device on the ATM responsive to the second event processor.

Neither Zeanah nor Bosak discloses or suggests two sets of XML tags which are delineated by page tags and which specify a first and second event processor respectfully. Further, neither reference discloses or suggests calling the second event processor specified and operating a second transaction function device of an ATM responsive to the second event processor. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 55 is further allowable on this basis.

61

## **35 U.S.C. § 132, Objection**

In the Action, claims 45 and 47 were objected to pursuant to 35 U.S.C. § 132. This objection is respectfully traversed. It is respectfully submitted that claims 45 and 47 do not introduce new matter into the disclosure of the invention. Each of these claims is supported by the original specification and original claims.

Claims 45 and 47 are similar to claim 17 of the original claims which indirectly depends from claims 12 and 13. Like claim 17, claims 45 and 47 recite at least one output or display device associated with a first input device of a first type and a second input device of a second type different than the first type. Like claim 17, claims 45 and 47 further recite that a first user interface is output through the at least one first output device responsive to a set of command instructions; and a second user interface is output through the at least one output device responsive to the set of command instructions. In addition, as with claim 17, claims 45 and 47 recite that at least one transaction function device is operative responsive to a first input from the first input device; and the at least one transaction function device is operative responsive to a second input from the second input device. Further, as disclosed in the Specification, claim 45 recites that the first user interface is output when the first input device of the first type is enabled; and the second user interface is output when the second input device of the second type is enabled. Also as disclosed in the Specification, claim 47 recites that the first user interface screen includes at least one first visual element adapted for selection using the first type of input device, and the second user interface screen includes at least one second visual element adapted for selection using the second type of input device.

Support for these features and relationships is found in the Specification, for example at page 19, line 17 to page 20, lines 3. Here the Specification discloses that embodiments of the present invention enables the use of substantially identical instruction documents to control the interfaces and devices of ATMs with different types of input devices such as function keys, keys in keypads or keyboards, touch screens or audio inputs. In addition Figure 9 shows an example of two different views 1591, 1592 of a user interface which are produced responsive to a common set of instructions 203 and responsive to different corresponding devices in ATMs. It is respectfully submitted that claims 44 and 47 are supported by the original specification and satisfy the requirements of 35 U.S.C. § 132.

## 35 U.S.C. § 112, Second Paragraph, Rejection

In the Action, claims 21, 22, and 41 were rejected pursuant to 35 U.S.C. § 112, second paragraph. This rejection is respectfully traversed. It is respectfully submitted that each of these claims particularly points out and distinctly claims the subject matter which Appellant regards as the invention.

In the Action, it was asserted that claims 21 and 22 could not be fully understood due to the nature of the phrases "the output indicative instruction is operative to indicate a value associated with at least one element" and "cause the first transaction function device to operate responsive to the event and the value". The Action also asserted that page 18 lines 5-8 of the Specification describes enabling/disabling interface elements, not causing the function device (cash dispenser) to operative responsive to a value.

63

It is respectfully submitted that claims 21 and 22 were previously amended to replace "output indicative instruction" with "the output indicative function". Therefore, the basis for the assertion in the Action that claims 21 and 22 are indefinite is not consistent with the current wording of the claims.

As disclosed in Figure 12, and page 19, lines 1-2, "when the TMI sends the event processor 16 the event for a user interface action concerning a dispense of sheets, the event processor can execute the instructions necessary to have a sheet dispenser device controller 361 operate the sheet dispenser 301". As disclosed on page 17, lines 22-23 "the event processor may need additional information about the user interface currently being generated by the computer before it can properly evaluate an event." On page 18, lines 5-6, the Specification specifically discloses that "the event processor can use the TMI API to get and set values in the user interface." In Figure 6; page 11, lines 10-11; and page 18, lines 2-3, the Specification discloses a get interface element value subroutine 281. This "get" subroutine 281 is a function of the TMI API that can be called by event processors to retrieve values entered into the user interface.

