

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/233,249 | 01/19/1999 | HAROLD V. PUTMAN | D-1086 | 7737 |

| 28995 | 7590 | 01/27/2005 | EXAMINER |
|---|---|---|---|
| RALPH E. JOCKE<br>231 SOUTH BROADWAY<br>MEDINA, OH 44256 | | | CARLSON, JEFFREY D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3622 | |

DATE MAILED: 01/27/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)




UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov



JAN 27 2005
GROUP

# BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

Application Number: 09/233,249
Filing Date: January 19, 1999
Appellant(s): PUTMAN, HAROLD V.

Ralph E. Jocke
For Appellant

## EXAMINER'S ANSWER

This is in response to the appeal brief filed 2/27/02.

### (1)  *Real Party in Interest*

A statement identifying the real party in interest is contained in the brief.

Application/Control Number: 09/233,249                                                      Page 2
Art Unit: 3622

### (2)  Related Appeals and Interferences

A statement identifying the related appeals and interferences which will directly affect or be directly affected by or have a bearing on the decision in the pending appeal is contained in the brief.

### (3)  Status of Claims

The statement of the status of the claims contained in the brief is correct.

### (4)  Status of Amendments After Final

The appellant's statement of the status of amendments after final rejection contained in the brief is correct.

### (5)  Summary of Invention

The summary of invention contained in the brief is correct.

### (6)  Issues

The appellant's statement of the issues in the brief is correct.

### (7)  Grouping of Claims

The appellant's statement in the brief that certain claims do not stand or fall together is not agreed with. Applicant states that each claim is an independent group

Application/Control Number: 09/233,249 Page 3
Art Unit: 3622

because each claim recites at least one element not found in the prior art, rather than defining why each group differs from the other groups. At least, certain apparatus claims should be grouped with the corresponding method claims: claim 23 with 27, 31 with 32, 33 with 40, 47 with 51 and 52 with 56.

### *(8) Claims Appealed*

The copy of the appealed claims contained in the Appendix to the brief is correct.

### *(9) Prior Art of Record*

Bosak, Jon, "XML, Java and the future of the web" http://www.ibiblio.org/pub/sun-info/standards/xml/why/xmlapps.htm, dated 3/10/1997.

Rivett-Carnac, "An object-oriented framework for transaction capture using co-operating business rule components" IEEE, 0-8166-7840, 2/1997, pgs 126-134.

5,933,816          Zeanah et al          8-1999

### *(10) Grounds of Rejection*

The following ground(s) of rejection are applicable to the appealed claims:

Claims 45-51 are rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to

Application/Control Number: 09/233,249                                                                 Page 4
Art Unit: 3622

one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention. The amendment filed 8/7/01 added features to the claims as follows: the Examiner cannot locate original disclosure supporting the features of claims 45 and 47 whereby a computer provides two different screen elements that are selectable with two different input devices. Claim 45 sets forth two input devices operatively connected to the same computer. This has no original support. Claim 45 also sets forth output of a first interface when the first input device is enabled and output of a second interface when the second input device is enabled. This has no original support. Claim 47 sets forth a first screen element selectable with a first input device and a second screen element selectable with a second input device. This has no original support. Claims 46 and 48-51 are similarly rejected because they inherit the unsupported features by way of their dependency.

Claims 31-34 are rejected under 35 U.S.C. 102(b) as being anticipated by Bosak (XML, Java, and the future of the web). Bosak teaches the basics of xml and style sheets. Xml documents provide the code for clients (internet-connected computers with browsers) to display a page/interface. The xml documents merely specify the content of the screen/interface/page, leaving the particular formatting/screen arrangement to the data from the style sheets. This enables a single xml document to determine the same content, yet be displayed/rendered differently on various different output devices such as screens and paper printing via the style sheets. A web browser that renders any xml document with clickable links, selectable fields, buttons, etc is

Application/Control Number: 09/233,249                                                          Page 5
Art Unit: 3622

taken to inherently provide an interface output. Also, the web connected computers required for xml viewing are taken to inherently include standard input devices such as keyboards and mouse - Bosak also describes "clicking". Mere button clicking triggers an event which causes at the very least, the button to be re-drawn on the interface screen as indented or "pushed-in" while it is being clicked. This "event processing" is provided inherently by standard browsers; the programming (event processor) for it packaged with the browser.

