

D-1086

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

| | | |
|---|---|---|
| In re Application of | ) | |
| **Harold V. Putman** | ) | |
| | ) | |
| Serial No.: **09/233,249** | ) | Art Unit: **2162** |
| | ) | |
| Confirm no. **7737** | ) | Patent Examiner |
| | ) | **Jeffrey D. Carlson** |
| Filed: **January 19, 1999** | ) | |
| | ) | |
| For: **Automated Transaction Machine** | ) | |
| **And Method** | ) | |

Mail Stop Appeal Brief - Patents
Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

## REPLY BRIEF PURSUANT TO 37 C.F.R. § 41.41

Sir:

The Appellant hereby submits his second Reply Brief pursuant to 37 C.F.R. § 41.41

concerning the above-referenced Application. The second Reply Brief is in response to the

Examiner's second Answer ("Answer") dated January 27, 2005. The Answer was in response to

the Remand of Appeal dated October 21, 2004.

In the Answer a new ground of rejection was presented. Appellant continues to

respectfully submit that the claims are allowable. It is requested that the Appeal continue.

1

## GROUPING OF CLAIMS

The Answer (at pages 2-3) asserts that Appellant's statement in the Appeal Brief that certain claims do not stand or fall together is not agreed with. The Answer asserts that at least certain apparatus claims should be grouped with the corresponding method claims. Appellant respectfully disagrees.

The Appeal Brief presents for each respective separate claim a corresponding respective separate argument as to why the claim is patentable over the applied references. The Appeal Brief explains how each claim recites additional features of the invention which distinguishes the claim over every other pending claim, and establishes that each claim recites at least one element, combination of elements, or step not found or suggested in the applied references, which patentably distinguishes the claim.

Appellant respectfully submits that the computer media claims 27, 32, 40, 51, and 56 should not be grouped with the corresponding independent method claim from which they depend, because these dependent claims recite the additional separately patentable feature of computer readable media bearing instructions which are operative to cause at least one computer in the machine (or ATM) to cause the machine (or ATM) to carry out the different method steps recited in the respective base method claims.

Thus, Appellant respectfully submits that the Appeal Brief includes a proper and accurate Grouping of Claims statement.

## STATUS OF CLAIMS

Claims 1-56 are pending in the Application.

| | |
|---|---|
| Claims rejected: | 1-56 |
| Claims allowed: | none |
| Claims confirmed: | none |
| Claims withdrawn: | none |
| Claims objected to: | none |
| Claims canceled: | none |

## GROUNDS OF REJECTION TO BE REVIEWED ON APPEAL

The grounds to be reviewed in this appeal are:

1)    Whether Appellant's claims 31-34 are unpatentable under 35 U.S.C. § 102(b) as

being anticipated by Bosak, Jon, "XML, Java and the future of the web,"

http://www.ibiblio.org/pub/suninfo/standards/xml/why/xmlapps.htm, dated

3/10/1997, ("Bosak").

2)    Whether Appellant's claims 12-22, 28-30, 41 and 43 are unpatentable under 35

U.S.C. § 103(a) over Bosak.

3)    Whether Appellant's claims 1-11, 23-27, 33-40, 42 and 44 are unpatentable under

35 U.S.C. § 103(a) over Rivett-Carnac, "An object-oriented framework for

3

transaction capture using co-operating business rule components" IEEE, 0-8166-7840, 2/1997, pgs 126-134 ("Rivett-Carnac") in view of Bosak.

4)    Whether Appellant's claims 45-49 and 51 are unpatentable under 35 U.S.C. § 103(a) over Zeanah, et al., U.S. Patent No. 5,933,816 ("Zeanah").

5)    Whether Appellant's claims 50 and 52-56 are unpatentable under 35 U.S.C. § 103(a) over Zeanah in view of Bosak.

6)    Whether Appellant's claims 21, 22, and 41 are unpatentable under 35 U.S.C. § 112, second paragraph.

7)    Whether Appellant's claims 45-51 are unpatentable under 35 U.S.C. § 112, first paragraph.

