The opinion in support of the decision being entered today was *not* written for publication and is *not* binding precedent of the Board.

# UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE BOARD OF PATENT APPEALS
## AND INTERFERENCES

*Ex parte* HAROLD V. PUTMAN

Appeal No. 2005-1683
Application No. 09/233,249

**MAILED**

**JUL 2 5 2005**

U.S. PATENT AND TRADEMARK OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

ON BRIEF

Before HAIRSTON, BARRY, and NAPPI, and, *Administrative Patent Judges.*

BARRY, *Administrative Patent Judge.*

A patent examiner rejected claims 1-56. The appellants appeal therefrom under 35 U.S.C. § 134(a). We remanded. *Ex parte Putman*, No. 2003-1703 (Bd.Pat.App. & Int. Oct. 21, 2004). The examiner maintained his rejection of claims 1-56; the appellant maintained his appeal. We affirm-in-part

## I. BACKGROUND

The invention at issue on appeal concerns automated teller machines ("ATMs"). Customers use ATMs to check the balance of accounts, deposit or withdraw cash, transfer funds between accounts, and pay bills. (Spec. at 1.)

According to the appellant, ATMs use specialized hardware and software dedicated to specific operations. (*Id.*) ATMs featuring different configurations or different "transaction function devices," (e.g., cash dispensers, deposit acceptors) use different programs developed for the particular configuration or device. (*Id.* at 1-2.) Depending on the human language needed for their user interfaces, add the appellant, even ATM models of the same type may require different versions of software. "[T]he more permutations of hardware and program functionality that are required, the more dedicated computer programs must be written." (*Id.* at 2.) Even if a program could be written to control different types of ATMs, the appellant asserts, the program would not run on any ATM featuring hardware or an operating system incompatible with the machine code into which the program was compiled. At best, the program would need to be recompiled for the target hardware; at worst, the program would need to be rewritten in a computer language specific to the hardware. (*Id.* at 2.)

In contrast, the appellant's ATM includes an input device such as a keypad, transaction function devices, a user interface display, and transaction machine interface ("TMI") software. Responsive to commands in an "instruction document," (*id.* at 32), the TMI controls the output of the display. The TMI also responds to input and the current output of the display to direct events to event processor software. Responsive to such events, the event processor software operates the transaction

function devices and directs the TMI to modify the output of the display in response to
the operation of the devices. (*Id.*)


The appellant explains that his ATM associates procedural logic with event

processors, which are "hardware specific," while defining the configuration of the user

interface by the command instructions, which are "hardware independent." (*Id.* at 5.)

Accordingly, he adds, the user interface is generally decoupled from "business rules,"

(*id.*), which control the ATM. The appellant asserts, "[t]his results in an [ATM] that is

easier to produce, can more easily port to different hardware platforms, and is easier to

modify and configure." (*Id.*)


A further understanding of the invention can be achieved by reading the

following claims.

1. An automated transaction machine comprising:

a computer operative to generate a user interface output and to
receive a plurality of input signals;

at least one event processor software component in operative
connection with the computer;

a transaction machine interface (TMI) software component in
operative connection with the computer;

a document in operative connection with the computer, wherein the
document includes a plurality of command instructions, wherein:

the TMI is operative responsive to the command instructions in the document to cause the computer to generate a user interface output;

the TMI is further operative responsive to the user interface output and at least one input signal received by the computer to cause an event to be generated;

the TMI is further operative responsive to at least one of the command instructions to cause the event to be directed to an event processor; and

the event processor[1] is operative responsive to the event to selectively cause the TMI to cause a change in the user interface output generated by the computer.

24. The method according to claim 24,[2] wherein the TMI software component comprises at least one subroutine operative to provide information indicative of at least one user interface output, and further comprising calling the subroutine through operation of the event processor responsive to the event.

31. A method of operating an automated transaction machine comprising:

a) operating a computer in the machine to receive at least one document;

---

[1] A claim is indefinite "where the language 'said lever' appears in a dependent claim where no such 'lever' has been previously recited in a parent claim to that dependent claim . . . ." *Ex parte Moelands*, 3 USPQ2d 1474, 1476 (Bd. Pat. App. & Int. 1987). Here, the limitation "the event processor" in claim 1 appears to lack antecedent basis. Because there is no rejection for indefiniteness before us, however, we leave this matter to the examiner and the appellant.

