```
                                                                    1
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

        HAROLD PUTMAN,           )
                                 )
                    Plaintiff,   ) Docket No. CA 05-1796
                                 )
              v.                 )
                                 )
        JONATHAN W. DUDAS,       ) Washington, D.C.
                                 ) December 20, 2005
                    Defendant.   ) 11:00 a.m.

                  TRANSCRIPT OF INITIAL STATUS CONFERENCE
                  BEFORE THE HONORABLE JOHN GARRETT PENN,
                       UNITED STATES DISTRICT JUDGE

        APPEARANCES:
          For the Plaintiff:     WALKER & JOCKE
                                 Ralph E. Jocke, Esq.
                                 Patricia Walker, Esq.
                                 231 S. Broadway
                                 Medina, OH 44256
                                 330.721.0000

          For the Defendant:     US PATENT & TRADEMARK OFFICE
                                 Office of the Solicitor
                                 William LaMarca, Esq.
                                 Heather F. Auyang, Esq.
                                 600 Dulany street
                                 Madison West, 8C43-A
                                 Alexandria, VA 22314
                                 571.272.9035

                                 UNITED STATES ATTORNEY'S OFFICE
                                 Benton Gregory Peterson, AUSA
                                 555 North Street, NW
                                 Washington, D.C. 20530

          Court Reporter:        Scott L. Wallace, RDR, CRR
                                 Official Court Reporter
                                 Room 6814, U.S. Courthouse
                                 Washington, D.C. 20001
                                 202.326.0566

        Proceedings reported by machine shorthand, transcript produced
        by computer-aided transcription.
```

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

---

2

1  MORNING SESSION, DECEMBER 20, 2005
2  (11:04 a.m.)
3      THE DEPUTY CLERK: Calling the case of Harold Putman
4  versus Jonathan W. Dudas, Civil Action 05-1796. Mr. Jocke,
5  Ms. Walker and Mr. Wilson on behalf of the plaintiff;
6  Mr. Peterson, Mr. LaMarca, Ms. Auyang on behalf of the defendant.
7      THE COURT: Good morning, counsel.
8      ALL PARTIES PRESENT: Good morning, Your Honor.
9      THE COURT: This matter is before the Court for an initial
10 hearing. Are there any preliminary matters that you wish to
11 address with the Court before we go forward?
12     MR. PETERSON: Not that we are aware of, Your Honor.
13     THE COURT: What's that?
14     MR. PETERSON: None that we're aware of right now, Your
15 Honor.
16     THE COURT: All right. Counsel, I have received your
17 joint statement. I understand that there's some disagreement
18 between the parties, but if the plaintiff would take a few
19 minutes and just set out the facts of the case for me.
20     MR. JOCKE: Thank you, Your Honor. With your permission,
21 I brought a few pages that I think may be helpful in explaining
22 the nature of the case.
23     This is an action, Your Honor, that's been brought by
24 Harold Putman as an inventor, a patent applicant. The patent
25 application itself is a --

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

---

3

1      THE COURT: Now, is Mr. Putman here?
2      MR. JOCKE: No, he's not. He assigned his invention as an
3  employee of the company and his invention is assigned to Diebold,
4  Incorporated and Diebold is the owner of all right and title to
5  the invention.
6      Diebold is a company that's been around for a long time.
7  They were founded in 1859 in Ohio and they continue in business.
8  Diebold's original claim to fame was that they were the only ones
9  who made safes whose contents survived the great Chicago fire in
10 1871 and that's what really caused their business to take off.
11 They're still in business making security products for banks,
12 such as vaults and locks and things of that type. But today,
13 their primary business is that of a maker of ATM machines. And
14 they are a U.S. manufacturer of ATM machines, one of the few
15 that's still making those machines in the United States.
16     THE COURT: One of the few making those machines in the
17 United States?
18     MR. JOCKE: Yes, sir.
19     THE COURT: Where are the others made?
20     MR. JOCKE: Well, NCR, the largest manufacturer of those
21 machines -- they have their operations in Scotland.
22     THE COURT: Scotland?
23     MR. JOCKE: Yes, sir.
24     THE COURT: All right.
25     MR. JOCKE: And then there are other smaller

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

---

4

1  manufacturers, Korean manufacturers, such as Hyosung, Brazilian
2  manufacturers, but we're the U.S. manufacturer.
3      THE COURT: I see. Okay.
4      MR. JOCKE: The invention that the patent was applied for
5  is an ATM that uses what Diebold calls the "screen and dialogue
6  definition"; it's a language -- software -- called SADDLE. And
7  simply put, prior ATM machines had one software program that
8  controlled all of the things in the machine. And as you can
9  imagine, Your Honor, there are thousands of things that have to
10 happen as you walk up to that machine, put in your card, put in
11 your secret number through the buttons and the devices operate.
12     And all of those things, before this invention was filed
13 more than seven years ago, were pretty much done through one
14 software program that took care of everything. And as the slide
15 states, some of the drawbacks of doing that are that it has to be
16 specific to that particular kind of machine; it's time consuming
17 to create and very difficult to change because if you change one
18 thing, that impacts a whole bunch of other things.
19     The concept of the --
20     THE COURT: When you say "change," change like what?
21     MR. JOCKE: Well, what happens is you may have to replace
22 a card reader that was on the machine. It becomes no longer
23 available because it's been discontinued or it's obsolete or
24 there's a better one. So when you go to start putting a new card
25 reader either on machines that are already in the field or those

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

### Page 5

11:09AM 1  that you are making in your factory, you've now got to change the
11:09AM 2  programming in order to address that new machine. It's going to
11:09AM 3  be different.
11:09AM 4      And of course, as you change something over here, you can
11:09AM 5  almost think of it as a house of cards. When you do something
11:09AM 6  over here, it may impact something over here and that makes it
11:09AM 7  somewhat difficult to make any modifications. And modifications
11:09AM 8  are very frequent.
11:09AM 9      The SADDLE idea was really to take the software and break
11:10AM 10 it up into three distinct building blocks. The one building
11:10AM 11 block is the Transaction-Machine Interface or the TMI. And that
11:10AM 12 operates the screen and it communicates with the user button and
11:10AM 13 it takes care of the things that interact with a user. And the
11:10AM 14 software that does that is in that particular building block.
11:10AM 15     And then another building block is what's called the Event
11:10AM 16 Processors. And those things specifically take care of a given
11:10AM 17 device or devices. You can think of that as something that you
11:10AM 18 tell the device to dispense cash, you send it a message to do
11:10AM 19 that, it does it and it reports back whether it did it or not.
11:10AM 20     And then the third element is what we call an Instruction
11:10AM 21 Document. It's software, but it has the text in it that's going
11:11AM 22 to be displayed on the screen throughout the transactions that
11:11AM 23 you might conduct. It also tells the TMI part what Event
11:11AM 24 Processor to talk to when something happens, when that screen is
11:11AM 25 up there, and what to say, so it acts as sort of the source of

