IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

HAROLD V. PUTMAN

Plaintiff

v.

JONATHAN W. DUDAS

Defendant

Case Number 1:05CV01796 JGP

Judge John Garrett Penn

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE, OR
IN THE ALTERNATIVE, DISMISS AND REMAND**

# OTE EXHIBIT 11

Walker & Jocke
231 South Broadway
Medina, Ohio 44256-2601
330 • 721 • 0000

EL820017069US

Walker
&
Jocke

a legal professional association

Ralph E. Jocke
Patent
&
Trademark Law

February 18, 2002

Board of Patent Appeals and Interferences
Commissioner for Patents
Washington, D.C. 20231

Re:    **Application Serial No.:**    **09/233,249**
       **Applicants:**                **Harold V. Putman**
       **Title:**                     **Automated Transaction Machine And Method**
       **Docket No.:**                **D-1086**

Sir:

Please find enclosed the Brief of Appellants pursuant to 37 C.F.R. § 1.192 in triplicate for filing in the above-referenced application.

Please charge the fee required with this filing ($320) and any other fee due to Deposit Account 09-0428 of InterBold.

Very truly yours,

Ralph E. Jocke
Reg. No. 31,029

CERTIFICATE OF MAILING BY EXPRESS MAIL

I hereby certify that this document and the documents indicated as enclosed herewith are being deposited with the U.S. Postal Service as Express Mail Post Office to addressee in an envelope addressed to Board of Patent Appeals and Interferences, Commissioner for Patents, Washington, D.C. 20231 this 27M day of February 2002.

El820017069US
Express Mail Label No.

Ralph E. Jocke

330 • 721 • 0000    330 • 225 • 1669    330 • 722 • 8446    rej@walkerandjocke.com
MEDINA           CLEVELAND           FACSIMILE           E-MAIL

231    South    Broadway,    Medina,    Ohio    U.S.A.    44256-2601

D-1086

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

| | | |
|---|---|---|
| In re Application of | ) | |
| **Harold V. Putman** | ) | Art Unit: **2162** |
| | ) | |
| Serial No.:   **09/233,249** | ) | Patent Examiner |
| | ) | **Jeffrey D. Carlson** |
| Filed:    **January 19, 1999** | ) | |
| | ) | |
| For:    **Automated Transaction Machine** | ) | |
| **And Method** | | |

Board of Patent Appeals and Interferences
Commissioner for Patents
Washington, D.C. 20231

## BRIEF OF APPELLANT'S PURSUANT TO 37 C.F.R. § 1.192

Sir:

The Appellant hereby submits his Brief pursuant to 37 C.F.R. § 1.192, in triplicate,

concerning the above-referenced Application.

## REAL PARTY IN INTEREST

The Assignee of all right, title and interest to the above-referenced Application is

Diebold, Incorporated, an Ohio corporation.

1

## RELATED APPEALS AND INTERFERENCES

Appellant believes that there are no related appeals or interferences pertaining to this matter.

## STATUS OF CLAIMS

Claims 1-56 are pending in the Application.

Claims 31-34 were rejected under 35 U.S.C. § 102(b) as being anticipated by Bosak.

Claims 12-22, 28-30, 41 and 43 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Bosak.

Claims 1-11, 23-27, 33-40, 42 and 44 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Rivett-Carnac in view of Bosak.

Claims 45-49 and 51 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Zeanah, et al. ("Zeanah").

Claims 50 and 52-56 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Zeanah in view of Bosak.

Claims 21, 22, and 41 were rejected under 35 U.S.C. § 112, second paragraph.

Claims 45 and 47 were objected to pursuant to 35 U.S.C. § 132.

These rejections were the only rejections present in the Office Action ("Action") dated October 19, 2001, which was made Final. Appellant appeals the final rejection of claims 1 through 56, inclusive. Copies of all pending claims are included in the attached Appendix.

2

## STATUS OF AMENDMENTS

A final rejection was made October 19, 2001. No amendments to the claims were requested to be admitted after the final rejection.

## SUMMARY OF INVENTION

Overview of the Invention

One of the embodiments of the present invention is directed to an automated transaction machine such as an automated teller machine (ATM) (3) (Figure 1) in which the hardware specific software components are decoupled from the human interface software components. As shown schematically in Figure 2, the ATM includes a computer (10) connected to a plurality of transaction function devices (30) which may include for example a cash dispenser and a depository. The ATM further includes a transaction machine interface software component (TMI) (18) operative in the computer and at least one event processor software component (16) operative in the computer. The TMI is operative responsive to command instructions (22) in one or more documents (20) to cause the computer to generate a user interface output through an output device (23) of the ATM. In addition, the TMI is operative to cause an event to be directed to an event processor responsive to instructions (221) (Figure 4) in a document (2) which specify the particular event processor to send the event. The event processor is operative to process the event and in response thereto control the operation of the ATM. For example, the event processor is operative responsive to the event to selectively cause the TMI to change the user

3

interface output generated by the computer. Further, the event processor is operative to cause the computer to operate the transaction function devices.

In an embodiment of the invention, the document includes a text-based document with command instructions conforming to an XML or other markup language format. Also a single document (20) may include a plurality of sets of XML tags (241-243) (Figure 10) which specify different user interface screens or outputs (1591-1593). Such sets of XML tags are delineated by page command instructions such as page tags (2291-2293) which segregate and identify the sets of XML tags. Each set of XML tags delineated by page tags may each include a command instruction (2211-2213) which specifies a specific event processor (161-163) that is operative to process events for the user interface screen generated from the corresponding set of XML tags.

Also in an embodiment of the invention, the TMI includes an API (28) (Figure 6) with a plurality of API subroutines or functions (281-286). The event processor is operative to call the API functions of the TMI to selectively retrieve information from the TMI related to the user interface output, and to cause the TMI to change features of the user interface output. The event processor is operative to process events and cause transaction function devices to operate responsive to the information retrieved from calls to the API functions of the TMI.