In claims 21 and 22, the recited element of an "output indicative function" corresponds to the TMI API function such as the "get" subroutine 281. It is respectfully submitted that the wording used in each of these claims particularly points out and distinctly claims the subject matter which Appellant regards as the invention. It is respectfully submitted that claims 21, 22 and 41 satisfy the requirements of 35 U.S.C. § 112, second paragraph.

## FEES FOR THIS SUBMISSION

Please charge the fee due upon the filing of this Brief and any other fees that may be due, to the Deposit Account  No. 09-0428 of InterBold.

## CONCLUSION

As explained above, each of the claims specifically recites features, relationships, and steps that are neither disclosed nor suggested in any of the applied art.  Furthermore, the applied art is devoid of any such teaching, suggestion, or motivation for combining features of the applied art so as to produce Appellant's invention.  For these reasons it is respectfully submitted that all the pending claims are allowable.

Respectfully submitted,

Ralph E. Jocke                    Reg. No. 31,029
WALKER & JOCKE
231 South Broadway
Medina, Ohio  44256
(330) 721-0000

65

# APPENDIX

CLAIMS

1. An automated transaction machine comprising:

a computer operative to generate a user interface output and to receive a plurality of input signals;

at least one event processor software component in operative connection with the computer;

a transaction machine interface (TMI) software component in operative connection with the computer;

a document in operative connection with the computer, wherein the document includes a plurality of command instructions, wherein:

the TMI is operative responsive to the command instructions in the document to cause the computer to generate a user interface output;

1

the TMI is further operative responsive to the user interface output and at least

one input signal received by the computer to cause an event to be generated;

the TMI is further operative responsive to at least one of the command

instructions to cause the event to be directed to an event processor; and

the event processor is operative responsive to the event to selectively cause the

TMI to cause a change in the user interface output generated by the computer.

2.  The automated transaction machine according to claim 1, wherein the event processor

is operative responsive to the event to generate an event response; and the TMI is operative

responsive to the event response to cause the change in the user interface output generated by the

computer.

3.  The automated transaction machine according to claim 1, wherein the TMI includes a

plurality of subroutines which are operative to modify the user interface output, and wherein the

event processor is operative to selectively call at least one of the subroutines responsive to the

event.

2

4. The automated transaction machine according to claim 1, and further comprising a style sheet in operative connection with the computer, wherein the TMI is further operative to cause the computer to generate the user interface output responsive to the style sheet.

5. The automated transaction machine according to claim 1, wherein the command instructions include an XML instruction.

6. The automated transaction machine according to claim 1, and further comprising an output device in operative connection with the user interface output, and wherein the command instructions include an action menu command instruction, and wherein the TMI is further operative responsive to the action menu command instruction to cause the user interface output generated by the computer to produce a visual representation of an action menu on the output device.

7. The automated transaction machine according to claim 1, wherein the event processor includes a DLL.

8. The automated transaction machine according to claim 1, further comprising at least one transaction function device in operative connection with the computer, wherein the transaction function device is selectively operative to carry out a transaction function, and

wherein the event processor is further operative responsive to the event to cause the computer to operate the transaction function device.

9.  The automated transaction machine according to claim 1, wherein:

the instruction document includes a plurality of instruction pages, wherein each instruction page includes a corresponding set including at least one command instruction;

the TMI is further operative responsive to at least one command instruction in the instruction document to select a first one of the instruction pages, wherein the TMI is operative to cause the computer to generate a user interface output responsive to a first set included in the first instruction page; and

the TMI is further operative to cause the event to be directed to the event processor responsive to the first set included in the instruction page.

10.  The automated transaction machine according to claim 9, wherein the TMI is operative responsive to at least one input signal received by the computer to select a second instruction page, wherein the TMI is operative to cause the computer to generate a user interface output responsive to the second instruction page, and wherein the TMI is operative to direct a

further event to an event processor responsive to at least one command instruction included in a second set in the second instruction page.

11. The automated transaction machine according to claim 1 wherein the computer further comprises a display screen in operative connection with the user interface output and wherein the user interface output is operative to cause a visible output to be produced on the display screen.