Claims 12-22, 28-30, 41 and 43 are rejected under 35 U.S.C. 103(a) as being unpatentable over Bosak. It would have been obvious to one of ordinary skill at the time of the invention to have provided standard printers and driver software with the types of computers described by Bosak so that users could make printouts of the various screens. A standard printer is taken to meet applicant's "transaction function device" of these claims; a print job can be sent to the printer using different input means such as with a mouse or with a keyboard as is well known, relying on an input device to trigger a print event handled by known print event processors (print drivers) in software [claim 20]. Any software, including print driver software is taken to be an instruction document. As best understood regarding claims 21 and 41, it is well known for printer driver software to provide an interface to capture/specify the user's input regarding desired print parameters (# copies for example) and to present on-screen elements to the user indicating a print job has started. It would have been obvious to one of ordinary skill at the time of the invention to have employed such printer driver features to enable the

Application/Control Number: 09/233,249                                                                 Page 6
Art Unit: 3622

web clients of Bosak to print screens/information. Further, web-connected kiosks are well known to include touch screens. It would have been obvious to one of ordinary skill at the time of the invention to have employed any well known input devices such as touch screens for ease of data entry; such are capable of processing Bosak's xml documents. The distributed clients' software (browser) that interprets the documents described by Bosak allow processing of the xml documents to be platform independent as described within [pg 5, #2]. Providing a second computer with a different operating system to process the same xml documents is suggested by Bosak [pg 6 "it is independent of any platform, vendor or application, so it can be used to exchange solution information without regard to the system its coming from or going to]. To have provided different monitor types and/or sizes would have been obvious for the various disparate network-connected end users as is well known; the thrust of Bosak is to provide programming that can be consumed by different users with different machine types and operating systems. Regarding the character based vs. graphical displays, standard monitor screens display pixels, whether representing characters or graphics. A well known and standard graphical display is also taken to be a character display device, depending on the screen contents to be rendered.

Claims 1-11, 23-27, 33-40, 42 and 44 are rejected under 35 U.S.C. 103(a) as being unpatentable over Rivett-Carnac (An Object-Oriented Framework for Transaction Capture Using Co-operating Business Rule Components) in view of Bosak. Rivett-Carnac teaches a framework for transaction processing systems for a bank where the

Application/Control Number: 09/233,249                                                                                     Page 7
Art Unit: 3622

user interface is decoupled from the business logic. This allows the business rules to be developed and/or changed independent of the graphical user interface (GUI). The framework includes interface objects such as transaction fields that are coupled to business rules for validations. When the user interacts with the system via the input device(s), events are triggered which change stored values and which also changes the interface display. "This requires framework mechanisms for notification of changes to fields entered by the user, triggering of rule processing to validate the entry and recalculate dependant data, updating the GUI display and informing the user of any warnings or errors which may arise" [section 3.2]. It would have been obvious to one of ordinary skill at the time of the invention to have included operable action menus as part of the interface so as to make data entry easy as these are well known GUI techniques that end users would be comfortable with. Section 3.1 describes that the various rules may be modularly implemented via library functions (DLL/subroutines). Page 133 describes when an attribute's value is changed by a user (via input device), an event is triggered (change warning) which is handled by an event handler (event processor). The GUI is described on page 134 as being flexible and independent of end user platform. It would have been obvious to one of ordinary skill at the time of the invention to have provided such a banking transaction system with xml and style sheets as described by Bosak so that the data handling and transaction logic can be constructed without regard to output/interface, relying on style sheets to define the arrangement of the xml content. This would enable various different end user machines to access the system without requiring redesign specific to the end user hardware. Such an approach

Application/Control Number: 09/233,249 Page 8
Art Unit: 3622

would be obvious for an ATM cash dispensing machine so that many geographically dispersed machines (end users) can access the financial transaction system over a controlled network. The user input would trigger an event processor to operate the cash dispenser.