**Additional Comment 1**

The Examiner's Answer includes a new grounds of rejection with respect to claims 45-51 under 35 U.S.C. § 112, first paragraph. The new grounds of rejection appears to have replaced the previous rejection of claims 45 and 47 under 35 U.S.C. § 132, which is therefore regarded as being withdrawn by the Examiner pursuant to MPEP § 1208.

**Additional Comment 2**

In the Final Action dated October 19, 2001 claims 21, 22, and 41 were rejected under 35 U.S.C. § 112, second paragraph.  This rejection is no longer asserted in the Examiner's Answer and therefore is regarded as being withdrawn by the Examiner pursuant to MPEP § 1208.

4

# ARGUMENT

Appellant's Appeal Brief filed on October 27, 2002 is incorporated herein by reference. The Answer includes a "Grounds of Rejection" section beginning on page 3. Except for the discussion of the new grounds of rejection of claims 45-51 under 35 U.S.C. § 112, first paragraph, all of the other grounds of rejection included in this section of the Answer are substantially identical to those previously presented in the Office Action dated October 19, 2001. Appellant respectfully submits that these rejections have already been fully addressed in Appellant's Appeal Brief. Please refer to Appellant's previous arguments in the Appeal Brief regarding all the issues of record.

## Response to New Grounds of Rejection in Answer

### The 35 U.S.C. § 112, First Paragraph Rejections

Claims 45-51 were rejected under 35 U.S.C. § 112, first paragraph, as failing to comply with the written description requirement. These rejections are respectfully traversed.

### Claim 45 (Grouped with claim 46)

The Answer asserts that the Examiner cannot locate original disclosure supporting the features of claim 45. Appellant respectfully disagrees and submits that claim 45 (as well as claim 46) recites subject matter which is fully supported by the original Specification and original claims.

The Examiner's Answer asserts with respect to claim 45, that the recited features including two input devices operatively connected to the same computer does not have original support in the Specification. Appellant disagrees. Claim 45 recites features similar to those in original claim 17, which depends from claims 12 and 13. Like claim 17 and its base claims, claim 45 recites at least one output device and a first input device of a first type, and a second input device of a second type different than the first type. Although in this claim two computers are recited, the Specification includes support for two or more input devices connected to the same computer of an ATM.

For example, the Specification at page 3, lines 19-21, clearly states that an automated transaction machine includes a computer, and the computer is defined as having in operative connection therewith, input devices (plural) such as a keypad or touchscreen. Figure 1 and the Specification at page 7, lines 18-19, discloses an ATM with multiple input devices (12) such as function keys (8), a keypad (12), a touch screen (9), and a card reader (7). In describing Figure 2 the Specification states at page 8, lines 1-4, that the computer (10) includes at least one input device (21), and that the input devices may be of different types as previously discussed with reference to the ATM (3) in Figure 1. Thus the Specification provides support for two input devices operatively connected to a computer in an ATM, as recited in claim 45.

The Examiner's Answer further asserts that the Examiner could not locate original disclosure supporting the features of claim 45 whereby a computer provides two different screen elements that are respectively selectable with two different input devices. The Examiner's Answer also asserts that there is no original support for output of a first interface when the first

6

input device is enabled and output of a second interface when the second input device is enabled, as recited in claim 45. Appellant disagrees.

Support for these recited features is found in the Specification, for example at page 19, line 17 to page 20, line 3. Here the Specification discloses that some embodiments of the present invention enable the use of substantially identical instruction documents to control the interfaces and devices of ATMs through inputs to different types of input devices. Such different types of input devices include, for example, function keys, keys in keypads or keyboards, touch screens or audio inputs. Figure 9 shows an example of two different ATM user interface views (1591, 1592) with different visual elements (1521, 1522) which are produced responsive to the same common set of instructions (203) and responsive to the different types of ATM hardware devices.

Further as discussed previously, claim 45 corresponds to features recited in claims 17/13/12 which were included with the Application as filed, and qualifies as original support in the Specification for the features recited in claim 45. Claim 17 through the base claims from which it depends, recites the generation of a first output through the first output device responsive to a first input to the first input device (i.e. the first input device is enabled), and recites the generation of a second output through a second output device responsive to a second input to a second input device (i.e. the second input device is enabled). Claim 17 also specifically recites that "the first input device comprises a different type of input device than the second input device".