[2] "[C]laims may be presented in dependent form, referring back to and further limiting **another** claim or claims in the same application." 37 C.F.R. § 1.75(c)(2005) (emphasis added). Here, claim 24 appears to depend from itself. We leave this matter to the examiner and the appellant.

b) operating the computer to receive data in at least one style sheet; and

c) providing an output through at least one visual output device on the machine responsive to operation of the computer, wherein at least one component of the output is produced responsive to the document and at least one visual attribute of the component is produced responsive to the style sheet.

33. A method of operating an automated transaction machine comprising:

a) generating a user interface responsive to at least one document, at least one input device, and at least one output device;

b) outputting the user interface through the output device;

c) receiving an input from the input device;

d) generating an event responsive to the input and the user interface;

e) sending the event to a first event processor responsive to the document;

f) modifying the user interface responsive to the event processor; and

g) outputting the modified user interface through the output device.

45. An ATM comprising:

a computer;

a first input device of a first type in operative connection with the computer;

a second input device of a second type in operative connection with the computer, wherein the first type and the second type are different types of input devices;

Appeal No. 2005-1683                                          Page 6
Application No. 09/233,249

at least one output device in operative connection with the computer;

at least one transaction function device in operative connection with the computer;

transaction machine interface software in operative connection with the computer, wherein the interface software is operative to cause the computer to access an instruction document which includes a set of command instructions that define features of a single user interface, wherein the interface software is further operative to cause the computer to output through the at least one output device a first user interface responsive to the set of command instructions when the first input device is enabled, wherein the transaction machine interface software is further operative to cause the computer to output through the at least one output device a second user interface responsive to the set of command instructions when the second input device is enabled, and wherein the transaction machine interface software is operative to cause the computer to operate the transaction function device responsive to a first input through the first input device when the first user interface is being output, and wherein the transaction machine interface software is operative to cause the computer to operate the transaction function device responsive to a second input through the second input device when the second user interface is being output.

47. A method comprising:

a) accessing an instruction document with at least one ATM, wherein the instruction document includes a set of command instructions that define features of a single user interface screen;

b) presenting through at least one display device on the at least one ATM responsive to the set of command instructions a first view of the user interface screen including at least one first visual element adapted for selection using a first type of input device;

c) receiving at least one first input through a first input device on the at least one ATM that is of the first type;

d) operating at least one transaction function device on the at least one ATM responsive to receipt of the at least one first input while the first view is being presented;

e) presenting through the at least one display device on the at least one ATM responsive to the set of command instructions a second view of the user interface screen including at least one second visual element different from the at least one first visual element and adapted for selection using a second type of input device;

f) receiving at least one second input through a second input device on the at least one ATM that is of the second type; and

g) operating the at least one transaction function device on the at least one ATM responsive to receipt of the at least one second input while the second view is being presented.

Claims 45-51 stand rejected under 35 U.S.C. § 112, ¶ 1, as lacking a written description. Claims 31-34 stand rejected under 35 U.S.C. § 102(b) as anticipated by *XM, Java, and the Future of the Web* ("Bosak"). Claims 12-22, 28-30, 41, and 43 stand rejected under 35 U.S.C. § 103(a) as obvious over Bosak. Claims 1-11, 23-27, 33-40, 42, and 44 stand rejected under § 103(a) as obvious over *An Object-Oriented Framework for Transaction Capture using Co-operating Business Rule Components* ("Rivett-Carnac") and Bosak. Claims 45-49 and 51 stand rejected under § 103(a) as obvious over U.S. Patent No. 5,933,816 ("Zeanah"). Claims 50 and 52-56 stand rejected under § 103(a) as obvious over Zeanah and Bosak.

## II. OPINION

Our opinion addresses the rejections in the following order:

- written description rejection of claims 45-51

- anticipation rejection of claims 31 and 32 and obviousness rejection of claims 12-22, 28-30, 41, and 43

- anticipation rejection of claims 33 and 34

- obviousness rejection of claims 1-11, 23-27, 33-40, 42, and 44

- obviousness rejections of claims 45-56.

### A. WRITTEN DESCRIPTION REJECTION OF CLAIMS 45-51

"[T]o assure separate review by the Board of individual claims within each group

of claims subject to a common ground of rejection, an appellant's brief to the Board

must contain a clear statement for each rejection: (a) asserting that the patentability of

claims within the group of claims subject to this rejection do not stand or fall together,

and (b) identifying which individual claim or claims within the group are separately

patentable and the reasons why the examiner's rejection should not be sustained." *In*

*re McDaniel,* 293 F.3d 1379, 1383, 63 USPQ2d 1462, 1465 (Fed. Cir. 2002) (citing 37

C.F.R. §1.192(c)(7) (2001)). "If the brief fails to meet either requirement, the Board is

free to select a single claim from each group of claims subject to a common ground of

rejection as representative of all claims in that group and to decide the appeal of that

rejection based solely on the selected representative claim." *Id.,* 63 USPQ2d at 1465.