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

### Page 6

11:11AM 1  the text as well as the traffic cop to address the particular
11:11AM 2  Event Processor.
11:11AM 3      And the advantage of doing it this way is that it makes it
11:11AM 4  pretty easy to change because things are isolated in their
11:11AM 5  particular building blocks. And particularly if you want to
11:11AM 6  change the screen language, if you want to have alternatives in
11:11AM 7  different languages or different kinds of things, that can be
11:11AM 8  addressed by simply changing the document instructions.
11:11AM 9      It's also more cost effective because what happens is you
11:11AM 10 can use the document part and you can put that in different types
11:11AM 11 of ATM machines. And so you can take that over to a completely
11:12AM 12 different type of machine and it will provide the same kind of
11:12AM 13 interface, the same instructions, and it will work the same way.
11:12AM 14     The history of this in the Patent Office is that, as I
11:12AM 15 say, the patent application was filed seven years ago now; the
11:12AM 16 patent examiner rejected all the claims in the application and
11:12AM 17 then it went up to the Board of Appeals and Interferences within
11:12AM 18 the Patent Office and the Patent Office Board of Appeals reversed
11:12AM 19 the examiner on the claims indicated, 20 of the 56 claims. The
11:12AM 20 Board did sustain some of the rejections on various grounds.
11:12AM 21     And this action is brought pursuant to 35 U.S.C. 145,
11:12AM 22 which allows a patent applicant to bring a civil action to obtain
11:12AM 23 a patent.
11:12AM 24     The plaintiff's position in this is that the patent
11:13AM 25 application is technically complete and discloses the inventions

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

### Page 7

11:13AM 1  that are there; the prior art that the Patent Office cited
11:13AM 2  against it really doesn't have anything to do with ATMs, at least
11:13AM 3  for the most part, and the SADDLE ATM is not obvious or
11:13AM 4  anticipated, based on anything that's come before.
11:13AM 5      One of the key issues in this case involves an Internet
11:13AM 6  posting that's called the Bosak Internet posting and the Patent
11:13AM 7  Office cited it as prior art, but that posting was not made until
11:13AM 8  after Mr. Putman's patent application was filed, so we don't
11:13AM 9  believe that that is appropriate prior art.
11:13AM 10     And then this is an invention that was made and reduced to
11:13AM 11 practice within the United States. The Patent Office currently
11:13AM 12 contends that even though the Board allowed or indicated some
11:13AM 13 claims were not rejected, the Patent Office is contending now
11:14AM 14 that none of the claims here are patentable and so, because this
11:14AM 15 invention was made in the United States, we have the ability to
11:14AM 16 claim the invention as of the date that it was first made rather
11:14AM 17 than the date that the application was filed and if necessary,
11:14AM 18 depending on what the Patent Office brings against us, we will
11:14AM 19 show that.
11:14AM 20     And we believe that the SADDLE ATM qualifies for patent
11:14AM 21 protection by being new, useful, novel and unobvious.
11:14AM 22     THE COURT: All right. Anything else about the -- what is
11:14AM 23 the relief you're seeking here, then?
11:14AM 24     MR. JOCKE: We are seeking a decision from the Court that
11:14AM 25 the invention as claimed qualifies for patent protection.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

### Page 8

11:14AM 1      THE COURT: And what about the decision by the Board?
11:14AM 2  What impact does that have on any hearing here?
11:15AM 3      MR. JOCKE: Well, Your Honor, the -- it's our position
11:15AM 4  that certainly the record within the Patent Office comes in as an
11:15AM 5  administrative record. It should be admissible in evidence.
11:15AM 6      However, the Supreme Court itself has said that when you
11:15AM 7  come to court, it's basically something that is considered
11:15AM 8  de novo by this Court, reviewing whether or not a patent should
11:15AM 9  be granted.
11:15AM 10     THE COURT: All right. Thank you.
11:15AM 11     MR. JOCKE: Thank you.
11:15AM 12     THE COURT: Mr. Peterson, let's hear your side of the
11:15AM 13 story.
11:15AM 14     MR. PETERSON: Good morning, Your Honor.
11:15AM 15     THE COURT: Good morning.
11:15AM 16     MR. PETERSON: For the purposes of this proceeding, Your
11:15AM 17 Honor, the defendant doesn't quibble with the history that was
11:15AM 18 cited. I think the most germane part of this is that we do
11:15AM 19 maintain that the patent applications represented unpatentable
11:15AM 20 applications in that, under 35 U.S.C. 102 and 103, there are
11:16AM 21 certain prerequisites that were required of the potential patent
11:16AM 22 holder that weren't fulfilled and certain patents themselves
11:16AM 23 failed under that statutory provision as obvious.
11:16AM 24     And to the degree that the Court looks for more
11:16AM 25 information with regard to that, we'll be happy to brief that for

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## Page 9

11:16AM 1  you.
11:16AM 2      The purpose -- for the purposes of this proceeding, we
11:16AM 3  would just like to state that we have certain disagreements with
11:16AM 4  regard to areas concerning a protective order or secrecy
11:16AM 5  provision with regard to the document that we filed, the Joint
11:16AM 6  Status Report. We still maintain that we can make an argument to
11:16AM 7  say that the secrecy order or the protective order that the
11:16AM 8  plaintiff seeks in this case is unnecessary for the purposes of
11:17AM 9  this proceeding in Federal Court.
11:17AM 10     Our story -- our side of the story is basically that there
11:17AM 11 are precedents before the Board on the administrative level that
11:17AM 12 maintain that you -- if you have evidence that you want to bring
11:17AM 13 forward, you should bring forward that evidence at that level.
11:17AM 14 We anticipate that --
11:17AM 15     THE COURT: "At that level" being the --
11:17AM 16     MR. PETERSON: At the administrative level, yes. We
11:17AM 17 anticipate that the plaintiffs may attempt to bring forth new
11:17AM 18 evidence that wasn't before the Board at the administrative level
11:17AM 19 and to that extent, as you may have read in our joint statement,
11:17AM 20 we hope to perhaps file a motion to exclude that evidence from
11:17AM 21 this proceeding. That's --
11:17AM 22     THE COURT: "That evidence" being any new evidence?
11:18AM 23     MR. PETERSON: "That evidence" being new evidence.
11:18AM 24     THE COURT: So you're looking at this primarily as a
11:18AM 25 review of the decision by the Board?