In further embodiments, the ATM may include multiple sets of output devices and input devices. The TMI is operative responsive to the same set of command instructions in a document (203) (Figure 9) to cause at least one computer of the ATM to generate user interface screens (1591, 1592) through each output device (141, 142) with different visual features (1521, 1522) responsive to the types of the output devices and the types of the input devices associated

4

with the output devices. Such different visual features may include different visual screen elements such as buttons or other visual objects which are selectable by the different types of input devices (page 19, line 17 to page 20, lines 3).

## CONCISE STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The questions presented in this appeal are:

1) Whether Bosak teaches every limitation and relationship recited in pending claims 31-34 so as to anticipate these claims pursuant to 35 U.S.C. § 102(a) by Bosak.

2) Whether Bosak teaches or suggests every limitation and relationship in claims 12-22, 28-30, 41 and 43 so as to render these claims obvious pursuant to 35 U.S.C. § 103(a).

3) Whether Rivett-Carnac in view of Bosak teaches or suggests every limitation and relationship in claims 1-11, 23-27, 33-40, 42 and 44 so as to render these claims obvious pursuant to 35 U.S.C. § 103(a).

4) Whether Zeanah teaches every limitation and relationship recited in pending claims 45-49 and 51 so as to render these claims obvious pursuant to 35 U.S.C. § 103(a).

5) Whether Zeanah, in view of Bosak, teaches every limitation and relationship recited in pending claims 50 and 52-56 so as to render these claims obvious pursuant to 35 U.S.C. § 103(a) over Zeanah in view of Bosak.

5

6)     Whether Appellant's claims 21, 22, and 41 are indefinite under 35 U.S.C. § 112,

second paragraph for failing to particularly point out and distinctly claim the

subject matter which applicant regards as the invention.

7)     Whether Appellant's claims 45 and 47 are not supported by the Specification

under 35 U.S.C. § 132.

## GROUPING OF CLAIMS

Each of Appellant's claims, 1-56 each constitute a separate group. Each of claims 1-56

recites at least one element, combination of elements, or step not found or suggested in the

Bosak, Rivett-Carnac, and Zeanah references, which patentably distinguishes the claims.

The rejected claims include nine independent claims (claims 1, 12, 23, 28, 31, 33, 45, 47,

and 52). Claims 2-11 depend from claim 1. Claims 13-22 and 41 depend from claim 12. Claims

24-27 depend from claim 23. Claims 29, 30 and 42 depends from claim 28. Claims 32, 43, and

44 depend from claim 31. Claims 34-40 depend from claim 33. Claim 46 depends from claim

45. Claims 48-51 depend from claim 47. Claims 53-56 depend from claim 52. All of the

rejected claims 1-56 are reproduced in the Appendix.

## ARGUMENT

In the Action from which this appeal has been taken, all the pending claims (1-56) were

rejected pursuant to: 35 U.S.C. § 102(b) with respect to Bosak;  35 U.S.C. § 103(a) with respect

6

Bosak alone, Rivett-Carnac in view of Bosak, Zeanah alone, and Zeanah in view of Bosak; 35 U.S.C. § 112, second paragraph; or 35 U.S.C. § 132.

Appellant traverses the rejections under Bosak, based on the Bosak reference not being prior art. Further, Appellant traverses all of the rejections on the grounds that Appellant's claims recite steps, features, and relationships which are neither disclosed nor suggested in the prior art, and because there is no teaching, suggestion, or motivation cited so as to produce Appellant's invention. Also, Appellant traverses the rejections on the grounds that all of the claims are supported by the Specification and all of the claims particularly point out and distinctly claim the subject matter which Appellant regards as his invention.

**The Applicable Legal Standards**

Anticipation pursuant to 35 U.S.C. § 102 requires that a single prior art reference contain all the elements of the claimed invention arranged in the manner recited in the claim. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548, 220 USPQ 193, 198 (Fed. Cir. 1983).

Anticipation under 35 U.S.C. § 102 requires in a single prior art disclosure, each and every element of the claimed invention arranged in a manner such that the reference would literally infringe the claims at issue if made later in time. *Lewmar Marine, Inc. v. Barient, Inc.*, 822 F.2d 744, 747, 3 USPQ2d 1766, 1768 (Fed. Cir. 1987).

Before a claim may be rejected on the basis of obviousness, the Patent Office bears the burden of establishing that all the recited features of the claim are known in the prior art. This is

7

known as *prima facie* obviousness.  To establish *prima facie* obviousness, it must be shown that all the elements and relationships recited in the claim are known in the prior art.  MPEP § 2142.

Absent a showing of a teaching, suggestion, or motivation to produce a claimed combination, an obviousness rejection is not proper.  *Panduit Corp. v. Denison Mfg. Co.*, 810 F.2d 1561, 1568, 1 USPQ2d 1593 (Fed. Cir. 1987).  *In re Newell*, 891 F.2d 899, 901, 902, 13 USPQ2d 1248, 1250 (Fed. Cir. 1989).

The teaching, suggestion, or motivation to combine the features in a prior art reference must be clearly and particularly identified in such prior art to support a rejection on the basis of obviousness.  It is not sufficient to offer a broad range of sources and make conclusory statements.  *In re Dembiczak*, 50 USPQ2d 1614, 1617 (Fed. Cir. 1999).  If the Office does not produce a *prima facie* case of obviousness, then the Appellant's are under no obligation to submit evidence of nonobviousness.  MPEP § 2142.

It is respectfully submitted that the cited references do not anticipate the pending claims because the claims specifically recite steps, features and relationships which are not disclosed or suggested by the references.  Further, it is respectfully submitted that the pending claims are not obvious in view of the cited references.  These references do not disclose all of the steps, features and relationships recited in the claims, and there is no showing of a teaching, suggestion or motivation in these references to produce Appellant's claimed combination.

8

**Bosak**

Bosak is directed to a discussion of the XML language. However, Bosak is not prior art. The Bosak reference appears to be an electronic or Internet publication retrieved from the URL:

**http://ibiblio.org/pub/sun-info/standards/xml/why/xmlapps.htm.**

Prior art disclosure on the Internet or on an online database can only be considered to be publicly available as of the date the item was publicly posted. As indicated in MPEP § 2128, "If the publication does not include a publication date (or retrieval date), it cannot be relied upon as prior art under 35 U.S.C. 102(a) or (b)."