12.    A first automated transaction machine apparatus including:

a first computer of a first type, wherein the first computer includes at least one first output device, wherein the first output device is operative to provide at least one output to users of the first machine, and at least one first input device, wherein the first input device is operative to receive at least one input from users of the machine;

a first transaction function device in operative connection with the first computer, wherein the first transaction function device is operative to carry out a transaction function;

first transaction machine interface software in operative connection with the first computer;

5

a first instruction document in operative connection with the first computer, wherein the first instruction document includes at least one command instruction;

wherein the first computer is operative responsive to at least one first input to the first input device to cause the first transaction function device to carry out the transaction function, and wherein the first computer is further operative to generate a first output through the first output device responsive to the first input, the first transaction machine interface software and at least one command instruction in the first instruction document.

13.    The apparatus including the first automated transaction machine according to claim 12, and further comprising:

a second automated transaction machine including:

a second computer of a second type different from the first type, and wherein the second computer includes at least one second output device, wherein the second output device is operative to provide at least one output to users of the second machine, and at least one second input device, wherein the second input device is operative to receive at least one input from users of the machine;

6

a second transaction function device in operative connection with the second computer, wherein the second transaction function device is operative to carry out the transaction function;

second transaction machine interface software in operative connection with the second computer;

a second instruction document substantially identical to the first instruction document, in operative connection with the second computer;

wherein the second computer is operative responsive to at least one second input to the second input device to cause the second transaction function device to carry out the transaction function, and wherein the second computer is further operative to generate a second output through the second output device responsive to the second input, the second transaction machine interface software and at least one command instruction in the second instruction document.

14.    The apparatus according to claim 13 wherein the first computer of the first type differs from the second computer of the second type in that the first output device comprises a different type of output device than the second output device.

15.   The apparatus according to claim 13 wherein the first computer of the first type differs from second computer of the second type in that the first computer includes a different type of operating system than the second computer.

16.   The apparatus according to claim 13 wherein the first computer of the first type differs from the second computer of the second type in that the first computer is operative to cause the first transaction function device to carry out the transaction function responsive to a first input that is different than the second input that is operative to cause the second computer to cause the second transaction function device to carry out the transaction function.

17.   The apparatus according to claim 13 wherein the first computer of the first type differs from the second computer of the second type in that the first input device comprises a different type of input device than the second input device.

18.   The apparatus according to claim 14 wherein the first output device includes a character based display device and the second output device includes a graphical display device.

19.   The apparatus according to claim 17 wherein the first input device includes a key and the second input device includes a touch screen.

20.    The apparatus according to claim 12 and further comprising:

event processor software in operative connection with the first computer, wherein the event processor software is operative to cause the first transaction function device to carry out the transaction function responsive to an event, wherein the first transaction machine interface software is operative to generate the event responsive to the first input.

21.    The apparatus according to claim 20 wherein the first transaction machine interface software includes at least one output indicative function, wherein when the first input is entered, the output indicative function is operative to indicate a value associated with at least one element included in an initial output through the first output device, wherein the event processor software is operative to call the output indicative function and is operative to cause the first transaction function device to operate responsive to the event and the value indicated by the output indicative function.

22.    The apparatus according to claim 21 wherein the event processor software responsive to the event and the output indicative function is operative to cause the first computer

9

to generate an event response, wherein the first transaction machine software is operative to cause the computer to generate the first output responsive to the event response.

23. A method for operating an automated transaction machine comprising the steps of:

(a)     reading an instruction document accessible to a computer with a TMI software component in operative connection with the computer, wherein the instruction document includes a plurality of command instructions;

(b)     controlling a user interface output from the computer through operation of the TMI software component responsive to the command instructions;

(c)     receiving an input through an input device operatively connected with the computer;

(d)     generating an event through operation of the TMI software component responsive to the input to the input device and the user interface being output from the computer;

10

(e)     selectively directing the event through operation of the TMI software component

to an event processor in operative connection with the computer, responsive to the

command instructions;


(f)     generating an event response through operation of the event processor responsive

to the event;


(g)     modifying the user interface output from the computer through operation of the

TMI software component responsive to the event response.