Claims 45-49 and 51 are rejected under 35 U.S.C. 103(a) as being unpatentable over Zeanah et al (US5933816). Zeanah et al teaches a system and method of delivering financial services and transactions to various remote devices, by using modular service sets. Zeanah et al recognizes an old problem where interfaces between different types of remote devices and the bank's central computer had to be developed separately, depending on the device. Zeanah et al provides interfaces whereby the screen content in separated from screen format to enable a presentation manager to provide different screens for each particular device [col 4 lines 1-6]. Column 13 lines 20-23 describe the mini-app dialog component which manages the business functions (funds xfer, bill payment, etc). It is "responsible for the content of information on pages (screens) and the flow of customer interaction, but preferably not the style and layout of the presentation." Style templates (style sheets) are used to generate various screens for PDAs, PCs, ATM, etc [col 7 lines 30-33]. The mini-app component instantiates and calls transaction executor components 91 to do transactions with external service providers and also operates remote devices, such as cash dispensers [col 13 lines 52-55]. The touch point and display set 30 provides the actual customer display and input facility. This set displays pages on the screen and

sends customer input (choice selections) to the delivery system 12. It preferably comprises a browser. See column 6 lines 18-57. The presentation manager component 52 maps the screen info into a specific style layout in a device-specific presentation format (CAT=ATM, kiosk, phone screen, PDA, etc). Style templates are also used [col 7 lines 24-42]. The navigation shell component 82 informs the customer of the choices (mini-apps) that are available, based on the customer's relationship and business rules [col 12 lines 41-45, 58-60]. As can be seen, the interface software calls various modular software components according to captured user input. The peripheral device services set is responsible for handling application requests for peripheral device services and for managing the software components that handle such requests [col 7 lines 62-67]. The peripheral device handler component 61 comprises a plurality of handlers, with each providing a generic device management interface and a specific service interface [col 8 lines 1-13]. The modular nature of the system allows creation and testing of each component separately. Thus, any computer can use the same universal central application and request/call specific software components (event processors) to carry out the requested function such as user validation or cash dispensing.

Applicant's "instruction document" is taken to read on any program or collection of code, whether in a module, exe, dll, or simply a section of code in a longer program. Regarding claim 45 as best understood, it would have been obvious to one of ordinary skill at the time of the invention to have provided various types of input hardware such as keypads and/or touch screens so as to capture user information/requests. It would

Application/Control Number: 09/233,249                                                                 Page 10
Art Unit: 3622

have been obvious to one of ordinary skill at the time of the invention to have called the event processor to generate the interface screen using the style templates specific to the selected/enabled input device so that interfaces can be provided for various hardware devices. Regarding claim 47, Zeanah et al teaches various user interface data capture elements such as fields, choices, etc. It would have been obvious to one of ordinary skill at the time of the invention to have operated the mentioned cash dispenser responsive to one selectable screen element and to activate a deposit mechanism or receipt printer responsive to another, so that the user can easily operate the devices.

Claims 50 and 52-56 are rejected under 35 U.S.C. 103(a) as being unpatentable over Zeanah et al in view of Bosak. Zeanah et al does not teach XML. It would have been obvious to one of ordinary skill at the time of the invention to have employed the XML document instructions/tags/programming taught by Bosak to carry out the software elements of Zeanah et al. This would enable Zeanah et al to take advantage of the machine/OS independent nature of XML programming. Regarding claim 52, it would have been obvious to one of ordinary skill at the time of the invention to have provided code sections/pages/modules/documents in XML to render each type of screen required so that the screens can be provided modularly. It is well known and would have been obvious to one of ordinary skill at the time of the invention to have delineated such programming code with delineating tags.

Application/Control Number: 09/233,249					Page 11
Art Unit: 3622

### *(11)* **Response to Argument**

With regards to the 112P1/new matter rejection: while original claims 12, 13 and 17 provide support for *two* computers, each with their own input devices, no support is provided for the subject matter of claims 45 and 47. The specification page 19 line 17 to page 20 line 3 teaches general theory that a similar instruction document can control interfaces and devices of machines that are substantially different, including different input devices. However, this does not provide full support for claims 45 and 47. Applicant is required to cancel the new matter in the reply to this Office Action.