Similar to original claims 17/13/12, claim 45 recites an output of a first user interface through at least one output device of the ATM when the first input device is enabled, and an output of a second user interface through the at least one output device when the second input

7

device of the ATM is enabled. Similar to original claims 17/13/12, claim 45 recites that the first type (of the first input device) and the second type (of the second input device) are different types of input devices.

It is respectfully submitted that claim 45, as well as claim 46 which depends therefrom, are supported by the Specification and satisfy the requirements of 35 U.S.C. § 112, first paragraph.

**Claim 47 (Grouped with claims 48-51)**

The Examiner's Answer asserts that the Examiner could not locate original disclosure supporting the features of claim 47, whereby an ATM outputs two different screen elements on at least one ATM display that are selectable with different input devices. The Examiner's Answer also asserts that there is no original support for a first screen element being selectable through a first input device, and a second screen element being selectable through a second input device as recited in claim 47. Appellant disagrees.

Support for these recited features is found in the Specification, for example at page 19, line 17 to page 20, line 3. Here the Specification discloses that some embodiments of the present invention enable the use of substantially identical instruction documents to control the interfaces and devices of ATMs through inputs to different types of input devices. Such input devices include, for example, function keys, keys which comprise keypads or keyboards, touch screens or audio inputs. Figure 9 shows an example of two different ATM user interface views (1591, 1592) with different visual elements (1521, 1522) which are produced responsive to a common set of instructions (203) and responsive to different types of ATM hardware devices.

Furthermore, claim 47 corresponds to the features recited in claim 17 which was included with the Application as filed, and therefore qualifies as original support in the Specification for the features recited in claim 47. Claim 17 recites by virtue of claims 12 and 13 from which it depends, the generation of a first output through the first output device, and generation of a second output through a second output device. Claims 17/13/12 recite at least one first input to a first input device and at least one second input to a second input device. Correspondingly, Figure 19 shows an example of two different user interface views (1591, 1592) with different visual elements (1521, 1522) which are adapted for selection with different input devices. In addition, claim 17 specifically recites that "the first input device comprises a different type of input device than the second input device."

Thus original claims 17/13/12 and Figure 9 provide support for the features and steps recited in claim 47. These include, presenting a first view of the user interface screen including at least one first visual element adapted for selection using a first type of input device, and a second view of the user interface screen including at least one second visual element different from the at least one first visual element, and adapted for selection using a second type of input device.

It is respectfully submitted that claim 47, as well as claims 48-51 which depend therefrom, are supported by the original Specification and satisfy the requirements of 35 U.S.C. § 112, first paragraph.

## Response to New Arguments in Answer

The Answer includes a "Response to Argument" section beginning on page 12. The Office's remarks regarding the claim rejections are addressed in the order they are presented in the Answer.

### Claims 45-51 Are Fully Supported by the Original Specification, Claims and Figures

The Answer (on page 11) acknowledges that original claims 12, 13 and 17 provides support for "*two* computers, each with their own input devices". However, the answer italicizes the word "two" before "computers" and continues to assert that the original claims and specification does not provide full support for claims 45 and 47. Appellant disagrees.

As shown previously herein, each of the features recited in claims 45 and 47 was fully supported by the Specification, Figures and claims as originally filed. In addition, as discussed previously, the Specification provides support for an ATM having "a computer" with multiple input devices of differing types. For example, the Specification at page 3, lines 19-21, clearly states that an automated transaction machine includes a computer and the computer is defined as including input devices (plural) such as a keypad or touchscreen. Figure 1 and the Specification at page 7, lines 18-19, clearly discloses an ATM with multiple input devices (12) such as function keys (8), a keypad (12), a touch screen (9), and a card reader (7). In describing Figure 2 the Specification states at page 8, lines 1-4, that the computer (10) includes at least one input device (21) and that the input devices may be of different types as previously discussed with reference to ATM (3) in Figure 1. Thus the 35 U.S.C. § 112, first paragraph rejections are improper and should be withdrawn.

10

**The Office Has Failed to Establish That Bosak is Prior Art**

As shown in the Appeal Brief, Bosak alone or in combination with the other applied references, does not disclose or suggest each and every feature, relationship and step recited in the pending claims to which it has been applied. In addition, the Office has also failed to establish that the Bosak reference qualifies as prior art under 35 U.S.C. § 102(b) or 35 U.S.C. § 103(a).