Here, the appellant groups claims 45 and 46, (2d Reply Br.[3] at 5-8), and also

groups claims 47-51. (*Id.* at 8-9.) We select claims 45 and 47 from the respective

group as representative of the claims therein.


With this representation in mind, rather than reiterate the positions of the

examiner or the appellant *in toto*, we focus on the point of contention therebetween.

"[T]he Examiner cannot locate original disclosure supporting the features of claims 45

and 47 whereby a computer provides two different screen elements that are selectable

with two different input devices." (Sub. Examiner's Answer[4] at 4.) The appellant makes

three arguments. First, "[s]upport for these recited features is found in the

Specification, for example at page 19, line 17 to page 20, line 3." (2d Reply Br. at 7.)

Second, "[c]laim 17 through the base claims from which it depends, recites the

generation of a first output through the first output device responsive to a first input to

the first input device (i.e. the first input device is enabled), and recites the generation of

---

[3]In our remand, we directed the appellant that "any subsequent brief submitted
by the appellant should be self-contained with respect to all arguments. No prior briefs
should be referenced or incorporated therein." *Putman*, at 3. The appellant filed a
subsequent brief, a "second Reply Brief," on March 17, 2005. In accordance with our
directions, we rely on and refer to that second Reply Brief in lieu of a prior "Reply
Brief," filed on May 28, 2002, and a "Brief of Appellant's", filed on February 27, 2002.
Neither the prior Reply Brief nor the Brief of Appellant's was considered in deciding this
appeal.

[4]We rely on and refer to the Substitute Examiner's Answer (Jan. 27, 2005) in lieu
of the original Examiner's Answer (Mar. 21, 2002) because the latter was defective.
*Putman* at 2-3. The original Examiner's Answer was not considered in deciding this
appeal.

a second output through a second output device responsive to a second input to a
second input device (i.e. the second input device is enabled)." (*Id.*) Third, "Figure 9
shows an example of two different ATM user interface views (1591, 1592) with different
visual elements (1521, 1522) which are produced responsive to the same common set
of instructions (203) and responsive to the different types of ATM hardware devices."
(*Id.*)

"[C]ompliance with the 'written description' requirement of §112 is a question of
fact. . . ." *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563, 19 USPQ2d 1111, 1116
(Fed. Cir. 1991) (citing *In re Gosteli*, 872 F.2d 1008, 1012, 10 USPQ2d 1614, 1618
(Fed. Cir. 1989); *Utter v. Hiraga*, 845 F.2d 993, 998, 6 USPQ2d 1709, 1714 (Fed. Cir.
1988)). "'Although [the applicant] does not have to describe exactly the subject matter
claimed, . . . the description must clearly allow persons of ordinary skill in the art to
recognize that [he or she] invented what is claimed.'" 935 F.2d at 1563, 19 USPQ2d
at 1116 (quoting *Gosteli*, 872 F.2d at 1012, 10 USPQ2d at 1618). "[T]he test for
sufficiency of support . . . is whether the disclosure of the application relied upon
'reasonably conveys to the artisan that the inventor had possession at that time of the
later claimed subject matter.'" *Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570,
1575, 227 USPQ 177, 179 (Fed. Cir. 1985) (quoting *In re Kaslow*, 707 F.2d 1366,
1375, 217 USPQ 1089, 1096 (Fed. Cir. 1983)). "Application sufficiency under §112,
first paragraph, must be judged as of the filing date [of the application]." *Vas-Cath*, 935

F.2d at 1566, 19 USPQ2d at 1119 (citing *United States Steel Corp. v. Phillips*

*Petroleum Co.*, 865 F.2d 1247, 1251, 9 USPQ2d 1461, 1464 (Fed. Cir. 1989)).

Here, neither claim 45 nor claim 47 is an original claim. Both were added by

amendment on August 7, 2001. For its part, claim 45 recites in pertinent part the

following limitations:

> the interface software is further operative to cause the computer to output
> through the at least one output device a first user interface responsive to
> the set of command instructions when the first input device is enabled,
> wherein the transaction machine interface software is further operative to
> cause the computer to output through the at least one output device a
> second user interface responsive to the set of command instructions
> when the second input device is enabled. . . .