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## Page 10

11:18AM 1      MR. PETERSON: That's correct, Your Honor.
11:18AM 2      THE COURT: And nothing else?
11:18AM 3      MR. PETERSON: Well, in terms of sustaining the Board's
11:18AM 4  decision, that's what we're after.
11:18AM 5      THE COURT: Anything else that you can say to enlighten
11:18AM 6  me?
11:18AM 7      MR. PETERSON: In terms of the factual background, Your
11:18AM 8  Honor?
11:18AM 9      THE COURT: Yes.
11:18AM 10     MR. PETERSON: From our perspective, you know, there isn't
11:18AM 11 any more in terms of the factual background that we have at this
11:18AM 12 point.
11:18AM 13     I would like to confer with my clients just for a second.
11:18AM 14     THE COURT: Surely.
11:18AM 15     (Brief pause.)
11:18AM 16     MR. PETERSON: Your Honor, we have Mr. LaMarca here.
11:19AM 17     MR. LaMARCA: Your Honor, I just wanted to clarify the one
11:19AM 18 point.
11:19AM 19     THE COURT: And you're Mr. --
11:19AM 20     MR. PETERSON: LaMarca.
11:19AM 21     MR. LaMARCA: LaMarca, correct, for the PTO.
11:19AM 22     With respect to new evidence or new arguments, I think,
11:19AM 23 just to clarify what Mr. Peterson said, we take the position in
11:19AM 24 this case there were certain evidence and arguments that the
11:19AM 25 plaintiff had in his possession before the Board -- voluntarily

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## Page 11

11:19AM 1  chose not to present that evidence and arguments to the Board.
11:19AM 2  That's the evidence that we would move to exclude in this case.
11:19AM 3      THE COURT: Why?
11:19AM 4      MR. LaMARCA: Well, we think the case law supports that
11:19AM 5  position that a plaintiff cannot sandbag the Patent Office.
11:19AM 6  Basically, if you read the case law from this district, the
11:19AM 7  District of Columbia -- and we can cite plenty of case law for
11:19AM 8  you if we brief this issue -- that when you're before the agency,
11:19AM 9  if you have evidence and arguments in your possession, you need
11:19AM 10 to present that evidence and arguments to the agency to give the
11:19AM 11 agency the opportunity to address those arguments and evidence.
11:19AM 12 You can't sit back, hold back the evidence, hold back the
11:19AM 13 arguments and then later, once you get to District Court, lay
11:19AM 14 that evidence and arguments on the court, in effect asking the
11:20AM 15 court to substitute itself for the examination expertise of the
11:20AM 16 agency.
11:20AM 17     So I think if you look -- what we pointed out in the joint
11:20AM 18 statement and what we would brief in a briefing on this issue is
11:20AM 19 we would argue to this Court that the current law of this
11:20AM 20 district is that that type of evidence and argument is not
11:20AM 21 permissible. And this Court in the past multiple times would not
11:20AM 22 allow plaintiffs to bring those types of evidence and arguments
11:20AM 23 in.
11:20AM 24     So I think that's just a clarification of the point
11:20AM 25 Mr. Peterson was trying to make earlier.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## Page 12

11:20AM 1      THE COURT: With respect to what you've just said as to
11:20AM 2  what this Court would allow or not allow, and I'm not asking for
11:20AM 3  a briefing at this point, but do you have any cases that I could
11:20AM 4  look at?
11:20AM 5      MR. LaMARCA: We didn't cite any cases in our joint
11:20AM 6  statement. And DeSersky -- there's a recent District Court
11:20AM 7  decision that's an unpublished decision that came out.
11:20AM 8      Do you know what judge --
11:20AM 9      MR. AUYANG: It was Judge Kennedy.
11:20AM 10     MR. LaMARCA: Judge Kennedy just had a case, another 145
11:21AM 11 action, where a similar issue was made, where there were
11:21AM 12 arguments about evidence and arguments that they had previously.
11:21AM 13 And the case law is pretty clear, we believe, that if you've got
11:21AM 14 the evidence and arguments in your possession before the agency,
11:21AM 15 a 145 appeal to the District Court is not an appropriate avenue
11:21AM 16 to get that evidence in. That evidence should have been brought
11:21AM 17 in before the agency when you had it.
11:21AM 18     Otherwise -- otherwise, plaintiffs would just simply
11:21AM 19 circumvent the agency all the time if it was to their advantage.
11:21AM 20 They would simply hold back evidence and arguments that they have
11:21AM 21 before the agency and then file a District Court suit like this
11:21AM 22 one and then bring all that evidence and arguments in later. And
11:21AM 23 the case law has developed to prevent that exact type of conduct.
11:21AM 24 And although I don't have the cites for you here today, when we
11:21AM 25 brief it, we will cite for you the case law that supports that.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## Page 13

11:21AM 1  THE COURT: But you said that was a non-reported case?
11:21AM 2  MR. LaMARCA: But there are other precedential reported
11:21AM 3  cases. Hyatt v. Dudas is the lawsuit -- there are five or six --
11:21AM 4  Hyatt 145 actions where that issue has come up multiple times.
11:21AM 5  And that's been briefed and plenty of authority has been cited in
11:22AM 6  that briefing. We would cite similar authority in this case.
11:22AM 7  THE COURT: You seem to rely on Judge Kennedy's case.
11:22AM 8  When was that decided?
11:22AM 9  MR. LaMARCA: Recently.
11:22AM 10 MS. AUYANG: Your Honor, Heather Auyang. I think it was
11:22AM 11 in the last couple months.
11:22AM 12 THE COURT: Last couple months?
11:22AM 13 MR. LaMARCA: It's very recent.
11:22AM 14 THE COURT: Has there been an appeal?
11:22AM 15 MS. AUYANG: I'm sorry. What?
11:22AM 16 THE COURT: Has there been an appeal of that?
11:22AM 17 MS. AUYANG: No, there hasn't been an appeal.
11:22AM 18 THE COURT: And where would an appeal go?
11:22AM 19 MR. LaMARCA: Probably the Federal Circuit.
11:22AM 20 THE COURT: Federal Circuit?
11:22AM 21 MR. LaMARCA: Federal Circuit, correct.
11:22AM 22 THE COURT: All right.
11:22AM 23 MR. LaMARCA: So that's just a little bit of clarification
11:22AM 24 on that issue.
11:22AM 25 THE COURT: All right.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## Page 14