In the first Office Action dated May 23, 2001, the Office asserted that a "Last revised" date of "1997.03.10." in the text of Bosak corresponds to a publication date. However the Bosak reference does not indicate that this "Last revised" date is a publication date or a retrieval date. In the second Office Action dated October 19, 2001, the Office asserts that a "Last Modified" date of 3/10/1997, associated with the Bosak reference, corresponds to a "posting (and therefore, publication) date." Appellant disagrees.

As shown in the "Page Info" printouts attached to the Action, the date associated with the Bosak HTML file is labeled "Last Modified". Such a "Last Modified" date corresponds to a date that someone has associated with the Bosak HTML file. Just because the date is associated with the file does not mean it is accurate. The Office has produced no evidence which can be used to establish when the Bosak HTML file was actually created or changed.

The "Last Modified" date is also not a publication date or a retrieval date, and therefore is not evidence that the Bosak HTML file was posted or publicly available on 3/10/1997. For

9

example, the URL where the Bosak reference is now located may not have even existed on the 3/10/1997 date the Office asserts that the Bosak HTML file was created or last modified. Even if the Bosak file existed on 3/10/1997 (and there is no evidence that it did), it may have not been publicly accessible. The Office has provided no evidence to corroborate that the URL associated with the Bosak HTML file was publicly available prior to Appellant's priority date of October 19, 1998 and filing date of January 19, 1999

In addition, the web site where the URL is located, suggests that the URL did not exist in its present form prior to May 24, 1999, which is after Appellant's priority and filing dates. A directory listing of the files currently found at the URL where the Bosak reference is located can be publicly displayed by pointing a browser to:

**http://www.ibiblio.org/pub/sun-info/standards/xml/why/**

This URL corresponds to the URL of the Bosak reference without the Bosak HTML file name: "xmlapps.htm". A copy of the web page associated with this URL is attached in the Appendix.

This directory listing displays the "Last Modified" file date associated with each of the files in this directory including the "Last Modified" file date of the Bosak reference. One of the entries in the directory listing corresponds to the "Parent Directory" for the portion of the URL named "/xml/". The "Last Modified" date for this portion of the URL is May 24, 1999 which is after Appellant's priority and filing dates. Thus, if the Office is relying on "Last Modified" dates to establish when the Bosak reference was posted, the date for the "/xml/" directory indicates that the Bosak reference was not posted at the present URL until May 24, 1999.

10

The inconsistencies between the "Last Modified" dates for portions of the URL and the Bosak HTML file further indicate that such dates cannot be relied upon to establish creation or publication dates. Such dates are readily falsified, not capable of corroboration and cannot be used to establish prior art status. Nothing of record indicates or in any manner establishes that the Bosak document existed, was posted on the Internet and publicly available as of the purported revision or last modified date of 3/10/1997.

The Office purports to show by way of example that uploading a file to a web site establishes its "Last Modified" date. Appellant disagrees. Transferring an HTML file to a specific directory or URL on a web server may or may not change its "Last Modified" date depending on the method used to transfer or copy the file. For example, copying a file on a web server from one directory to another directory using a standard Unix/Linux command such as "cp" or a DOS command such as "copy" will not change the "Last Modified" or file date associated with an HTML file.

As the Office has provided no evidence to show how the Bosak reference was transferred to the web site associated with the URL of Bosak, the Office has failed to establish that a "Last Modified" date for the Bosak reference corresponds to a publication date or even that the Bosak reference existed as of the date associated with the file. Furthermore, even if the uploading of the Bosak reference to a web site did establish its "Last Modified" date, such an occurrence does not prove that the URL associated with the Bosak reference was publicly available as of the "Last Modified" date. As a result, the Office has not met its burden of showing that the Bosak reference is prior art. As rejections of claims 1-44, 50, and 52-56 under 35 U.S.C. § 102(b) and

11

35 U.S.C. § 103(a) in the Action were based fully or in part on the Bosak reference, the rejections

of claims 1-44, 50, and 52-56 a should be withdrawn on this basis.

## Rivett-Carnac

Rivett-Carnac is directed to a set of library components and transaction capture

applications for developing a "dealing room system" (page 126, column 1). Rivett-Carnac

discusses an architecture or framework which defines a set of classes, available as components

for the developer to implement a transaction capture process. In general the framework separates

the GUI interface (presentation layer) and business rules. Programmers can use the framework

components as the basis for developing further reusable components.

## The Zeanah Reference

Zeanah et al. ("Zeanah") is directed to a system and method for delivering financial

services. The disclosure of Zeanah (both the patent and the provisional application) is

incomprehensible due to lack of details concerning operation of the system. Due to Zeanah's

lack of a disclosed operation, Appellant's has been required to speculate as to how the Zeanah

system could be made to operate. Therefore, the description of Zeanah herein or any comments

thereto shall not be construed as agreement or an admission by Appellant that the Zeanah system

is capable of operation or of achieving any of the functions carried out by Appellant's system.

Zeanah's arrangement appears to have a delivery system (12), intermediate plural remote

devices (14, 16, 18, 20, 24) and other computer data systems (e.g., a bank's internal computer

12

system). Zeanah requires that all of the remote devices (including ATMs) communicate directly

through the delivery system (12) in order to provide financial services to the remote devices

(Figure 1; col. 3, lines 63-67; col. 4, lines 54-56; col. 5, lines 44-60; col. 29, lines 20-35).

Zeanah's delivery system (12) acts like a host server. The remote devices pass along input data to

the delivery system (12) which then performs services on behalf of the remote devices.


### Claims 31-34 Recite Features Not Found in Bosak

In the Action claims 31-34 were rejected under 35 U.S.C. § 102(b) as being anticipated

by Bosak. These rejections are respectfully traversed. Appellant's response to these rejections is

based on the Office's referenced interpretations of Bosak. Thus, any change in the Office's

interpretation of this reference shall constitute a new ground of rejection.