24.    The method according to claim 24, wherein the TMI software component comprises

at least one subroutine operative to provide information indicative of at least one user interface

output, and further comprising calling the subroutine through operation of the event processor

responsive to the event.


25.    The method according to claim 25 wherein the TMI software component

comprises at least one subroutine that is operative to enable at least one element included in the

user interface output, and further comprising calling the subroutine responsive to operation of the

event processor.


11

26.     The method according to claim 23 and further comprising: operating a transaction function device in operative connection with the computer responsive to the event processor, wherein the transaction function device is operated responsive to the event being directed to the event processor.

27.     Computer readable media bearing instructions which are operative to cause at least one computer in the machine to cause the machine to carry out the method steps recited in claim 23.

28.     An automated transaction machine comprising:

at least one computer and at least one visual output device in operative connection with the computer in the automated transaction machine, whereby the visual output device is operative to provide outputs to users of the machine;

a plurality of documents in operative connection with the computer, wherein the computer is operative responsive to at least one of the documents to cause at least one visual output to be produced by the visual output device; and

12

at least one style sheet in operative connection with the computer, wherein at least one

visual feature of the at least one visual output is produced responsive to the at least one

style sheet.

29.    The automated transaction machine according to claim 28 further comprising at least one

input device in operative connection with the computer, wherein the at least one visual feature of

the at least one visual output is further produced responsive to the visual output device and the

input device.

30.    The automated transaction machine according to claim 29 further comprising at least one

event processor, wherein the at least one visual feature of the at least one visual output is further

produced responsive to the event processor.

31.    A method of operating an automated transaction machine comprising:

    a)    operating a computer in the machine to receive at least one document;

    b)    operating the computer to receive data in at least one style sheet; and

    c)    providing an output through at least one visual output device on the machine

        responsive to operation of the computer, wherein at least one component of the

13

output is produced responsive to the document and at least one visual attribute of the component is produced responsive to the style sheet.

32.    Computer readable media bearing instructions which are operative to cause at least one computer in the machine to cause the machine to carry out the method steps recited in claim 31.

33.    A method of operating an automated transaction machine comprising:

a)    generating a user interface responsive to at least one document, at least one input device, and at least one output device;

b)    outputting the user interface through the output device;

c)    receiving an input from the input device;

d)    generating an event responsive to the input and the user interface;

e)    sending the event to a first event processor responsive to the document;

f)    modifying the user interface responsive to the event processor; and

14

g)    outputting the modified user interface through the output device.

34.    The method according to claim 33 further comprising:

h)    processing the event with the event processor responsive to the user interface.

35.    The method according to claim 34 further comprising:

i)    performing a transaction with at least one transaction function device responsive to the event processor.

36.    The method according to claim 35, wherein step (i) includes dispensing cash from a cash dispenser.

37.    The method according to claim 33, wherein in step (a) the user interface is further generated responsive to a style sheet.

38.    The method according to claim 33, wherein in step (a) the document includes a plurality of pages and the user interface is further generated responsive to a first one of the plurality of pages, wherein in step (f) the user interface is further modified responsive to a second one of the plurality of pages.

39.    The method according to claim 38, wherein the first page specifies the first event processor and the second page specifies a second event processor.

40.    Computer readable media bearing instructions which are operative to cause at least one computer in the machine to cause the machine to carry out the method steps recited in claim 33.

41.    The apparatus according to claim 21 wherein the event processor software is operative to specify the at least one element when calling the output indicative function of the first transaction machine interface software.

42.    The automated transaction machine according to claim 30, further comprising a cash dispenser in operative connection with the computer, wherein the cash dispenser is operative to perform a function responsive to the event processor.

43.    The method according to claim 31, further comprising:

d)    receiving at least one input through at least one input device on the machine, wherein the input is associated with the at least one component of the output;

e)     performing a transaction with at least one transaction function device on the

machine responsive to the input and the document.