Bosak is prior art. Applicant has argued that we can't be certain of the date, yet no evidence has been presented to suspect otherwise. The reference is dated 3/10/1997 and that date is taken to be the effective date of the reference. This date is taken to be a publication date. Further, a newly acquired document provides evidence of the date of this article. W3C Architecture Domain [Extensible Markup Language (XML)] (attached to this Examiner's Answer) indicates that (top of page 5) The First XML Conference was held in San Diego, CA by the GCA and Jon Bosak's March 1997 article entitled "XML, Java, and the future of the web" was presented. In fact, clicking the underlined article hyperlink takes you to the same url for the Bosak article that the examiner cited and applied[1]. Note: the examiner is not relying on the teachings of W3C Architecture Domain [Extensible Markup Language (XML)] as part of any art

---

[1] http://www.ibibio.org/pub/sun-info/standards/xml/why/xmlapps.htm

Application/Control Number: 09/233,249 Page 12
Art Unit: 3622

rejection, rather it is used solely to provide evidence of the asserted date of the applied Bosak article. Further still, using Netscape's "Page Info" feature indicates a posting (and therefore, publication) date of 3/10/1997. As an exercise, the examiner posted an old html file (last saved 2/20/01) from his hard drive to the internet on 10/10/01. Netscape's Page Info feature indicates a "Last Modified" date of 10/10/01; this is taken as the posting/publication date. See attached supporting printouts. Further still, applicant has provided a printout of the parent directory containing the Bosak article file. The printout indicates the date for the file "xmlapps.htm" is 3/10/1997, as asserted by the examiner.

Applicant's arguments that the applied art does not teach an ATM is not convincing. First, most claims do not call for an ATM. Second, the claims mention only an "automated transaction machine" in the preamble, and refer to such machine in the body of the claims. Further still, applicant's definition [pg 1 lines 19-20] of automated transaction machine calls for only a device which carries out transactions, including transfers of value. This definition is not believed to exclude an automated transaction machine which generates transactions "without value" or "of low value". Nonetheless, "value" in this definition is quite broad and does not require currency. Any computer instructions when processed can be taken to be "transactions"; if a programmer took the time to program the instructions, they can be said to have "value", although currency-based value need not be present. A computer which carries out instructions automatically is be taken to be an automated transaction machine. Applicant argues

Application/Control Number: 09/233,249  Page 13
Art Unit: 3622

that Bosak does not teach a computer inside a machine. Applicant's broad definition of the transaction machine containing a computer can be met by a processor inside a computer case. Applicant argues that Bosak does not teach screen elements and visual attributes produced by a style sheet. Page 8 of Bosak teaches style sheets used with XML that specifies page layout features

Applicant has made continuing arguments for each claim that each of the claims' elements is not provided by the prior art. The basis for the rejection above is believed to address each limitation.

Applicant agrees that standard browsers (which render XML and style sheet programming documents onto the screen as an interface) may include integrated event processing for button clicks. For example, clicking a button results in redrawing the button on-screen so that the button appears depressed. Applicant argues that such admitted features do not imply the existence of separate event processor software components which are sent events responsive to a document. Examiner does not see this type of "separate" language in the claims.

Applicant argues that Bosak does not teach print drivers corresponding to a document. Applicant asserted that it would have been obvious to one of ordinary skill at the time of the invention to have included printers and requisite printer driver (software programming file(s)) to operate the printers. Examiner has stated that any programming file, module or section of code is taken to be a programming "document". The suggested printer driver represents the document; Bosak need not mention such.

Application/Control Number: 09/233,249                                    Page 14
Art Unit: 3622

    Applicant argues that the examiner has not taught how Rivett-Carnac could be modified to include the features of Bosak (xml and style sheet programming). The examiner need not demonstrate the details of how such a combination is carried out, such is believed to be well within the knowledge of one of ordinary skill.

For the above reasons, it is believed that the rejections should be sustained.

                                        Respectfully submitted,

                                        Jeffrey D. Carlson
                                        Examiner
                                        Art Unit 3622

jdc
January 26, 2005

Conferees
Eric Stamber
James Myhre

RALPH E JOCKE
231 SOUTH BROADWAY
MEDINA, OH 44256