Bosak is directed to a discussion of the XML language. The Bosak reference appears to be an electronic or Internet publication retrieved from the URL:

**http://ibiblio.org/pub/sun-info/standards/xml/why/xmlapps.htm.**

MPEP § 2128 specifically states that "If the publication does not include a publication date (or retrieval date), it cannot be relied upon as prior art under 35 U.S.C. 102(a) or (b)." Bosak does not include a publication date or a retrieval date, and therefore cannot be properly relied upon as a basis for rejecting the pending claims in the Application.

In the first Office Action dated May 23, 2001 the Office asserted that a "Last revised" date of "1997.03.10." in the text of Bosak corresponds to a publication date. However, the Bosak reference and the Office have provided no reliable evidence to indicate that this "Last revised" date is a publication date or a retrieval date. In the second Office Action dated October 19, 2001 the Office asserted that a "Last Modified" date of 3/10/1997, which is displayable for the Bosak reference when using the Netscape browser's "Page Info" feature, corresponds to a "posting (and therefore, publication) date." However, as admitted in the Examiner's Answer at

11

page 12, line 8, this date only corresponds to the date for the file "xmlapps.htm" which is accessed at the URL associated with the Bosak reference.

A file date of an HTML computer file typically only represents the date the file was created or modified. However, such a date is not reliable unless it can be shown that the computer on which the file was created or modified had an accurately set system clock at the time the file was created or modified. The system clock on a computer can easily be set to almost any date. Also dates in such files can be readily altered to indicate a date that is earlier than when the file was actually created or last modified. Further, and more significant is that even if a file was created or modified on a certain date, this provides no evidence that the file was actually published or capable of being retrieved from the Internet on that date. Files on any topic can be created on a private computer system days or even years before the file is posted to a public web server or otherwise becomes publicly accessible.

The asserted date of 3/10/1997 for the file associated with the Bosak reference cannot be relied upon as a basis for establishing a prior art publication or retrieval date for the reference. The Answer's reliance on file dates for the Bosak reference (even if they reflect an accurate creation date), still supplies no credible evidence that the Bosak reference was publicly available or published on the Internet prior to the date the Examiner first retrieved the Bosak reference.

In addition, the Examiner in his first Answer dated March 21, 2001, attached thereto an HTML document downloaded from the web entitled "Extensible Markup Language (XML)". The document lists various Web related conferences including a conference in San Diego that allegedly occurred in March 1997. Associated with the description of the San Diego conference is a hyperlink which points to the URL associated with the Bosak reference. The Examiner in his

12

Answer alleges that the "Extensible Markup Language (XML)" document provides evidence of the date of the Bosak article. Appellant respectfully disagrees.

As admitted in the Examiner's Answer, the "Extensible Markup Language (XML)" document is not prior art. Further, this document includes numerous dates that are as recent as March 2002, which indicates that document was created on or after March 2002. Thus at best the new document presented in the Examiner's first Answer can only be used by the Office to establish that the Bosak reference may have been accessible on the Internet as of March 2002. As this date is well after Appellant's priority date of October 19, 1998 and filing date of January 19, 1999, this document cannot be used to establish that the Bosak reference is prior art.

The Examiner alleges in his Answer that the hyperlink and label in the "Extensible Markup Language (XML)" document indicates that the Bosak reference "was presented" at the San Diego Conference held in March 1997. Other than the label and hyperlink in the "Extensible Markup Language (XML)" document (which were created after March 2002), the Examiner has shown no evidence that the Bosak reference or any portion of the Bosak reference was handed out, displayed, presented or otherwise publicly disclosed at the San Diego Conference. Therefore, because the "Extensible Markup Language (XML)" is not considered prior art by the Examiner, it cannot be relied upon to prove the prior public use or disclosure of the Bosak reference at a San Diego Conference.