Similarly, claim 47 recites in pertinent part the following limitations: "presenting through

the at least one display device on the at least one ATM responsive to the set of

command instructions a second view of the user interface screen including at least one

second visual element different from the at least one first visual element and adapted

for selection using a second type of input device. . . ." Accordingly, both claims require

that a **single** computer employs the **same** display device to show either a first user

interface screen or a second user interface screen responsive to the respective use of

a first input device or a second input device.

We consider the three items cited by the appellant *seriatim*. First, the passage

of the specification explains that the appellant's "invention enable[s] the use of

substantially identical instruction documents to control the interfaces and devices of

machines that are substantially different." (Spec. at 19.) This "includes machines

which have different types of output devices," (*id.*), and "further includes machines with

different types of input devices. . . ." (*Id.*) In summary, the passage addresses the use

of plural machines, each with its own input and output, rather than a single computer,

let alone a single computer that employs the same display device to show either a first

user interface screen or a second user interface screen responsive to the respective

use of a first input device or a second input device.


Second, original claim 17 is deficient for a similar reason. As admitted by the

appellant, "in this claim two computers are recited. . . ." (2d Reply Br. at 6.) "Claims in

dependent form shall be construed to include all the limitations of the claim

incorporated by reference into the dependent claim." 37 C.F.R. § 1.75(c). As specified

in original claim 12, from which claim 17 indirectly depends, "a first computer . . .

includes at least one first output device . . . and at least one first input device, wherein

the first input device is operative to receive at least one input from users. . . ." "[T]he

first computer is further operative to generate a first output through the first output

device responsive to the first input. . . ." (original claim 12.) As specified in original

claim 13, from which claim 17 directly depends, "a second computer . . . includes at

least one second output device . . . and at least one second input device, wherein the

second input device is operative to receive at least one input from users. . . ." "[T]he

second computer is further operative to generate a second output through the second
output device responsive to the second input. . . ." (original claim 13.) In summary,
original claim 17 addresses two computers, each generating an output on its own
output device responsive to an input via its own input device, rather than a single
computer, let alone a single computer that employs the same display device to show
either a first user interface screen or a second user interface screen responsive to the
respective use of a first input device or a second input device.

Third, Figure 9 is similarly deficient. The Figure "is a schematic view
representative of the two different types of automatic transaction machines utilizing the
same instruction document for generating user interface outputs." (Spec. at 7.) No
input devices are shown therein. In summary, Figure 9 shows two machines, each
generating user interfaces on its own display device, rather than a single computer, let
alone a single computer that employs the same display device to show either a first
user interface screen or a second user interface screen responsive to the respective
use of a first input device or a second input device.

Because none of the items cited by the appellant discloses that a **single**
computer employs the **same** display device to show either a first user interface screen
or a second user interface screen responsive to the respective use of a first input
device or a second input device, we find that the original disclosure of the application

fails to reasonably convey to the artisan that the appellant had possession, at the time

of the invention, of the aforementioned limitations. Therefore, we affirm the written

description rejection of claim 45; of claim 46, which fall therewith; of claim 47; and of

claims 48-51, which fall therewith.


### B. ANTICIPATION REJECTION OF CLAIMS 31 AND 32 AND
### OBVIOUSNESS REJECTION OF CLAIMS 12-22, 28-30, 41, AND 43

The examiner asserts, "[a] computer which carries out instructions automatically

is be taken to be an automated transaction machine." (Sub. Examiner's Answer at 12.)

The appellant argues, "a generic computer, as described in the Bosak reference, which

is not disclosed as being an automated transaction machine, and is not disclosed as

carrying out transactions including transfers of value, cannot be characterized as the

automated transaction machine recited in the claims." (2d Reply Br. at 16.)


In addressing the point of contention, the Board conducts a two-step analysis.

First, we construe claims at issue to determine their scope. Second, we determine

whether the construed claims are anticipated or would have been obvious.

### 1. Claim Construction

"Analysis begins with a key legal question — *what* is the invention *claimed*?"
*Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1567, 1 USPQ2d 1593, 1597 (Fed.
Cir. 1987). In answering the question, "[c]laims must be read in view of the
specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52
F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed. Cir. 1995).


Here, claim 31 recites in pertinent part the following limitations: "[a] method of
operating an automated transaction machine comprising: a) operating a computer in
the machine to receive at least one document . . . and c) providing an output through at
least one visual output device on the machine. . . ." Claims 12 and 28 recite similar
limitations.