11:22AM 1  MR. LaMARCA: And also, Mr. Peterson also mentioned with
11:22AM 2  respect to a protective order, the PTO doesn't believe that this
11:22AM 3  proceeding should -- a protective order is appropriate. We
11:22AM 4  believe that this proceeding is a public proceeding just like any
11:22AM 5  court proceeding and that the protections of 35 U.S. Code 122
11:22AM 6  which apply to the Patent Office at the agency -- that this Court
11:22AM 7  is not bound by that statutory provision.
11:22AM 8  And we would brief that issue also. If the plaintiff
11:22AM 9  wants to move for protective order, we would want an opportunity
11:22AM 10 to respond and we will brief the issue for you so you can make an
11:23AM 11 informed decision.
11:23AM 12 And that's all I have. Thank you, Your Honor.
11:23AM 13 THE COURT: All right.
11:23AM 14 Mr. Peterson.
11:23AM 15 MR. PETERSON: In addition to what Mr. LaMarca just
11:23AM 16 informed the Court about, there -- just to set things out before
11:23AM 17 the Court so that you know where we're thinking, we may at some
11:23AM 18 point file a motion to remand with regard to the issues that have
11:23AM 19 not been placed before the Board in the proper manner,
11:23AM 20 specifically with regard to the issues that Mr. LaMarca had
11:23AM 21 mentioned, for purposes of negligence or purposes of the
11:23AM 22 plaintiff's own design, did not make it to the Board for the
11:23AM 23 Board's consideration.
11:24AM 24 So those issues, we feel we may have to file a motion to
11:24AM 25 remand with regard to those issues. And --

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## Page 15

11:24AM 1  THE COURT: Why would a party not present its entire case
11:24AM 2  before the -- if it has the evidence? Why wouldn't they have
11:24AM 3  presented the entire case before the Board?
11:24AM 4  MS. AUYANG: Your Honor, that's a good question. And in
11:24AM 5  this case, the plaintiff was specifically told to present all of
11:24AM 6  its evidence and he chose not to do so. And so the Patent Office
11:24AM 7  is looking to either exclude that evidence or remand the case
11:24AM 8  back to the PTO so that they can consider the entire record.
11:24AM 9  In addition, the office does contend that all the claims
11:24AM 10 in this patent, this patent application, are unpatentable under
11:24AM 11 certain statutory provisions. And we have additional rejections
11:24AM 12 that were not made in this record that we would also consider.
11:24AM 13 And so we may seek to file a motion to remand on that basis so
11:25AM 14 that the agency can take a fresh look at and it complete the
11:25AM 15 record for Your Honor.
11:25AM 16 THE COURT: What does the record, as you refer to it,
11:25AM 17 consist of?
11:25AM 18 MS. AUYANG: The record essentially consists of -- when a
11:25AM 19 patent applicant comes into the office, he files an application.
11:25AM 20 It's what's called a "specification" and it contains the claims
11:25AM 21 that this applicant thinks he's entitled to as his invention.
11:25AM 22 And as the office examines the application, it goes through sort
11:25AM 23 of a back and forth between the applicant and the patent
11:25AM 24 examiner, so we issue what's called an "office action." The
11:25AM 25 applicant responds. And so there's this back and forth type of

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## Page 16

11:25AM 1  correspondence, which is the record before the office. And
11:25AM 2  eventually, as plaintiff mentioned, it does go before the Board
11:25AM 3  at the PTO, which issues a decision and which is now before you,
11:25AM 4  Your Honor.
11:25AM 5  And we contend that this is, in fact, a hybrid trial, and
11:26AM 6  so that the agency record and the fact finding before the Board
11:26AM 7  should be given substantial evidence review and if, in fact,
11:26AM 8  there is any new evidence that's allowed in this case, that would
11:26AM 9  be possibly de novo.
11:26AM 10 But at this point, Your Honor, we're looking to remand the
11:26AM 11 case because we have all of this -- additional issues that we
11:26AM 12 need to deal with before the office, including new rejections and
11:26AM 13 evidence that was never considered that the office told the
11:26AM 14 applicant to submit and the applicant intentionally withheld that
11:26AM 15 evidence.
11:26AM 16 THE COURT: All right. Thank you.
11:26AM 17 MR. JOCKE: Your Honor?
11:26AM 18 THE COURT: Yes.
11:26AM 19 MR. JOCKE: I'm sorry. I didn't realize --
11:26AM 20 THE COURT: Is that all, Mr. Peterson?
11:26AM 21 MR. PETERSON: That's all for this side at this point.
11:26AM 22 MR. JOCKE: I wanted to make a couple of quick points.
11:26AM 23 They may be helpful.
11:26AM 24 First, as you'll notice, the Patent Office is taking the
11:26AM 25 position in this case that although the Board decided that many

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

17

11:27AM  1   of the claims met the requirements for patentability, they now
11:27AM  2   want to bring additional rejections.  It would seem terribly
11:27AM  3   unfair for them to bring additional evidence to show that what
11:27AM  4   we're claiming isn't patentable without us being able to present
11:27AM  5   evidence to rebut that, those new arguments that they would wish
11:27AM  6   to make.
11:27AM  7           And I would draw the Court's attention to a Supreme Court
11:27AM  8   case, which is the Dickinson versus Zurko, and that's 50 -- let
11:27AM  9   me get the Supreme Court cite.  It's -- I have the USPQ cite.
11:27AM 10   I'm terribly sorry.  The USPQ cite is 50 USPQ2d 1930.  It's a
11:27AM 11   case decided in 1999.
11:28AM 12           And what Zurko was about was that the Patent Office has
11:28AM 13   been -- had been trying for many years to have its decisions
11:28AM 14   covered under the Administrative Procedure Act, particularly when
11:28AM 15   appeal was taken directly from the Patent Office to the Court of
11:28AM 16   Appeals for the Federal Circuit.
11:28AM 17           There are two ways that an applicant can appeal the
11:28AM 18   decision of the Patent Office.  One is a civil action like we
11:28AM 19   have here.  The other is to go directly to the Federal Circuit.
11:28AM 20   And Mr. Peterson is correct in that if you're appealing directly
11:28AM 21   to the Federal Circuit, you cannot bring in new evidence in that
11:28AM 22   appeal.
11:28AM 23           What happened in the Dickinson case was the Patent Office
11:28AM 24   was arguing that more deference should be paid to their findings
11:28AM 25   in an appeal from the Patent Office to the Federal Circuit.  The