As indicated previously, Appellant traverses these rejections on the grounds that Bosak is

not prior art. In addition Appellant traverses these rejections on the grounds that the Bosak

reference does not contain all the steps, features, and relationships of the claimed invention

arranged in the manner recited in the claims. The features recited in Appellant's claims

patentably distinguish over the Bosak reference.

It is respectfully submitted that Bosak does not anticipate the pending claims because the

claims specifically recite features and relationships which are not disclosed or suggested by

Bosak.

**Claim 31**

Claim 31 is an independent claim directed to a method of operating an automated transaction machine. The claim recites: a) operating a computer in the machine to receive at least one document; b) operating the computer to receive data in at least one style sheet; and c) providing an output through at least one visual output device on the machine responsive to operation of the computer. Claim 31 further recites that the at least one component of the output is produced responsive to the document, and at least one visual attribute of the component is produced responsive to the style sheet.

The Action alleges that Bosak teaches the basics of XML and style sheets. However, the Action does not show where Bosak discloses the elements and steps specifically recited in claim 31. For example claim 1 recites operating a computer in an automated transaction machine. Bosak does not disclose or suggest an automated transaction machine. Claim 31 recites operating the computer in the automated transaction machine to receive a document. Bosak does not disclose or suggest a computer in an automated transaction machine that receives a document. Claim 31 also recites operating the computer in the automated transaction machine to receive a style sheet. Bosak does not disclose or suggest a computer in an automated transaction machine that receives a style sheet. Claim 31 further recites providing an output through a visual output device on the automated transaction machine where at least one component of the output is produced responsive to the document, and at least one visual attribute of the component is produced responsive to the style sheet. Bosak does not disclose or suggest providing an output

14

on an automated transaction machine with components and visual attributes that are produced response to a document and a style sheet.

The Action asserts that the claims do not positively recite an automated transaction machine and that the claims only mention an automated transaction machine in the preamble. Appellant disagrees. Claim 31 specifically recites the steps: "operating a computer in the **machine** to receive at least one document" and "providing an output through at least one visual output device on the **machine** . . ." (emphasis added). The phrase "the machine" in this portion of the claim has antecedent basis with respect to the phrase "an automated transaction machine" recited in the preamble. Thus claim 31 recites the element of an automated transaction machine in the method steps which comprise the body of the claim.

Further, the Specification indicates at page 1, lines 9-23, that a common type of automated transaction machine used by consumers is an automated teller machine ("ATM"). ATMs enable customers to carry out banking transactions such as dispensing of cash, making deposits, transferring funds between accounts, payment of bills and account balance inquiries. The Specification further indicates that other automated transaction machines may allow customers to charge against accounts or to transfer funds. Other types of automated transaction machines may print or dispense items of value such as coupons, tickets, wagering slips, vouchers, checks, food stamps, money orders, scrip or travelers checks. Furthermore, the Specification states that "For purposes of this disclosure an automated transaction machine shall encompass any device which carries out transactions including transfers of value."

15

The Action alleges that "value" in this definition is quite broad and does not require currency. On this basis, the Action alleges that computer instructions when processed can be taken to be "transactions" and thus a processor which carries out instructions is taken to be an automated transaction machine. Appellant disagrees.

The Specification defines an automated transaction machine as a device which carries out transactions including transfers of value. The use of the word "including" indicates that the automated transaction machine may perform other transactions which presumably do not include value. However, for purposes of Appellant's disclosure an automated transaction machine is a device that must carry out at least some transactions including transfers of value.

Thus, a generic computer, as described in the Bosak reference, which is not disclosed as being an automated transaction machine, and is not disclosed as carrying out transactions including transfers of value, cannot be characterized as the automated transaction machine recited in the claims. If Appellant intended claim 31 to recite a generic computer, Appellant would not have recited "An automated transaction machine" in the preamble and "the machine" throughout the body of the claim. Further, claim 31 recites the separate element of "a computer" which is "in the machine". Given the Action's assertion that an automated transaction machine is a computer processor, such a phrase would correspond to reciting a computer in a computer processor. Such an interpretation does not correspond to a logical reading of the claims. Also such an interpretation is not supported by the Specification. Thus, the "automated transaction machine" recited in claim 31 does not read on a generic computer or processor which carries out computer instructions.

16

Bosak does not disclose each and every element of the claimed invention arranged in the manner recited in the claim, as is required to sustain the rejection. Hence, Appellant's claim 31 patentably distinguishes over the Bosak reference. Therefore, it is respectfully submitted that the 35 U.S.C. § 102(b) rejection has been overcome. It follows that claim 32 and claims 43 and 44 which depend from claim 31 are likewise allowable.

**Claim 32**

Claim 32 depends from claim 31. Claim 31 recites computer readable media bearing instructions which are operative to cause at least one computer in the automated transaction machine to cause the machine to carry out the method steps recited in claim 31. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 32 is further allowable on this basis.

**Claim 33**

Claim 33 is an independent claim directed to a method for operating an automated transaction machine. The method comprises: a) generating a user interface responsive to at least one document, at least one input device, and at least one output device; b) outputting the user interface through the output device; c) receiving an input from the input device; d) generating an event responsive to the input and the user interface; e) sending the event to a first event processor responsive to the document; f) modifying the user interface responsive to the event processor; and g) outputting the modified user interface through the output device.

17

As discussed previously Bosak is not prior art. Also, Bosak is not directed to the operation of an automated transaction machine. In addition, Bosak does not disclose or suggest generating a user interface responsive to: 1) a document; 2) an input device; and 3) an output device. Further, Bosak does not disclose or suggest sending an event to a first event processor responsive to the document. In addition Bosak does not disclose or suggest modifying the user interface responsive to the event processor and outputting the modified user interface through the output device.

The Action alleges that "event processing" is provided inherently by standard browsers, the programming (event processor) for it is packaged with the browser. However, Appellant's claim 33 does not recite and Appellant's Specification does not disclose the "event processing" of "standard browsers". Rather the Specification discloses a TMI (transaction machine interface) which is a software component that is independent of the event processors. Bosak does not disclose or suggest the use of separate software components which function as event processors. Although standard browsers may include integrated event processing for button clicks, such a feature does not imply the inherent existence of separate event processor software components which are sent events responsive to a document.