44. The method according to claim 43, wherein the at least one transaction function

device includes a cash dispenser, wherein step (e) includes dispensing cash from the cash

dispenser.

45. An ATM comprising:

a computer;

a first input device of a first type in operative connection with the computer;

a second input device of a second type in operative connection with the computer,

wherein the first type and the second type are different types of input devices.

at least one output device in operative connection with the computer;

at least one transaction function device in operative connection with the computer;

transaction machine interface software in operative connection with the computer, wherein the interface software is operative to cause the computer to access an instruction document which includes a set of command instructions that define features of a single user interface, wherein the interface software is further operative to cause the computer to output through the at least one output device a first user interface responsive to the set of command instructions when the first input device is enabled, wherein the transaction machine interface software is further operative to cause the computer to output through the at least one output device a second user interface responsive to the set of command instructions when the second input device is enabled, and wherein the transaction machine interface software is operative to cause the computer to operate the transaction function device responsive to a first input through the first input device when the first user interface is being output, and wherein the transaction machine interface software is operative to cause the computer to operate the transaction function device responsive to a second input through the second input device when the second user interface is being output.

46. The ATM according to claim 45, wherein the transaction function device includes a cash dispenser.

47. A method comprising:

a)    accessing an instruction document with at least one ATM, wherein the instruction document includes a set of command instructions that define features of a single user interface screen;

b)    presenting through at least one display device on the at least one ATM responsive to the set of command instructions a first view of the user interface screen including at least one first visual element adapted for selection using a first type of input device;

c)    receiving at least one first input through a first input device on the at least one ATM that is of the first type;

d)    operating at least one transaction function device on the at least one ATM responsive to receipt of the at least one first input while the first view is being presented;

e)    presenting through the at least one display device on the at least one ATM responsive to the set of command instructions a second view of the user interface screen including at least one second visual element different from the at least one first visual element and adapted for selection using a second type of input device;

f)    receiving at least one second input through a second input device on the at least one ATM that is of the second type; and

g)    operating the at least one transaction function device on the at least one ATM responsive to receipt of the at least one second input while the second view is being presented.

48. The method according to claim 47, wherein in steps (d) and (g), the at least one transaction function device operated includes a cash dispenser.

49. The method according to claim 48, wherein in step (d) the first input device includes a key, and where in step (f), the second input device includes a touch screen.

50. The method according to claim 49, wherein in step (a) the instruction document includes XML tags.

51. Computer readable media bearing instructions which are operative to cause at least one computer in the ATM to cause the ATM to carry out the method steps recited in claim 47.

52. A method comprising:

a)      accessing an instruction document with an ATM, wherein the instruction document includes at least two sets of XML tags, which correspond to user interface elements for constructing at least two different user interface screens, wherein each set of XML tags is delineated by page tags which segregate and identify the sets of XML tags;

b) presenting a first user interface screen through at least one output device on the ATM responsive to a first set of XML tags in the instruction document, wherein the first set of XML tags is delineated by a first set of page tags;

c) receiving at least one first input through at least one input device on the ATM;

d) presenting a second user interface screen through at least one output device on the ATM responsive to a second set of XML tags in the instruction document, wherein the second set of XML tags is delineated by a second set of page tags.

53. The method according to claim 52, wherein in step (b) the first set of XML tags specifies a first event processor, and further comprising:

e) calling the first event processor responsive to the at least one first input, the first user interface screen, and the first set of XML tags; and

f) operating a first transaction function device on the ATM responsive to the event processor.

54. The method according to claim 53, wherein the first transaction function device includes a cash dispenser.

21

55. The method according to claim 53, wherein the second set of XML tags specifies a second event processor, and further comprising:

g)      receiving at least one second input from the at least one input device of the ATM;

h)      calling the second event processor responsive to the second input, the second user interface screen and the second set of XML tags; and

i)      operating a second transaction function device on the ATM responsive to the second event processor.

56.     Computer readable media bearing instructions which are operative to cause at least one computer in the machine to cause the machine to carry out the method steps recited in claim 52.

22