The Examiner also points out that clicking on the underlined hyperlink in the "Extensible Markup Language (XML)" document takes you to the same URL ("http://ibiblio.org/pub/sun-info/standards/xml/why/xmlapps.htm") for the Bosak article that was cited and applied by the Examiner. However, the fact that an admitted non-prior art web page links to an allegedly earlier

13

web page, at best only provides evidence that the earlier web page existed at the time the later web page was created (which is no earlier than March 2002, long after the filing date of the present application). As the Office has admitted that the "Extensible Markup Language (XML)" document is not prior art to the present application, it follows that this document cannot constitute evidence that the Bosak reference is prior art.

Appellant respectfully acknowledges that Examiners may face challenges determining a proper publication date for art downloadable from the Internet. However, Appellant is in no better position to uncover a true publication date for Internet art, as there is often no reliable method of uncovering such dates. Further there is a significant risk that individuals or groups which are extremely vocal about their opposition to software type patents may plant back-dated articles on the Internet which are intended to be found by Examiners for use with rejecting such software type patents. The ease at which fraudulent back-dated documents can be posted to a web server on the Internet, weighs in favor of the Office being required to show a prior art corroboration that the prior art date accorded to an Internet reference is reliable.

As discussed above, the Office has not presented any prior art corroboration that the date of the Bosak reference is reliable. Further as discussed in the Appeal Brief, Appellant has provided evidence that the prior art date accorded by the Office to the Bosak reference is not consistent with the dates associated with the URL at which the Bosak reference was accessed from the Internet. For example as shown in the Appeal Brief, the web site where the URL ("http://ibiblio.org/pub/sun-info/standards/xml/why/xmlapps.htm ") of Bosak is located, suggests that the URL did not exist in its present form until after Appellant's priority and filing dates. In particular the subdirectory portion "why" of the URL has been shown in the Appeal Brief to have

14

a non-prior art date of "May 24, 1999". Thus the earliest date that can be accorded to the URL of

Bosak is May 24, 1999 which is also well after Appellant's priority and filing dates.

Even if the URL did reflect a consistent prior art date (which it does not), the dates listed

by the web server hosting the URL provides no evidence that the URL was granted sufficient

permission by the web server to be publicly available on the same dates the URL directory and/or

HTML file were created. Thus absent collaboration by a reliable and independent source that the

Internet reference was publicly available on a given date, arbitrary dates included in the text of a

reference such as a "Last revised" date cannot be properly relied upon by the Office as a prior art

date. As a further example, the Office often relies on the "WayBackMachine" at the web site

"www.archive.org" to corroborate that a particular web page was accessible on the Internet at a

particular prior art date. However, in the present case, the Office has provided no such evidence

to support its assertion that Bosak is prior art.

In response to the Answer's attempted use of the admitted non-prior art reference of

"Extensible Markup Language (XML)" to (unsuccessfully) corroborate the asserted date of the

Bosak reference, Appellant has entered the Bosak URL into the "WayBackMachine" at the web

site "www.archive.org". The earliest date at which the Bosak URL was recorded by

"WayBackMachine" as being publically available on the Internet was November 9, 2000 which is

after Appellant's priority and filing dates. Also, for the years 1996-1999, the

"WayBackMachine" shows "0 pages" corresponding to the Bosak URL. As a result, the

"WayBackMachine" at "www.archive.org," does not support the Office's assertions regarding

the publication date of the Bosak reference.

Appellant has shown evidence that the prior art date accorded by the Office to Bosak is not consistent with its associated URL and is not collaborated by prior art evidence. Appellant has further shown that the Office has failed to cite its usual sources (e.g. "www.archive.org") for collaborating a prior art date of an Internet reference. Thus, Appellant respectfully submits that the burden to show that the Bosak reference has a prior art date, should remain with (or shift back to) the Office. As the Office appears unable (after many tries) to provide reliable corroborating evidence that the Bosak reference was published prior to Appellant's priority or filing dates, the rejections of claims 1-44, 50, and 52-56 based fully or in part on the Bosak reference publication under 35 U.S.C. § 102(b) and 35 U.S.C. § 103(a) are improper and should be withdrawn.


**Appellant Respectfully Takes Issue With Many Assertions in the Answer**

Appellant stands steadfastly to the positions stated in his Brief. These positions are not repeated herein for the sake of brevity, however, there are several statements in the Answer that deserve to be addressed specifically.