The appellant's specification explains that "[f]or purposes of this disclosure an
automated transaction machine shall encompass any device which carries out
transactions including transfers of value." (Spec. at 1.) "A common type of automated
transaction machine used by consumers is an automated teller machine. . . ." (*Id.*)
"Common banking transactions that may be carried out with ATMs include the
dispensing of cash, the making of deposits, the transfer of funds between accounts, the
payment of bills and account balance inquiries. Other types of automated transaction
machines may allow customers to charge against accounts or to transfer funds." (*Id.*)

Reading claims 12, 28, and 31 in light of the specification, the limitations require a device that transfers funds and performs other transactions.

### b. Anticipation and Obviousness Determinations

"Having construed the claim limitations at issue, we now compare the claims to the prior art to determine if the prior art anticipates those claims." *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1349, 64 USPQ2d 1202, 1206 (Fed. Cir. 2002). "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed. Cir. 1987) (citing *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 715, 223 USPQ 1264, 1270 (Fed. Cir. 1984); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548, 220 USPQ 193, 198 (Fed. Cir. 1983); *Kalman v. Kimberly-Clark Corp.*, 713 F.2d760, 771, 218 USPQ 781, 789 (Fed. Cir. 1983)). "[A]bsence from the reference of any claimed element negates anticipation." *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1571, 230 USPQ 81, 84 (Fed. Cir. 1986).

Here, Bosak discloses that "[t]o address the requirements of commercial Web publishing and enable the further expansion of Web technology into new domains of distributed document processing, the World Wide Web Consortium has developed an Extensible Markup Language (XML) for applications that require functionality beyond

the current Hypertext Markup Language (HTML)." P. 1. Although "[a] computer which carries out instructions automatically," (Sub. Examiner's Answer at 12), can be a device that performs transactions, the examiner does not allege, let alone show, that the computer transfers funds.

The absence of a device that transfers funds negates anticipation. Therefore, we reverse the anticipation rejection of claim 31 and of claim 32, which depends therefrom.

"In rejecting claims under 35 U.S.C. Section 103, the examiner bears the initial burden of presenting a *prima facie* case of obviousness." *In re Rijckaert*, 9 F.3d 1531, 1532, 28 USPQ2d 1955, 1956 (Fed. Cir. 1993) (citing *In re Oetiker*, 977 F.2d 1443, 1445, 24 USPQ2d 1443, 1444 (Fed. Cir. 1992)). "A *prima facie* case of obviousness is established when the teachings from the prior art itself would . . . have suggested the claimed subject matter to a person of ordinary skill in the art.'" *In re Bell*, 991 F.2d 781, 783, 26 USPQ2d 1529, 1531 (Fed. Cir. 1993) (quoting *In re Rinehart*, 531 F.2d 1048, 1051, 189 USPQ 143, 147 (CCPA 1976)).

Here, the examiner does not allege, let alone show, that the addition of a device that transfers funds would have been obvious. Therefore, we reverse the obviousness

rejection of claim 12; of claims 13-22 and 41, which depend therefrom; of claim 28; and

of claims 29, 30, and 43, which depend therefrom.

### C. ANTICIPATION REJECTION OF CLAIMS 33 AND 34

When the patentability of dependent claims is not argued separately, the claims

stand or fall with the claims from which they depend. *In re King*, 801 F.2d 1324, 1325,

231 USPQ 136, 137 (Fed. Cir. 1986); *In re Sernaker*, 702 F.2d 989, 991, 217 USPQ 1,

3 (Fed. Cir. 1983). Here, the appellant does not argue the patentability of claim 34

seperately from that of claim 33, from which the former claim depends. Therefore,

claims 34 stands or falls with claim 33.


With this relation in mind, we focus on the following points of contention between

the examiner and the appellant:

- date of Bosak
- automated transaction machine.

#### 1. Date of Bosak

Noting that Bosak "is dated 3/10/1997," (Sub. Examiner's Answer at 11), the

examiner explains, "that date is taken to be the effective date of the reference. This

date is taken to be a publication date." (*Id.*) The appellant argues, "the Bosak

reference and the Office have provided no reliable evidence to indicate that this 'Last

revised' date is a publication date or a retrieval date." (2d Reply Br. at 11.)

For its part, Bosak bears a March 1997 date, viz., "1997.03.10." P. 1. Also, the

examiner has provided items that corroborate the publication date of March 1997.