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

18

11:29AM  1   Court discussed in detail on page 1936 of that decision the two
11:29AM  2   different standards that are applied in appeals when one takes
11:29AM  3   the different routes to the Federal Circuit, either directly from
11:29AM  4   the Patent Office or by filing a civil action, as we have here.
11:29AM  5           And you'll see, Your Honor, that the Supreme Court itself
11:29AM  6   in its most recent decision on this topic mentions that a patent
11:29AM  7   applicant is allowed to present additional evidence.  And there
11:29AM  8   are other cases as well.
11:29AM  9           I'd also like to take a minute to address the issue of the
11:29AM 10   request for protective order.  I would hope that Mr. Peterson and
11:29AM 11   I could agree to this.  There is a statute; it's 35 U.S.C. 122.
11:29AM 12   I have only one copy of it, Your Honor, but I'm happy to provide
11:29AM 13   it, with your permission.
11:30AM 14           That's the version of the statute that applies to this
11:30AM 15   situation because it's the one that was in effect at the time
11:30AM 16   this patent application was filed.  And it requires that the
11:30AM 17   Patent Office keep its information about inventions confidential.
11:30AM 18           The underlying rationale of filing a patent is that you
11:30AM 19   file a patent application and while it's pending, the Patent
11:30AM 20   Office is obligated to keep it secret.  The -- if the patent
11:30AM 21   applicant chooses to then receive a patent, then the information
11:30AM 22   about their invention is made public for everyone to see in
11:30AM 23   exchange for a limited term of protection.
11:30AM 24           But until the applicant is granted a patent, then -- or
11:30AM 25   even if the applicant is never granted a patent, the Patent

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

19

11:30AM  1   Office is obligated to keep the information about that
11:30AM  2   application secret.
11:31AM  3           Here, Your Honor, we're dealing with ATMs.  And although
11:31AM  4   the information in this application is getting kind of old,
11:31AM  5   nonetheless, what may be produced in discovery may be much more
11:31AM  6   current.  Obviously, Diebold does not want information about how
11:31AM  7   its ATM machines work and how people could potentially hack them
11:31AM  8   to be disclosed without protection.
11:31AM  9           And so we would think that a protective order to keep
11:31AM 10   things secret would be appropriate.  Courts have dealt with this
11:31AM 11   issue before.  In fact, the case that was cited by the Patent
11:31AM 12   Office in their joint statement, which is the In re Mosher case,
11:31AM 13   was where the Court of Customs and Patent Appeals, which is
11:31AM 14   the -- excuse me -- the predecessor court to the Court of Appeals
11:31AM 15   for the Federal Circuit, was dealing with an issue like this,
11:31AM 16   where somebody was trying -- some third party was trying to gain
11:31AM 17   access to information about an appeal regarding a patent
11:32AM 18   application.
11:32AM 19           And the discussion by the Court is very good in terms of
11:32AM 20   saying it is the way the statutory scheme operates in that a
11:32AM 21   patent applicant has the right to have their application kept
11:32AM 22   secret until they are granted or at least have the opportunity to
11:32AM 23   be granted a patent, and then it's public.
11:32AM 24           And so we think a secrecy order would be appropriate and I
11:32AM 25   would hope we can agree on that.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

20

11:32AM  1   Thank you.
11:32AM  2           THE COURT:  All right.
11:32AM  3           MS. AUYANG:  Your Honor, may I just please say a couple of
11:32AM  4   points?
11:32AM  5           I don't know if Your Honor has ever had a patent case, but
11:32AM  6   just -- what I wanted to tell the Court was that the Patent
11:32AM  7   Office is divided into different sections, so I'm with the
11:32AM  8   General Counsel's Office, there's an Examining Corps and then
11:32AM  9   there's the Board.  The Examining Corps and the Board are
11:32AM 10   separate divisions.
11:32AM 11           And in fact -- so my point is that when the Board says
11:32AM 12   that certain claims seem patentable or they reverse the
11:33AM 13   examiner's rejection, it ultimately has to go back to the
11:33AM 14   Examining Corps and the Examining Corps is the corps that has the
11:33AM 15   ultimate authority to determine whether something's patentable.
11:33AM 16           So for example, even if Your Honor decided that it -- you
11:33AM 17   didn't agree with the Board decision and reversed those
11:33AM 18   rejections, it would still have to go back to the Patent Corps
11:33AM 19   for the Patent Corps to decide if there are in fact any new
11:33AM 20   rejections that can be made because we have an obligation, a
11:33AM 21   statutory obligation to only issue patentable subject matter.
11:33AM 22           And in fact in this case, we're seeking a remand because
11:33AM 23   we do have additional rejections that haven't been considered.
11:33AM 24   And as plaintiff's counsel pointed out, he's saying that it seems
11:33AM 25   unfair in this case to bring up additional rejections.  And

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

11:33AM 1  that's the point the Patent Office is making in that we are -- we
11:33AM 2  should in the first instance look at those rejections and, as
11:33AM 3  I've discussed with you, it would be a back and forth
11:33AM 4  correspondence once again with the applicant to address those
11:34AM 5  rejections. And that type of thing should take place before the
11:34AM 6  Patent Office and not in this Court.
11:34AM 7      On the issue of the protective order, we'd like to have
11:34AM 8  the opportunity to brief that because we feel that 35 U.S.C. 122
11:34AM 9  does not apply in a District Court action.
11:34AM 10     Thank you.
11:34AM 11     THE COURT: All right. Well, let me just go through a few
11:34AM 12 things that I believe are set out in your joint statement and see
11:34AM 13 if we're in agreement.
11:34AM 14     First, let me ask the plaintiff: You intend to file a
11:34AM 15 motion under 122?
11:34AM 16     MR. JOCKE: Your Honor, we will file a motion under
11:34AM 17 Rule 26 for a protective order to keep the file in the Patent
11:34AM 18 Office and any of the other things that pertain to the software
11:34AM 19 that operates the ATMs as secret, yes, sir.
11:35AM 20     THE COURT: The parties do not consent to a referral of
11:35AM 21 this case to a magistrate judge; is that right?
11:35AM 22     MR. PETERSON: That's correct, Your Honor.
11:35AM 23     THE COURT: Okay. And with respect to any amendment to
11:35AM 24 the pleadings or third party pleadings, you've requested -- I
11:35AM 25 guess you're in agreement that no pleadings will be permitted --

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

11:35AM 1  no amendments will be permitted after February 20th of next year.
11:35AM 2      You've discussed settlement, but you've reached no
11:35AM 3  agreement. How do you stand today on that? You've reached no
11:35AM 4  agreement, I take it?
11:35AM 5      MR. JOCKE: Your Honor, if you have the time to talk to
11:35AM 6  each party individually, I don't know, perhaps we could make some
11:35AM 7  progress. But again, I don't know if that's feasible.
11:35AM 8      THE COURT: Well, I wouldn't meet with the parties, but
11:35AM 9  what would happen is, if the parties are interested, we would
11:36AM 10 submit it to ADR. And how that works here is that I would enter
11:36AM 11 an order if the parties were in agreement. That order would be
11:36AM 12 sent up to our ADR unit. They would select a person who would be
11:36AM 13 involved. I would not know the name of that person. I would not
11:36AM 14 have any contact with that person whatsoever. You would be
11:36AM 15 dealing with that person.
11:36AM 16     Now, while it's at ADR, it would still be possible for the
11:36AM 17 case to proceed, for example, if there's discovery or whatever.
11:36AM 18 And then at some point, I would set a date when I would expect
11:36AM 19 some decision. And at some point, we would be advised whether
11:36AM 20 the case is settled or not settled and we would go from there.
11:37AM 21 So the Court would not get involved in any settlement
11:37AM 22 discussions.
11:37AM 23     MR. JOCKE: I understand.
11:37AM 24     THE COURT: But I take it at this point that isn't
11:37AM 25 anything that interests the parties?