It is respectfully submitted that Bosak does not disclose or suggest the features and relationships that are specifically recited in claim 33. As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 33 is allowable for these

18

reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn. It follows that claims 34-40 which depend from claim 33 are likewise allowable.

### Claim 34

Claim 34 depends from claim 33 and further recites (h) processing the event with the event processor responsive to the user interface. As discussed previously Bosak does not disclose or suggest event processors. Further, Bosak does not disclose or suggest processing an event with an event processor responsive to a user interface. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 34 is further allowable on this basis.

### Claims 12-22, 28-30, 41, and 43 Are Not Obvious Over Bosak

In the Action claims 12-22, 28-30, 41 and 43 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Bosak. These rejections are respectfully traversed. Appellant's response to these rejections is based on the Office's referenced interpretation of Bosak. Thus, any change in the Office's interpretation of this reference shall constitute a new ground of rejection.

As indicated previously, Appellant traverses these rejections on the grounds that Bosak is not prior art. In addition Appellant traverses these rejections on the grounds that Appellant's claims recite steps, features and relationships which are neither disclosed nor suggested in the prior art, and because there is no teaching, suggestion or motivation cited so as to produce

19

Appellant's invention. The features recited in Appellant's claims patentably distinguish over the applied references.

## Claim 12

Claim 12 is an independent claim directed to an automated transaction machine apparatus. Claim 12 recites that the automated transaction machine apparatus includes a first computer of a first type. The first computer includes at least one first output device that is operative to provide at least one output to users of the first machine. The first computer further includes at least one first input device that is operative to receive at least one input from users of the machine. Claim 12 further recites that the apparatus includes a first transaction function device, first transaction machine interface software and a first instruction document in operative connection with the first computer. The first transaction function device is operative to carry out a transaction function. The first instruction document includes at least one command instruction. Claim 12 also recites that the first computer is operative responsive to at least one first input to the first input device, to cause the first transaction function device to carry out the transaction function. The first computer is further operative to generate a first output through the first output device responsive to the first input, the first transaction machine interface software and at least one command instruction in the first instruction document.

In rejecting claim 12 as well as claims 13-22, 28-30, 41, and 43, the Action asserts that it would have been obvious to one of ordinary skill at the time of the invention to have provided standard printers and driver software with the types of computers described by Bosak so that

20

users could make printouts of various screens. The Action asserts that a standard printer is taken to meet Appellant's transaction function device of these claims. The Action also asserts that any software, including print driver software is taken to be an instruction document. The Action further asserts that it would have been obvious to one of ordinary skill at the time of the invention to have employed print driver features to enable the web clients of Bosak to print screens/information. Appellant disagrees.

Claim 12 recites an automated transaction machine. Bosak does not disclose or suggest an automated transaction machine. In addition Bosak does not disclose or suggest an automated transaction machine with a transaction function device that is operative to carry out a transaction function. Further, with regard to the example cited in the Action, Bosak does not disclose or suggest print drivers with features that correspond to the instruction document recited in claim 12.

Bosak does not disclose or suggest an automated transaction machine with a computer that is operative responsive to at least one input to an input device, to cause a transaction function device to carry out the transaction function. Further, Bosak does not disclose or suggest that such a computer of the automated transaction machine is further operative to generate an output through the output device responsive to the first input, a first transaction machine interface software and at least one command instruction in the first instruction document.

It is respectfully submitted that Bosak does not disclose or suggest the features and relationships that are specifically recited in claim 12. As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there

21

is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 12 is allowable for these reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn. It follows that claims 13-22 and claim 41 which depend from claim 12 are likewise allowable.

**Claim 28**

Claim 28 is an independent claim directed to an automated transaction machine. Claim 28 recites that the automated transaction machine comprises at least one computer and at least one visual output device in operative connection with the computer in the automated transaction machine. The visual output device is operative to provide outputs to users of the machine. Claim 28 further recites that the automated transaction machine comprises a plurality of documents and at least one style sheet in operative connection with the computer. The computer is operative responsive to at least one of the documents to cause at least one visual output to be produced by the visual output device. Claim 28 also recites that at least one visual feature of the at least one visual output is produced responsive to the at least one style sheet.

As discussed previously, Bosak does not disclose or suggest an automated transaction machine. Further, Bosak does not disclose or suggest an automated transaction machine which includes a style sheet. In addition Bosak does not disclose or suggest an automated transaction machine which is operative to cause a visual output to be produced by a visual output device of the automated transaction machine responsive to a document. Bosak also does not disclose an

22

automated transaction machine with a visual feature of a visual output that is produced responsive to a style sheet.

As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 28 is allowable for these reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection has been overcome. It follows that claims 29-30 and claim 42 which depend from claim 28 are likewise allowable.


## Dependent Claims

Each of the dependent claims depends directly or indirectly from an independent claim, and it is asserted that these dependent claims are allowable on the same basis. Furthermore, each of the dependent claims additionally recites specific features and relationships that patentably distinguish the claimed invention over the applied art. The applied references do not disclose or suggest the recited steps, features and relationships of the dependent claims. There is no teaching, suggestion, or motivation to combine features of the applied references so as to produce the claimed invention. Thus, it is respectfully submitted that these dependent claims are further allowable.

**Claim 13**

Claim 13 depends from claim 12 and recites that the apparatus further comprises a second automated transaction machine. The second automated transaction machine includes a second computer of a second type different from the first type. The second computer includes at least one second output device that is operative to provide at least one output to users of the second machine, and at least one second input device that is operative to receive at least one input from users of the machine. The second automated transaction machine further includes a second transaction function device, second transaction machine interface software, and a second instruction document in operative connection with the second computer. The second transaction function device is operative to carry out the transaction function. The second instruction document is substantially identical to the first instruction document. Claim 13 further recites that the second computer is operative responsive to at least one second input to the second input device to cause the second transaction function device to carry out the transaction function. The second computer is further operative to generate a second output through the second output device responsive to the second input, the second transaction machine interface software and at least one command instruction in the second instruction document.