For example, many of Appellant's claims recite an "automated transaction machine." The Specification indicates at page 1, lines 9-23, that a common type of automated transaction machine used by consumers is an automated teller machine ("ATM"). ATMs enable customers to carry out banking transactions such as dispensing of cash, making deposits, transferring funds between accounts, payment of bills and account balance inquiries. The Specification further indicates that other automated transaction machines may allow customers to charge against accounts or to transfer funds. Other types of automated transaction machines may print or

dispense items of value such as coupons, tickets, wagering slips, vouchers, checks, food stamps, money orders, scrip or travelers checks. Furthermore, the Specification states that "For purposes of this disclosure an automated transaction machine shall encompass any device which carries out transactions including transfers of value."

In the Examiner's Answer (at page 12), it is argued that any computer instructions when processed can be taken to be "transactions," and therefore a computer which carries out instructions automatically is taken to be an automated transaction machine. Appellant disagrees.

The Specification defines an automated transaction machine as a device which carries out transactions including transfers of value. The use of the word "including" indicates that the automated transaction machine may perform other transactions which presumably do not include transfers of value. However, for purposes of Appellant's disclosure an automated transaction machine is a device that must carry out at least some transactions including transfers of value.

Thus, a generic computer, as described in the Bosak reference, which is not disclosed as being an automated transaction machine, and is not disclosed as carrying out transactions including transfers of value, cannot be characterized as the automated transaction machine recited in the claims. With reference to claim 31, if Appellant intended the claim to recite a generic computer, Appellant would not have recited "An automated transaction machine" in the preamble and "the machine" throughout the body of the claim. Further, claim 31 recites the separate element of "a computer" which is "in the machine". Given the assertion in the Examiner's Answer that an automated transaction machine is a computer, such a phrase would correspond to reciting a computer is in a computer.

17

The Examiner's Answer attempts to refute this logic at page 13, lines 1-3, by suggesting that Appellant's broad definition of the transaction machine containing a computer can be met by a processor inside a computer case. However, such an analogy would imply that the "automated transaction machine" is a computer case and not a computer as previously asserted in the Examiner's Answer. Such an interpretation does not correspond to a logical reading of the claims. Also such an interpretation is not supported by the Specification. Thus, the "automated transaction machine" recited in the claims such as claim 31, does not read on a generic computer or processor which carries out computer instructions.

The Examiner's Answer argues (at page 13) that a standard browser may include integrated event processing for button clicks. However, Appellant's claims do not recite a standard browser for processing button clicks. Rather Appellant's invention is directed to an automated transaction machine that includes separate event processor software components which are sent events responsive to a document. At page 13, lines 9-15, the Examiner's Answer indicates that the Examiner does not see the existence of separate event processor software component language in the claims. However, claim 1 clearly recites that the automated transaction machine includes the separate elements of at least one event processor software component, a transaction machine interface (TMI) and a document in operative connection with the computer. Thus Appellant's claims recite features such as event processor software components, which are not found in the hypothetical standard browser described in the Examiner's Answer.

The Action also asserts that Appellant argued that Bosak does not teach screen elements and visual attributes produced by a style sheet. Appellant disagrees with this summary of

18

Appellant's arguments regarding style sheets. Although Bosak discusses "Stylesheets" on page 8, neither Bosak nor any of the other applied art discloses or suggests as recited in claim 31, the step of operating a computer in an automated banking machine to receive data in at least one style sheet.

Appellant denies the allegation in the Examiner's Answer that Appellant asserted that it would have been obvious to one of ordinary skill at the time of the invention to have included printers and the requisite printer driver to operate the printers. This assertion was made by the Examiner in the Action dated October 19, 2001 when arguing that any software, including printer driver software, is taken to be an instruction document as recited in the claims.

Appellant disagrees with this assertion. Neither Appellant's claims nor the Specification recite or define an instruction document as being a printer driver. Further neither Bosak or any of the cited references define an instruction document as being a printer driver. Further the ordinary meaning of "printer driver software" would not suggest to one with ordinary skill in the art at the time of the invention, an "instruction document" as recited in the claims. Thus the Examiner's hypothetical printer driver software example does not establish that the features and elements recited in Appellant's claims are disclosed or suggested in the prior art.