First, an article from the World Wide Web Consortium ("W3C"), "an international

consortium where Member organizations, a full-time staff, and the public work together

to develop Web standards," W3C, *About the World Wide Web Consortium (W3C), at*

http://www.w3.org/Consortium (last visited July 8, 2005), is entitled "Extensible Markup

Language (XML)." P. 1. The article documents a "Mar 97," p. 5, date for Bosak and

indicates that the reference was presented at the "First XML Conference in San Diego."

*Id.* It constitutes evidence that the Member organizations, the full-time staff, and the

public considered Bosak to have been published in March of 1997. Second, a print-out

from "Netscape's 'Page Info' feature," (Sub. Examiner's Answer at 12), "indicates a

posting (and therefore, publication) date of 3/10/1997," (*id.*), for the reference.


For his part, the appellant has merely presented arguments that the March 1997

date is unreliable. (2d Reply Br. at 11-16.) Such "argument of counsel cannot take the

place of evidence." *In re Budnick*, 537 F.2d 535, 538, 190 USPQ 422, 424 (CCPA

1976) (citing *In re Schulze*, 346 F.2d 600, 145 USPQ 716 (CCPA 1965); *In re Cole*,

326 F.2d 769, 140 USPQ 230 (CCPA 1964)). Therefore, we are persuaded that Bosak

was published in March of 1997.

### 2. Automated Transaction Machine

The appellant argues, "a generic computer, as described in the Bosak reference,
which is not disclosed as being an automated transaction machine, and is not disclosed
as carrying out transactions including transfers of value, cannot be characterized as the
automated transaction machine recited in the claims." (2d Reply Br. at 16.) "Generally,
. . . the preamble does not limit the claims." *DeGeorge v. Bernier*, 768 F.2d 1318, 1322
n.3, 226 USPQ 758, 761 n.3 (Fed. Cir. 1985). In particular, "[t]he preamble of a claim
does not limit the scope of the claim when it merely states a purpose or intended use of
the invention." *In re Paulsen*, 30 F.3d 1475, 1479, 31 USPQ2d 1671, 1673 (Fed. Cir.
1994) (citing *DeGeorge*, 768 F.2d at 1322 n.3, 226 USPQ at 761 n.3). "Where . . . the
effect of the words [in the preamble] is at best ambiguous . . . a compelling reason must
exist before the language can be given weight." *Arshal v. United States*, 621 F.2d 421,
430-31, 208 USPQ 397, 406-07 (Ct. Cl. 1980) (citing *In re de Castelet*, 562 F.2d 1236,
1244 n.6, 195 USPQ 439, 447 n.6 (CCPA 1977)).

Here, in contrast to claim 31, the phrase "automated transaction machine" is
mentioned only in the preamble of claim 33. The mention thereof merely states a
purpose or intended use of the claimed method. The body of claim 33 neither repeats
nor references the phrase. Instead, the body specifies steps of the method. Because
the language in the body of the latter claim standing alone is clear and unambiguous,
we find no compelling reason to give the "automated transaction machine" weight. The

appellant's argument, which is premised on the phrase, is consequently unpersuasive.

Therefore, we affirm the anticipation rejection of claim 33 and of claim 34, which falls

therewith.


D. OBVIOUSNESS REJECTION OF CLAIMS 1-11, 23-27, 33-40, 42, AND 44

The appellant does not argue the patentability of claims 2-11, 24-27, 34-40

seperately from that of claims 1, 23, and 33, from which the former claims respectively

depend.  Therefore, claims 2-11, 24-27, 34-40 respectively stand or fall with claims 1,

23, and 33.


With this relation in mind, we focus on the following points of contention between

the examiner and the appellant:

- automated transaction machine
- motivation to combine Rivett-Carnac and Bosak
- instruction document
- event processor software component.


### 1. Automated Transaction Machine

The examiner finds, "Rivett-Carnac teaches a framework for transaction

processing systems for a bank. . . ." (Sub. Examiner's Answer at 6.) The appellant

argues, "a generic computer, as described in the Bosak reference, which is not

disclosed as being an automated transaction machine, and is not disclosed as carrying

out transactions including transfers of value, cannot be characterized as the automated transaction machine recited in the claims." (2d Reply Br. at 17.) In contrast to claim 31, the phrase "automated transaction machine" is mentioned only in the preambles of claims 1, 23, and 33. The mention thereof merely states a purpose or intended use of the claimed apparatus or method. The bodies of claims 1, 23, and 33 neither repeat nor reference the phrase. Instead, the bodies specify components of the apparatus or steps of the method. Because the language in the bodies of the latter claims standing alone is clear and unambiguous, we find no compelling reason to give the noted phrases weight. The appellant's argument, which is premised on the phrase, is consequently unpersuasive.