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

11:37AM 1      MR. PETERSON: At this point, Your Honor, I think you're
11:37AM 2  right as far as the defendant is concerned. We do open -- we do
11:37AM 3  keep open the possibility for that at a later date, but at this
11:37AM 4  point, Your Honor, that's correct.
11:37AM 5      THE COURT: All right. Now, the parties feel that there
11:37AM 6  are some issues that may be resolved by summary judgment.
11:37AM 7      Just listening to the parties going back and forth,
11:37AM 8  would -- what is the approach to this case? Would there be a
11:37AM 9  motion filed at the beginning or would there be a motion filed at
11:37AM 10 the end with respect to any discovery? How are we going to
11:38AM 11 resolve the issue as to the nature of this case, whether it's
11:38AM 12 going to be a trial de novo or this is really just an
11:38AM 13 administrative proceeding? How do the parties intend to address
11:38AM 14 that?
11:38AM 15     MR. PETERSON: Well, Your Honor, as -- I think as we
11:38AM 16 contemplated in our joint statement, we had envisioned a certain
11:38AM 17 amount of discovery before we would file our dispositive motions
11:38AM 18 to clarify some issues through interrogatories and depositions.
11:38AM 19 And then at that point, we would file our dispositive motions.
11:38AM 20     MR. JOCKE: We don't know what the Patent Office's
11:38AM 21 contentions are with regard to -- we do not know why the Patent
11:38AM 22 Office would be asserting that the claims that the Board has
11:38AM 23 already indicated meet their requirements for patentability, what
11:39AM 24 they would be asserting on that. So we need to find that out
11:39AM 25 and, of course, would need to address it.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

11:39AM 1      It sounds like inherently one would need to put in some
11:39AM 2  evidence to address that, but we won't know until we get that
11:39AM 3  information in discovery. And that's one of the reasons why
11:39AM 4  discovery would be expected to take a little longer in that we
11:39AM 5  now need to find out what the Patent Office's contentions are.
11:39AM 6      THE COURT: All right. The parties have agreed to make
11:39AM 7  initial disclosures by January 23rd of next year; is that right?
11:39AM 8      MR. PETERSON: That's correct, Your Honor.
11:39AM 9      MR. JOCKE: Your Honor, if I may --
11:39AM 10     THE COURT: Why don't you just -- both of you, you can
11:39AM 11 stand close together.
11:39AM 12     MR. JOCKE: We would be making the disclosures, Your
11:39AM 13 Honor. Before we would put in documentation, we would appreciate
11:39AM 14 either getting a secrecy order in effect if we can agree to one;
11:40AM 15 if we cannot, then until a ruling was made on the extent of a
11:40AM 16 protective and secrecy order.
11:40AM 17     THE COURT: So here you're going to file a motion on that?
11:40AM 18     MR. JOCKE: It looks that way.
11:40AM 19     THE COURT: And when would we expect that motion?
11:40AM 20     MR. JOCKE: Probably by early January, Your Honor.
11:40AM 21     THE COURT: All right. And I note you have set forth a
11:40AM 22 limit as to the number of interrogatories that may be exchanged.
11:41AM 23     14 days after the Court rules with respect to the consent
11:41AM 24 order or the secrecy order, then you would exchange relevant
11:41AM 25 documents.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**Page 25**

11:41AM  1    What are "relevant documents"?
11:41AM  2        MR. JOCKE: Your Honor, the entire file of the Patent
11:41AM  3    Office, which is currently protected under 35 U.S.C. 122, and
11:41AM  4    then, as best I can determine, there may be documents related to
11:41AM  5    the creation of the invention itself that would be pertinent.
11:41AM  6        At this point, again, a lot of what's pertinent and what
11:41AM  7    we are in the position of proving depends on the Patent Office's
11:41AM  8    rejection, particularly of those claims that the Board did not
11:41AM  9    reject.
11:41AM  10       THE COURT: All right. Mr. Peterson, let me ask you, with
11:42AM  11   regard -- take a step back for a moment. Going back to the
11:42AM  12   so-called secrecy order, what's wrong with having the secrecy
11:42AM  13   order?
11:42AM  14       MR. PETERSON: Your Honor, if I understand --
11:42AM  15       THE COURT: It's sort of like maintaining the status quo,
11:42AM  16   I suppose, until certain issues are resolved. What's wrong with
11:42AM  17   that?
11:42AM  18       MR. PETERSON: If I understand the crux of your question,
11:42AM  19   Your Honor, beyond what's allowable by law, there may be some
11:42AM  20   equitable issues that concern the Court in terms of maintaining
11:42AM  21   the status quo, as the Court has mentioned.
11:42AM  22       Our position is that there may be -- well, we believe that
11:42AM  23   these issues that are before the Court today, that they are not
11:42AM  24   subject to a protective order because, one, they may have already
11:43AM  25   been released in certain areas to the public and it would be a

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**Page 26**

11:43AM  1    waste of time in that instance to protect them in any event; and
11:43AM  2    two, our approach is that once the -- once a potential patent
11:43AM  3    holder goes to Federal Court, the idea is that we would want that
11:43AM  4    to be a place of open forum. For that to happen, we would want
11:43AM  5    that to be place where the law applies to the patents that allow
11:43AM  6    them to be opened up for the public.
11:43AM  7        Now, to the degree that plaintiff can make an argument
11:43AM  8    that there isn't -- there hasn't been prior disclosures of this
11:43AM  9    information or that there would be some undue harm to the
11:43AM  10   plaintiff with regard to disclosing this information in the
11:44AM  11   context of a lawsuit, that's, of course, for the Court to decide.
11:44AM  12       But our position is that as of right now, we don't have
11:44AM  13   enough information to believe that this information is truly
11:44AM  14   secret in the sense that it's something that is under -- that has
11:44AM  15   been maintained as something that has been -- as a secret order
11:44AM  16   or as a secret patentable issue.
11:44AM  17       MS. AUYANG: Your Honor, the Patent Office -- it's our
11:44AM  18   policy that 35 U.S.C. 122 does not apply in District Court
11:44AM  19   actions and we have always thought that. And in fact, it's the
11:44AM  20   Department of Justice in their rules that the government, when
11:44AM  21   we're involved in an action, should -- it should be an open,
11:44AM  22   public forum. And so the applicant has chosen to sue us in
11:44AM  23   District Court and so this should be a public proceeding.
11:44AM  24       In addition, when an applicant sues us in the Federal
11:45AM  25   Circuit to try to obtain a patent, that proceeding is also not