As discussed previously, Bosak does not disclose or suggest an automated transaction machine. In addition Bosak does not disclose or suggest an apparatus which includes both a first and a second automated transaction machine. Further, Bosak does not disclose or suggest a second automated transaction machine which includes a second transaction function device that is operative to perform the same transaction function as the first transaction function device of

24

the first automated transaction machine. Further, Bosak does not disclose or suggest first and second automated transaction machines which include first and second computers that are operative responsive to substantially identical instruction documents to generate first and second outputs through first and second output devices respectively. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 13 is further allowable on this basis.

**Claim 14**

Claim 14 depends from claim 13 and further recites that the first machine of the first type differs from the second machine of the second type in that the first output device comprises a different type of output device than the second output device. Bosak does not disclose or suggest two automated transaction machines which include different types of output devices. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 14 is further allowable on this basis.

**Claim 15**

Claim 15 depends from claim 13 and further recites that the first computer of the first type differs from the second computer of the second type in that the first computer includes a different type of operating system than the second computer. Bosak does not disclose or suggest two automated transaction machines which include computers with different types of operating

systems. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that the claim is further allowable on this basis.

## Claim 16

Claim 16 depends from claim 13 and further recites that the first computer of the first type differs from the second computer of the second type in that the first computer is operative to cause the first transaction function device to carry out the transaction function responsive to a first input that is different than the second input that is operative to cause the second computer to cause the second transaction function device to carry out the transaction function.

Bosak does not disclose or suggest two automated transaction machines which carry out the same transaction function with transaction function devices responsive to different inputs. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 16 is further allowable on this basis.

## Claim 17

Claim 17 depends from claim 13 and further recites that the first computer of the first type differs from the second computer of the second type in that the first input device comprises a different type of input device than the second input device. Bosak does not disclose or suggest two automated transaction machines which carry out a transaction function with transaction function devices responsive to inputs from different types of input devices. As nothing in the

applied art discloses or suggests this feature, it is respectfully submitted that claim 17 is further allowable on this basis.

**Claim 18**

Claim 18 depends from claim 14 and further recites that the first output device includes a character-based display device and the second output device includes a graphical display device. Bosak does not disclose or suggest two automated transaction machines, wherein one has a character based display device and the second output device includes a graphical display device. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 18 is further allowable on this basis.

**Claim 19**

Claim 19 depends from claim 17 and further recites that the first input device includes a key and the second input device includes a touch screen. As discussed previously, Bosak does not disclose or suggest two automated transaction machines which carry out a transaction function with transaction function devices responsive to inputs from different types of input devices. Bosak further does not disclose or suggest that the different types of input devices correspond to a key and a touch screen. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 19 is further allowable on this basis.

27

### Claim 20

Claim 20 depends from claim 12 and recites that the apparatus further comprises event processor software in operative connection with the first computer, wherein the event processor software is operative to cause the first transaction function device to carry out the transaction function responsive to an event, wherein the first transaction machine interface software is operative to generate the event responsive to the first input.

As discussed previously, Bosak does not disclose or suggest an automated transaction machine apparatus with event processor software. In addition Bosak does not disclose or suggest event processor software that is operative to cause a transaction function device to carry out a transaction function responsive to an event. Further, Bosak does not disclose or suggest transaction machine interface software that is operative to generate the event responsive to an input. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that the claim is further allowable on this basis.

### Claim 21

Claim 21 depends from claim 20 and further recites that the first transaction machine interface software includes at least one output indicative function, wherein when the first input is entered, the output indicative function is operative to indicate a value associated with at least one element included in an initial output through the first output device, wherein the event processor software is operative to call the output indicative function and is operative to cause the first

28

transaction function device to operate responsive to the event and the value indicated by the output indicative function.

Bosak does not disclose or suggest transaction machine interface software that includes an output indicative function that is operative to indicate a value associated with an element included in an output presented by the automated transaction machine. Bosak further does not disclose or suggest an automated transaction machine which includes an event processor that is operative to call an output indicative function of transaction machine interface software. Further, Bosak does not disclose or suggest that such an event processor is operative to cause a transaction function device to operate responsive to an event and a value indicated by the output indicative function. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 21 is further allowable on this basis.

**Claim 22**

Claim 22 depends from claim 21 and further recites that the event processor software responsive to the event and the output indicative function is operative to cause the first computer to generate an event response, wherein the first transaction machine software is operative to cause the computer to generate the first output responsive to the event response.

Bosak does not disclose or suggest an automated transaction machine that includes event processor software that is operative to cause a computer to generate an event response, responsive to an event and an output indicative function. In addition Bosak does not disclose or suggest an automated transaction machine that includes transaction machine software that is

29

operative to cause a computer to generate an output responsive to the event response. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 22 is further allowable on this basis.


**Claim 29**

Claim 29 depends from claim 28 and recites that the automated transaction machine further comprises at least one input device in operative connection with the computer, wherein the at least one visual feature of the at least one visual output is further produced responsive to the visual output device and the input device.

As discussed previously, Bosak also does not disclose or suggest an automated transaction machine with a visual feature of a visual output that is produced responsive to a style sheet. In addition Bosak does not disclose or suggest that such a visual feature is produced responsive to a visual output device and an input device. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 29 is further allowable on this basis.


**Claim 30**

Claim 30 depends from claim 29 and recites that the automated transaction machine further comprises at least one event processor. The at least one visual feature of the at least one visual output is further produced responsive to the event processor.

30

As discussed previously, Bosak does not disclose or suggest an automated transaction machine with an event processor. Also, Bosak does not disclose or suggest that the visual feature is further produced responsive to the event processor. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 30 is further allowable on this basis.

**Claim 41**

Claim 41 depends from claim 21 and further recites that the event processor software is operative to specify the at least one element when calling the output indicative function of the first transaction machine interface software.

As discussed previously, Bosak does not disclose or suggest an output indicative function of a transaction machine interface software or an event processor software. In addition Bosak also does not disclose or suggest an event processor that specifies at least one element of an initial output, when calling an output indicative function of the transaction machine interface software. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 41 is further allowable on this basis.