### *Prima Facie* Case of Obviousness Not Established By The Examiner

With respect to the combination of Rivett-Carnac and Bosak, Appellant in his Appeal Brief specifically pointed out that the Examiner has not shown how Rivett-Carnac could be modified to include the features of Bosak. In response, at page 14, lines 1-4, the Examiner's

Answer asserts that the Examiner "need not demonstrate the details of how such a combination [of Rivett-Carnac and Bosak] is carried out." Appellant disagrees.

When the motivation to combine the teachings of cited references is not immediately apparent (as is the case here), **It is the duty of the examiner to explain why the combination of the teachings is proper**, MPEP §2143.03. Thus by asserting that the Examiner need not demonstrate the details of how such a combination is carried out, the Examiner has admitted that a *prima facie* case of obviousness has not been established.

In the Action, claims 1-11, 23-27 and 33-40 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Rivett-Carnac in view of Bosak. The Examiner's Answer asserts that Rivett-Carnac teaches a framework for transaction processing systems for a bank where the user interface is decoupled from the business logic. However, Rivett-Carnac does not disclose or suggest an automated transaction machine. Further, Rivett-Carnac does not disclose or suggest instruction documents which include a plurality of command instructions.

The Examiner's Answer further asserts that it would have been obvious to one of ordinary skill at the time of the invention to have provided such a banking transaction system (Rivett-Carnac) with XML and style sheets as described by Bosak so that the data handling and transaction logic can be constructed without regard to output/interface, relying on style sheets to define the arrangement of the XML content. The Examiner's Answer asserts that such an approach would be obvious for an ATM cash dispensing machine so that many geographically dispersed machines (end users) can access the financial transaction system over a controlled network.

Appellant disagrees. Bosak (even if it were prior art – which it is not) cannot overcome the deficiencies of Rivett-Carnac as it does not disclose or suggest the recited features which are not found in Rivett-Carnac. Furthermore, the Examiner's Answer has failed to show how Rivett-Carnac could be modified by Bosak to include the recited features and relationships. The Examiner's Answer is devoid of any prior art teaching, suggestion, or motivation for combining the features of references. Neither Rivett-Carnac nor Bosak alone or in combination disclose or suggest the steps, features, and relationships that are specifically recited in the claims.

The attempt to combine Rivett-Carnac with Bosak is clearly an attempt at hindsight reconstruction of Appellant's claimed invention, which is legally impermissible and does not constitute a valid basis for a finding of obviousness. *In re Fritch*, 22 USPQ2d 1780 (Fed. Cir. 1992). The rejections, which lack the necessary evidence and rationale, are based on knowledge gleaned only from Appellant's disclosure. For example, a reason provided in the Answer for the motivation to combine is "so that many geographically dispersed machines (end users) can access the financial transaction system over a controlled network." However, the only hint of such reasoning comes directly from Appellant's own novel disclosure. It follows that it would not have been obvious to one having ordinary skill in the art to have combined the references in the manner alleged. Furthermore, without a proper motivation to combine, which is the current situation, a rejection based on obviousness is improper (MPEP § 2143.01). Thus, it is respectfully submitted that the 35 U.S.C. § 103(a) rejections should be reversed.

The applied references, taken alone or in combination, neither disclose nor suggest the recited steps, features and relationships. Thus, it would not have been obvious to one having ordinary skill in the art to have combined the references to have produced the recited invention.

21

The Office does not factually support any *prima facie* conclusion of obviousness. If the Office does not produce a *prima facie* case, then the Appellant is under no obligation to submit evidence of nonobviousness (MPEP § 2142). Appellant respectfully submits that such is the current situation. Therefore, the rejections are improper and should be reversed.

## CONCLUSION

Appellant has responded to the claim rejections (as best understood) in spite of the Office's failure to provide a claim-by-claim analysis of how the applied prior art teaches or suggests the claimed invention. The evidence of record and the statutory tests all suggest that Appellant's claimed invention is patentable. Allowance of all the pending claims is respectfully requested.

Respectfully submitted,

Ralph E. Jocke            Reg. No. 31,029
231 South Broadway
Medina, Ohio 44256
(330) 721-0000

22