In contrast, claims 42 and 44 respectively depend from claims 28 and 33. As mentioned regarding the anticipation rejection of claims 31 and 33 and the obviousness rejection of claims 12-22, 28-30, 41, and 43, *supra*, claims 28 and 33 require a device that transfers funds and performs other transactions. The examiner has shown neither a teaching nor suggestion of such a device. Therefore, we reverse the obviousness rejection of claims 42 and 44.

### 2. Motivation to Combine Rivett-Carnac and Bosak

The examiner makes the following findings.

It would have been obvious to one of ordinary skill at the time of the
invention to have provided such a banking transaction system with xml
and style sheets as described by Bosak so that the data handling and
transaction logic can be constructed without regard to output/interface,
relying on style sheets to define the arrangement of the xml content. This
would enable various different end user machines to access the system
without requiring redesign specific to the end user hardware.

(Sub. Examiner's Answer at 7.)  The appellant alleges, "[t]he Examiner's Answer is

devoid of any prior art teaching, suggestion, or motivation for combining the features of

references."  (2d Reply Br. at 21.)


"The presence or absence of a motivation to combine references in an

obviousness determination is a pure question of fact." *In re Gartside*, 203 F3d 1305,

1316, 53 USPQ2d 1769, 1776 (Fed. Cir. 2000) (citing *In re Dembiczak*, 175 F.3d 994,

1000, 50 USPQ2d 1614, 1617 (Fed. Cir. 1999)).  A suggestion to combine teachings

from the prior art "may be found in explicit or implicit teachings within the references

themselves, from the ordinary knowledge of those skilled in the art, or from the nature

of the problem to be solved." *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339,

1335, 51 USPQ2d 1385, 1397 (Fed. Cir. 1999) (citing *In re Rouffet*, 149 F.3d 1350,

1355, 47 USPQ2d 1453, 1456 (Fed. Cir. 1998)).

.    Here, the examiner found the aforementioned advantages to combining teachings from Rivett-Carnac and Bosak. The appellant does not allege, let alone show, error in that finding.  Therefore, we affirm the obviousness rejection of claim 33 and of claims 34-40, which fall therewith.  Regarding claims 1-11 and 23-27, however, we have further points of contention to consider, *infra*.

### 3. Instruction Document

The examiner finds, "[a]ny software, including print driver software is taken to be an instruction document." (Sub. Examiner's Answer at 5.)  The appellant argues, "Rivett-Carnac does not disclose or suggest instruction documents which include a plurality of command instructions." (2d Reply Br. at 20.)

### a. Claim Construction

"[T]he Board must give claims their broadest reasonable construction. . . ." *In re Hyatt*, 211 F.3d 1367, 1372, 54 USPQ2d 1664, 1668 (Fed. Cir. 2000). "Moreover, limitations are not to be read into the claims from the specification." *In re Van Geuns*, 988 F.2d 1181, 1184, 26 USPQ2d 1057, 1059 (Fed. Cir. 1993) (citing *In re Zletz*, 893 F.2d 319, 321, 13 USPQ2d 1320, 1322 (Fed. Cir. 1989)).

Here, claim 1 recites in pertinent part the following limitations: "a document in operative connection with the computer, wherein the document includes a plurality of

command instructions. . . ." Claim 23 recites a similar limitation. Giving claims 1 and

23 their broadest, reasonable construction, the limitations require computer

instructions.

### b. Obviousness Determination

Having determined what subject matter is being claimed, the next inquiry is

whether the subject matter would have been obvious. The question of obviousness is

"based on underlying factual determinations including . . . what th[e] prior art teaches

explicitly and inherently. . . ." *In re Zurko*, 258 F.3d 1379, 1383, 59 USPQ2d 1693,

1696 (Fed. Cir. 2001) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 148 USPQ

459, 467 (1966); *In re Dembiczak*, 175 F.3d 994, 998, 50 USPQ 1614, 1616 (Fed. Cir.

1999); *In re Napier*, 55 F.3d 610, 613, 34 USPQ2d 1782, 1784 (Fed. Cir. 1995)).

Here, Rivett-Carnac explains that "[t]ransaction capture is the process by which

details of a change occurring outside the bounds of a system, are captured, validated

and applied to the system." PP. 126-27. For its part, the reference discloses that "[a]

framework for transaction capture programs was devised, which defines a set of

classes, available as components in for the developer, to implement a transaction

capture process. Programmers use the framework components as the basis for

developing further re-usable components implementing business-related function."