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**Page 27**

11:45AM  1    secret and there are patent applicants there, so that proceeding
11:45AM  2    should in no way differ from this proceeding. And the plaintiff
11:45AM  3    hasn't shown why this particular application needs to be kept
11:45AM  4    confidential.
11:45AM  5        And that's why we would actually like the opportunity to
11:45AM  6    brief it before Your Honor. I think that would be the best way
11:45AM  7    than having us sort of randomly tell you comments about the
11:45AM  8    different rules, so Your Honor can have a better informed
11:45AM  9    decision.
11:45AM  10       MR. LaMARCA: I just wanted to add one point, Your Honor,
11:45AM  11   is that -- William LaMarca.
11:45AM  12       We have 50 to 60 appeals directly to the Federal Circuit
11:45AM  13   every year and every single one of those appeals is a review of a
11:45AM  14   Board decision and the administrative record. And I can't think
11:45AM  15   of a single one of them that had a protective order issued. In
11:45AM  16   other words, the Federal Circuit, just like this Court,
11:46AM  17   recognizes the court proceeding is a public proceeding and the
11:46AM  18   only instance --
11:46AM  19       THE COURT: Well, just because you have a protective order
11:46AM  20   doesn't mean it's not a public proceeding. We have a public --
11:46AM  21       MR. PETERSON: It's not --
11:46AM  22       THE COURT: We have protective orders in any number of
11:46AM  23   civil cases.
11:46AM  24       MR. LaMARCA: Absolutely, Your Honor. We understand that
11:46AM  25   in appropriate circumstances, a protective order is issued. We

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**Page 28**

11:46AM  1    understand that. We understand that this case would be no
11:46AM  2    different than any other case where the plaintiff would have to
11:46AM  3    come forth, meet the burden of showing why a protective order of
11:46AM  4    certain information would be required and this Court would then
11:46AM  5    grant that.
11:46AM  6        But as a per se matter, simply because matters --
11:46AM  7    applications are confidential between the PTO, this Court is not
11:46AM  8    bound by that statute. That's what the case law says. And in
11:46AM  9    general, there is no per se protective order automatically issued
11:46AM  10   simply because it's an appeal from an administrative proceeding
11:46AM  11   from the PTO. That's the point we're making, and that they would
11:46AM  12   have to meet the burden and we ought to have an opportunity to
11:46AM  13   respond to that and brief it for you.
11:46AM  14       THE COURT: All right. Now, the parties intend to call
11:47AM  15   expert witnesses in the case, is that right, depending upon how
11:47AM  16   the case proceeds?
11:47AM  17       MR. JOCKE: Right. It may depend.
11:47AM  18       THE COURT: But you may call expert witnesses in the case
11:47AM  19   and I understand that if that's the case, the plaintiffs would
11:47AM  20   disclose their witnesses in October 2006, the defendant would
11:47AM  21   disclose its witnesses in December of 2006.
11:47AM  22       Are those the dates that you had agreed to?
11:47AM  23       MR. PETERSON: Those are the dates --
11:47AM  24       THE COURT: Roughly?
11:47AM  25       MR. PETERSON: -- yes.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## 29

11:47AM 1    MR. JOCKE: Yes, Your Honor.
11:47AM 2    THE COURT: And then you would complete discovery, all
11:47AM 3  discovery, in March of 2007? Is that what you're --
11:47AM 4    MR. PETERSON: Well, Your Honor, with regard to that,
11:47AM 5  we -- that date was discussed among the parties and we did agree
11:48AM 6  to that date after consultation with the plaintiff in the sense
11:48AM 7  that the plaintiff suggested that date. We don't have a problem
11:48AM 8  with it, but we understand that that's a bit unusual as far as
11:48AM 9  the length of time for discovery.
11:48AM 10   THE COURT: It is lengthy. Why would you need so much
11:48AM 11 time for discovery?
11:48AM 12   MR. JOCKE: Well, the -- what's odd about this case,
11:48AM 13 again, Your Honor, is that it seems that the basis for rejection
11:48AM 14 of the patent application itself is in flux and so we need to
11:48AM 15 discover that in order to address it. It's not like we can pick
11:48AM 16 up with the Board decision, overcome those arguments, which we
11:48AM 17 think we can very readily address, and then proceed from there.
11:48AM 18        There are additional bases that the Patent Office would
11:48AM 19 like to raise and it will take time to get that information. And
11:48AM 20 so -- and we also anticipated that we would probably have some
11:48AM 21 disagreements along the way: Things related to the protective
11:49AM 22 order and also the scope of the information that can be
11:49AM 23 introduced.
11:49AM 24   THE COURT: All right. You anticipate filing dispositive
11:49AM 25 motions in May of 2006, prior to the completion of discovery, if

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## 30

11:49AM 1  there is discovery?
11:49AM 2    MS. AUYANG: Right. And in fact, Your Honor, as I
11:49AM 3  mentioned before, we plan on filing a motion to remand back to
11:49AM 4  the Patent Office to consider all of these different new
11:49AM 5  rejections that the office should have a first look at.
11:49AM 6    THE COURT: And when are you going to file that motion?
11:49AM 7    MS. AUYANG: We'd like to file it in the earlier part of
11:49AM 8  next year.
11:49AM 9    THE COURT: Because you're sort of -- it sounds to me like
11:49AM 10 you're saying that you don't need anything else except that
11:49AM 11 motion to remand it back. Is that what you're really saying?
11:49AM 12   MS. AUYANG: That's what we would like for Your Honor to
11:49AM 13 also agree with, yes, that if, in fact, the Patent Office should
11:50AM 14 look at these rejections in the first instance and have the
11:50AM 15 opportunity, with the applicant, to have a back and forth and
11:50AM 16 complete the record for Your Honor, I think that would be the
11:50AM 17 more appropriate course.
11:50AM 18   THE COURT: That goes back to, I guess, the original
11:50AM 19 question I raised. When would you expect to file that motion?
11:50AM 20   MS. AUYANG: Hopefully by February.
11:50AM 21   THE COURT: And that would be the motion to remand you're
11:50AM 22 referring to?
11:50AM 23   MS. AUYANG: Yes, Your Honor.
11:50AM 24   THE COURT: All right. I note that, I believe, the
11:50AM 25 parties have agreed to a dispositive motion; I guess this is in