**Claim 43**

Claim 43 depends from claim 31 and further recites that the method comprises: receiving at least one input through at least one input device on the machine, wherein the input is associated with the at least one component of the output; and performing a transaction with at least one transaction function device on the machine responsive to the input and the document.

31

Bosak does not disclose or suggest receiving an input through an input device of an automated transaction machine. Further, Bosak does not disclose or suggest receiving with an automated transaction machine an input associated with a component of the output. Also Bosak does not disclose an automated transaction machine with a transaction function device. Further, Bosak does not disclose or suggest performing a transaction with at least one transaction function device of an automated transaction machine responsive to the input and a document.

The Action asserts that a standard printer is taken to meet Appellant's transaction function device and any software including print driver software is taken to be an instruction document. Appellant disagrees. Documents as described in the Specification include command instructions which are read by the transaction machine interface software (TMI) (Page 4, lines 16-18). Bosak itself describes documents such as XML documents which include tags that are interpreted by software applications. Bosak does not disclose or suggest that any software such as print driver software corresponds to a document.

Further, even if a print driver could be constructed as a document with command instructions that are read by a TMI, Bosak does not disclose or suggest such a print driver document. In addition, Bosak does not disclose an automated transaction machine which performs a transaction with a transaction function device responsive to such a print driver document or any other type of document or software. As nothing in the applied art discloses or suggests these features, it is respectfully submitted that claim 43 is further allowable on this basis.

32

## Claims 1-11, 23-27 and 33-40 Are Not Obvious Over Rivett-Carnac In View Of Bosak

In the Action claims 1-11, 23-27 and 33-40 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Rivett-Carnac in view of Bosak. These rejections are respectfully traversed. Appellant's response to these rejections is based on the Office's referenced interpretation of Rivett-Carnac and Bosak. Thus, any change in the Office's interpretation of these references shall constitute a new ground of rejection.

As indicated previously, Appellant traverses these rejections on the grounds that Bosak is not prior art. In addition Appellant traverses these rejections on the grounds that Appellant's claims recite features and relationships which are neither disclosed nor suggested in the cited art. Further, Appellant traverses these rejections on the grounds that there is no teaching, suggestion or motivation cited to combine the references so as to produce Appellant's invention.

Bosak does not disclose or suggest the steps, features, and relationships that are specifically recited in the claims. The Action relies on Bosak to disclose documents with command instructions such as XML tags. However, Bosak does not teach an automated transaction machine. Further, Bosak does not teach an automated transaction machine with at least one event processor software component.

The Action asserts that Rivett-Carnac teaches a framework for transaction processing systems for a bank where the user interface is decoupled from the business logic. However, Rivett-Carnac does not disclose or suggest an automated transaction machine. Further, Rivett-Carnac does not disclose or suggest instruction documents which include a plurality of command instructions.

33

The Action further asserts that it would have been obvious to one of ordinary skill at the time of the invention to have provided such a banking transaction system (Rivett-Carnac) with XML and style sheets as described by Bosak so that the data handling and transaction logic can be constructed without regard to output/interface, relying on style sheets to define the arrangement of the XML content. The Action asserts that such an approach would be obvious for an ATM cash dispensing machine so that many geographically dispersed machines (end users) can access the financial transaction system over a controlled network.

Appellant disagrees. Bosak cannot overcome the deficiencies of Rivett-Carnac as it does not disclose or suggest the recited features which are not found in Bosak. Furthermore, the Action is silent as to how Rivett-Carnac could be modified by Bosak to include the recited features and relationships. The Action is devoid of any prior art teaching, suggestion, or motivation for combining the features of references. Neither Rivett-Carnac nor Bosak alone or in combination disclose or suggest the steps, features, and relationships that are specifically recited in the claims.

The attempts to combine Rivett-Carnac with Bosak is clearly an attempt at hindsight reconstruction of Appellant's claimed invention, which is legally impermissible and does not constitute a valid basis for a finding of obviousness. *In re Fritch*, 22 USPQ2d 1780 (Fed. Cir. 1992). The rejections, which lack the necessary evidence and rationale, are based on knowledge gleaned only from Appellant's disclosure. For example, a reason provided for the motivation to combine is "so that many geographically dispersed machines (end users) can access the financial transaction system over a controlled network". However, the only hint of such reasoning comes

directly from Appellant's own novel disclosure. It follows that it would not have been obvious to one having ordinary skill in the art to have combined the references in the manner alleged. Furthermore, without a proper motivation to combine, which is the current situation, a rejection based obviousness is improper (MPEP § 2143.01). Thus, it is respectfully submitted that the 35 U.S.C. § 103(a) rejections should be withdrawn.

The applied references, taken alone or in combination, neither disclose nor suggest the recited steps, features, and relationships. Thus, it would not have been obvious to one having ordinary skill in the art to have combined the references to have produced the recited invention. The Office does not factually support any *prima facie* conclusion of obviousness. If the Office does not produce a *prima facie* case, then the Appellant's are under no obligation to submit evidence of nonobviousness (MPEP § 2142). Appellant's respectfully submit that such is the current situation. Therefore, the rejections are improper and should be withdrawn.

**Claim 1**

Claim 1 is an independent claim directed to an automated transaction machine. Claim 1 recites that the automated transaction machine comprises a computer operative to generate a user interface output and to receive a plurality of input signals. Claim 1 further recites that the machine includes at least one event processor software component, a transaction machine interface (TMI) and a document in operative connection with the computer. The document includes a plurality of command instructions. The TMI is operative responsive to the command instructions in the document to cause the computer to generate a user interface output. The TMI

35

is further operative responsive to the user interface output and at least one input signal received by the computer, to cause an event to be generated. In addition the TMI is further operative responsive to at least one of the command instructions to cause the event to be directed to an event processor. Claim 1 further recites that the event processor is operative responsive to the event to selectively cause the TMI to cause a change in the user interface output generated by the computer.

As discussed previously, Bosak is not prior art. Also, Bosak does not disclose or suggest an automated transaction machine. In addition Rivett-Carnac also does not disclose an automated transaction machine. Rather Bosak is directed to a discussion of the XML language and Rivett-Carnac is directed to a set of library components for programming a "dealing room system" (Page 126). Neither Rivett-Carnac nor Bosak discloses or suggests an automated transaction machine with the specific elements and features recited in claim 1.