P. 126.

Being computer programs, we find that the reference's transaction capture

programs include computer instructions. As a computer language, moreover, we find

that Bosak's XML includes computer instructions. Therefore, we affirm the obviousness

rejection of claim 23 and of claims 24-27, which fall therewith. Regarding claims 1-11,

however, we have a final point of contention to consider, *infra*.


### 4. Event Processor Software Component

The examiner finds, "Page 133 [of Rivett-Carnac] describes when an attribute's

value is changed by a user (via input device), an event is triggered (change warning)

which is handled by an event handler (event processor)." (Sub. Examiner's Answer at

7.) The appellant argues that claim 1 "recite[s] features such as event processor

software components, which are not found in the hypothetical standard browser

described in the Examiner's Answer." (2d Reply Br. at 18.)


### a. Claim Construction

Here, claim 1 recites in pertinent part the following limitations: "at least one

event processor software component in operative connection with the computer. . . ."

Giving the claim its broadest, reasonable construction, the limitations require software

for processing events.

### b. Obviousness Determination

Rivett-Carnac discloses a *control framework . . . for separating the GUI interface (presentation layer), business rules and persistent storage,* p. 126, of a *transaction capture program,* id. for *a London bank. . . .* Id. "When a Transaction Attribute's value is changed by the User or a Business Rule, it informs all its connected Rule Attributes. The Rule Attribute publishes a 'change warning' event to which the developer of the rule may attach an **event handler** to determine whether or not the rule checking should be invoked and, if so, to place the rule in the queue of rules waiting to be checked." P. 133 (emphasis added). Attached to a "change warning event" to determine whether rule checking should be invoked, we find that the event handler is a software component for processing events.

Assuming *arguendo* that the claimed "event processor software component" is "not found in the hypothetical standard browser," (2d Reply Br. at 18), the examiner found that the claimed limitation was taught by Rivett-Carnac's event handler. The appellant does not allege, let alone show, error in that finding. Therefore, we affirm the obviousness rejection of claim1 and of claims 2-11, which fall therewith.

### E. OBVIOUSNESS REJECTIONS OF CLAIMS 45-56

As aforementioned, the examiner rejects claims 45-49 and 51 as obvious over Zeanah and claims 50 and 52-56 as obvious over Zeanah and Bosak. More

Appeal No. 2005-1683                                                     Page 28
Application No. 09/233,249

specifically, he takes three pages of his Substitute Examiner's Answer to explain the
rejections. (Sub. Examiner's Answer at 8-10.) The appellant does not address, let
alone show, error in the explanation. Therefore, we affirm the obviousness rejections
of claims 45-56.

## CONCLUSION

In summary, the rejection of claims 45-51 under 35 U.S.C. § 112, ¶ 1, is
affirmed. The rejection of claims 31 and 32 under § 102(b) is reversed, while the
rejection of claims 33 and 34 under § 102(b) is affirmed. The rejections of claims 1-11,
23-27, 33-40, and 45-56 are affirmed, while the rejections of claims 12-22, 28-30, and
41-44 under § 103(a) are reversed.

"Any arguments or authorities not included in the brief will be refused
consideration by the Board of Patent Appeals and Interferences. . . ." 37 C.F.R.
§ 1.192(a). Accordingly, our affirmance is based only on the arguments made in the
"second Reply Brief," filed on March 17, 2005. Any arguments or authorities omitted
therefrom are neither before us nor at issue but are considered waived. *Cf. In re Watts*,
354 F.3d 1362, 1367, 69 USPQ2d 1453, 1457 (Fed. Cir. 2004) ("[I]t is important that
the applicant challenging a decision not be permitted to raise arguments on appeal that
were not presented to the Board.") No time for taking any action connected with this
appeal may be extended under 37 C.F.R. § 1.136(a).

Appeal No. 2005-1683
Application No. 09/233,249

Page 29

AFFIRMED-IN-PART

KENNETH W. HAIRSTON    )
Administrative Patent Judge   )
            )
            )
            ) BOARD OF PATENT
LANCE LEONARD BARRY    ) APPEALS
Administrative Patent Judge   )  AND
            ) INTERFERENCES
            )
            )
ROBERT E. NAPPI      )
Administrative Patent Judge   )

Appeal No. 2005-1683
Application No. 09/233,249

Page 30

RALPH E. JOCKE
231 SOUTH BROADWAY
MEDINA, OH 44256