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## 31

11:50AM 1  the case of discovery. They've agreed to a dispositive motion
11:50AM 2  60 days after the completion of discovery, which we roughly
11:51AM 3  calculate to be May of 2007; is that right?
11:51AM 4    MR. JOCKE: Yes, sir.
11:51AM 5    MR. PETERSON: That's correct, Your Honor.
11:51AM 6    THE COURT: And the parties would request oral argument,
11:51AM 7  but, as you know and I'm sure understand, you may or may not get
11:51AM 8  an oral argument. So don't leave anything out of your papers
11:51AM 9  assuming that you can touch upon it during oral argument because
11:51AM 10 there may not be one.
11:51AM 11        Anything else, counsel?
11:51AM 12   MR. PETERSON: Not from the defendant's side, Your Honor.
11:51AM 13   MR. JOCKE: No, Your Honor.
11:51AM 14   THE COURT: All right. When do the parties feel it would
11:52AM 15 be appropriate to, depending upon all you expect to do, to have a
11:52AM 16 further status hearing in this case?
11:52AM 17   MR. PETERSON: Well, normally, as you know, Your Honor, an
11:52AM 18 effective status hearing could be after discovery because at that
11:52AM 19 point, all the issues would have been fleshed out; we would have
11:52AM 20 by that point had a decision with regard to our motion to remand
11:52AM 21 clearly at that point.
11:52AM 22   THE COURT: Well, you won't engage, as I understand it, in
11:52AM 23 discovery until the Court has ruled on the issue of the remand?
11:52AM 24   MR. PETERSON: That is correct, Your Honor.
11:52AM 25   THE COURT: All right.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

## 32

11:52AM 1    MR. PETERSON: So I would imagine in this case, some time
11:53AM 2  after -- if the Court rules on -- when the Court rules on that
11:53AM 3  motion, perhaps a status conference would be set some time after
11:53AM 4  that.
11:53AM 5    THE COURT: All right. Counsel have anything else?
11:53AM 6    MR. JOCKE: No, sir.
11:53AM 7    MR. PETERSON: No.
11:53AM 8    THE COURT: All right. Thank you, counsel. It's been
11:53AM 9  very helpful for us to hear from you to have a better feel for
11:53AM 10 the case.
11:53AM 11        Counsel for the plaintiff, I understand you came down from
11:53AM 12 Ohio?
11:53AM 13   MR. JOCKE: Yes.
11:53AM 14   THE COURT: Is it as cold there as it is here?
11:53AM 15   MR. JOCKE: And colder and snowier.
11:53AM 16   THE COURT: What part of Ohio? Where is "Media"?
11:53AM 17   MR. JOCKE: Medina?
       18   THE COURT: Medina.
11:53AM 19   MR. JOCKE: It's near Akron.
11:53AM 20   THE COURT: It's where?
11:53AM 21   MR. JOCKE: It's near Akron.
11:53AM 22   THE COURT: Oh, okay. All right. Thank you, counsel.
11:53AM 23   ALL PARTIES PRESENT: Thank you, Your Honor.
       24   (Proceedings adjourned at 11:54 a.m.)

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

33

1 <u>C E R T I F I C A T E</u>

2

3          I, Scott L. Wallace, RDR-CRR, certify that the
foregoing is a correct transcript from the record of proceedings
4 in the above-entitled matter.

5          ----------------------------
         Scott L. Wallace, RDR, CRR
6        Official Court Reporter
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Scott L. Wallace, RDR, CRR**
**Official Court Reporter**

### 0
**05-1796** [1] - 1:3

### 1
**11:00** [1] - 1:6

### 2
**20** [1] - 1:6
**20001** [1] - 1:23
**2005** [1] - 1:6
**202.326.0566** [1] - 1:23
**20530** [1] - 1:20
**22314** [1] - 1:17
**231** [1] - 1:12

### 3
**330.721.0000** [1] - 1:13

### 4
**44256** [1] - 1:12

### 5
**555** [1] - 1:19
**571.272.9035** [1] - 1:17

### 6
**600** [1] - 1:16
**6814** [1] - 1:22

### 8
**8c43-a** [1] - 1:16

### A
**aided** [1] - 1:25
**Alexandria** [1] - 1:17
**Appearances** [1] - 1:10
**Attorney's** [1] - 1:18
**Ausa** [1] - 1:19
**Auyang** [1] - 1:15

### B
**Benton** [1] - 1:19
**Broadway** [1] - 1:12

### C
**Ca** [1] - 1:3
**Columbia** [1] - 1:1
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**Conference** [1] - 1:7
**Court** [3] - 1:1, 1:21, 1:22
**Courthouse** [1] - 1:22
**Crr** [1] - 1:21

### D
**Dc** [3] - 1:5, 1:20, 1:23
**December** [1] - 1:6
**Defendant** [2] - 1:6, 1:14
**District** [3] - 1:1, 1:1, 1:8
**Docket** [1] - 1:3
**Dudas** [1] - 1:5
**Dulany** [1] - 1:16

### E
**Esq** [4] - 1:11, 1:11, 1:15, 1:15

### G
**Garrett** [1] - 1:8
**Gregory** [1] - 1:19

### H
**Harold** [1] - 1:2
**Heather** [1] - 1:15
**Honorable** [1] - 1:8

### I
**Initial** [1] - 1:7

### J
**Jocke** [2] - 1:10, 1:11
**John** [1] - 1:8
**Jonathan** [1] - 1:5
**Judge** [1] - 1:8

### L
**Lamarca** [1] - 1:15

### M
**machine** [1] - 1:25
**Madison** [1] - 1:16
**Medina** [1] - 1:12

### N
**North** [1] - 1:19
**Nw** [1] - 1:19

### O
**Office** [3] - 1:14, 1:14, 1:18
**Official** [1] - 1:22

### P
**Patent** [1] - 1:14
**Patricia** [1] - 1:11
**Penn** [1] - 1:8
**Peterson** [1] - 1:19
**Plaintiff** [2] - 1:3, 1:10
**Proceedings** [1] - 1:25
**produced** [1] - 1:25
**Putman** [1] - 1:2

### R
**Ralph** [1] - 1:11
**Rdr** [1] - 1:21
**reported** [1] - 1:25
**Reporter** [2] - 1:21, 1:22
**Room** [1] - 1:22

### S
**Scott** [1] - 1:21
**shorthand** [1] - 1:25
**Solicitor** [1] - 1:14
**States** [3] - 1:1, 1:8, 1:18
**Status** [1] - 1:7
**Street** [1] - 1:19
**street** [1] - 1:16

### T
**Trademark** [1] - 1:14
**transcript** [1] - 1:25
**Transcript** [1] - 1:7
**transcription** [1] - 1:25

### U
**United** [3] - 1:1, 1:8, 1:18

### V
**Va** [1] - 1:17

### W
**Walker** [2] - 1:10, 1:11
**Wallace** [1] - 1:21
**Washington** [3] - 1:5, 1:20, 1:23
**West** [1] - 1:16
**William** [1] - 1:15