In addition the Action shows no teaching, suggestion or motivation in the prior art to combine Rivett-Carnac and Bosak. Although Bosak discloses the XML language, Bosak does not include any teaching, suggestion, or motivation to create an automated transaction machine with both a transaction machine interface (TMI) software component and an event processor. Although Rivett-Carnac is directed to a programming architecture which separates the GUI interface (presentation layer) and business rules (page 126), Rivett-Carnac does not include any teaching, suggestion or motivation to create an automated transaction machine with a document that includes command instructions for generating both a user interface output and for directing an event to an event processor.

36

Even if it were possible to combine Bosak with Rivett-Carnac, such a theoretical combination would still not include all the elements and features recited in claim 1. For example, neither reference discloses a TMI that is operative to cause an event to be directed to an event processor responsive to a command instruction in a document. In addition, neither reference discloses a TMI that is operative to both direct an event to an event processor and generate a user interface output responsive to command instructions in a document. Further, neither reference discloses an event processor that is operative responsive to an event, which is directed to it by a TMI responsive to a command instruction in a document.

It is respectfully submitted that Rivett-Carnac and Bosak do not disclose or suggest the features and relationships that are specifically recited in claim 1. As nothing in the cited art discloses or suggests the features and relationships that are specifically recited, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 1 is allowable for these reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn. It follows that claims 2-11 which depend from claim 1 are likewise allowable.

**Claim 23**

Claim 23 is an independent claim directed to a method for operating an automated transaction machine. The method comprises: (a) reading an instruction document accessible to a computer with a TMI software component in operative connection with the computer, wherein the instruction document includes a plurality of command instructions; (b) controlling a user

interface output from the computer through operation of the TMI software component responsive to the command instructions; (c) receiving an input through an input device operatively connected with the computer; and (d) generating an event through operation of the TMI software component responsive to the input to the input device and the user interface being output from the computer. In addition claim 23 recites that the method comprises: (e) selectively directing the event through operation of the TMI software component to an event processor in operative connection with the computer responsive to the command instructions; (f) generating an event response through operation of the event processor responsive to the event; and (g) modifying the user interface output from the computer through operation of the TMI software component responsive to the event response.

As discussed previously, Bosak does not constitute prior art. Also, neither Rivett-Carnac nor Bosak discloses or suggests the steps, features, and relationships recited in the claim. Neither reference is directed to the operation of an automated transaction machine. Further, neither reference discloses or suggests operating an automated transaction machine by selectively directing an event through operation of a TMI software component to an event processor responsive to command instructions in an instruction document.

Neither reference discloses or suggests operating the automated transaction machine by generating an event response with the event processor, responsive to the event generated and directed by the TMI software component. Further, neither reference discloses or suggests operating an automated transaction machine by modifying a user interface output with the TMI software responsive to the event response generated by the event processor.

38

It is respectfully submitted that Rivett-Carnac and Bosak do not disclose or suggest the features and relationships that are specifically recited in claim 23. As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 23 is allowable for these reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn. It follows that claims 24-27 which depend from claim 23 are likewise allowable.

**Claim 33**

Claim 33 is an independent claim directed to a method for operating an automated transaction machine. The method comprises: a) generating a user interface responsive to at least one document, at least one input device, and at least one output device; b) outputting the user interface through the output device; c) receiving an input from the input device; d) generating an event responsive to the input and the user interface; e) sending the event to a first event processor responsive to the document; f) modifying the user interface responsive to the event processor; and g) outputting the modified user interface through the output device.

As discussed previously, Bosak is not prior art. Also, neither Rivett-Carnac nor Bosak discloses or suggests the steps, features and relationships recited in the claim. Further, neither reference is directed to the operation of an automated transaction machine. In addition neither reference discloses or suggests generating a user interface responsive to: 1) a document; 2) an

39

input device; and 3) an output device. Further, neither reference discloses sending an event to a first event processor responsive to the document.

It is respectfully submitted that Rivett-Carnac and Bosak do not disclose or suggest the features and relationships that are specifically recited in claim 33. As nothing in the cited art discloses or suggests the features and relationships that are specifically recited in the claim, and because there is no teaching, suggestion or motivation cited for combining features of the cited references so as to produce Appellant's invention, it is respectfully submitted that claim 33 is allowable for these reasons. Therefore, it is respectfully submitted that the 35 U.S.C. § 103(a) rejection should be withdrawn. It follows that claims 34-40 which depend from claim 33 are likewise allowable.

## The Dependent Claims

### Claim 2

Claim 2 depends from claim 1 and further recites that the event processor is operative responsive to the event, to generate an event response. The TMI is operative responsive to the event response to cause the change in the user interface output generated by the computer. As discussed previously, neither Rivett-Carnac nor Bosak discloses or suggests an automated transaction machine which includes an event processor that is operative to generate an event response responsive to an event, where the event is directed to the event processor responsive to command instructions in a document. As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 2 is further allowable on this basis.

40

**Claim 3**

Claim 3 depends from claim 1 and further recites that the TMI includes a plurality of subroutines which are operative to modify the user interface output.  The event processor is operative to selectively call at least one of the subroutines responsive to the event.  Neither Rivett-Carnac nor Bosak discloses or suggests an automated transaction machine with an event processor that is operative to selectively call subroutines of a TMI responsive to an event.  As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 3 is further allowable on this basis.

**Claim 4**

Claim 4 depends from claim 1 and recites that the machine further comprises a style sheet in operative connection with the computer, wherein the TMI is further operative to cause the computer to generate the user interface output responsive to the style sheet.  As discussed previously, neither reference discloses or suggests that an automated transaction machine include a style sheet.  As nothing in the applied art discloses or suggests this feature, it is respectfully submitted that claim 4 is further allowable on this basis.

**Claim 5**

Claim 5 depends from claim 1 and further recites that the command instructions include an XML instruction.  Neither Rivett-Carnac nor Bosak discloses or suggests an automated transaction machine with a TMI that is operative to direct an event to an event processor

41