IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| HAROLD V. PUTMAN<br><br>Plaintiff<br><br>v.<br><br>JONATHAN W. DUDAS<br><br>Defendant | Case Number 1:05CV01796 JGP<br><br>Judge John Garrett Penn |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE, OR
IN THE ALTERNATIVE, DISMISS AND REMAND**

**OTE EXHIBIT 12**

EV044451468US



Ralph E. Jocke
Patent
&
Trademark Law

May 20, 2002

Board of Patent Appeals and Interferences
Commissioner for Patents
Washington, D.C. 20231

    Re:    **Application Serial No.:**    09/233,249
           **Applicant:**    **Harold V. Putman**
           **Title:**    **Automated Transaction Machine And Method**
           **Docket No.:**    **D-1086**

Sir:

    Please find enclosed Applicant's Reply to the Examiner's Answer mailed March 21, 2002, in triplicate for filing in the above-referenced case.

    It is respectfully submitted that no fees are due upon the filing of this Reply, however should any fee be payable please charge the fee to Deposit Account No. 09-0428 of InterBold.

                                        Very truly yours,

                                        Ralph E. Jocke
                                        Reg. No. 31,029

### CERTIFICATE OF MAILING BY EXPRESS MAIL

    I hereby certify that this document and the documents indicated as enclosed herewith are being deposited with the U.S. Postal Service as Express Mail Post Office to addressee in an envelope addressed to Board of Patent Appeals and Interferences, Commissioner for Patents, Washington, D.C. 20231 this 20ᵗʰ day of May 2002.

EV044451468US
Express Mail Label No.                       Ralph E. Jocke

330 • 721 • 0000    330 • 225 • 1669    330 • 722 • 6446    rej@walkerandjocke.com
MEDINA    CLEVELAND    FACSIMILE    E-MAIL

231 South Broadway, Medina, Ohio U.S.A. 44256-2601

D-1086

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

| | |
|---|---|
| In re Application of<br>    Harold V. Putman | Art Unit: **2162** |
| Serial No.: **09/233,249** | Patent Examiner<br>    **Jeffrey D. Carlson** |
| Filed: **January 19, 1999** | |
| For: **Automated Transaction Machine And Method** | |

Board of Patent Appeals and Interferences
Commissioner for Patents
Washington, D.C. 20231

### REPLY BRIEF OF APPLICANT

Sir:

The Applicant hereby submits his Reply Brief, in triplicate, to the Examiner's Answer mailed March 21, 2002.

### Removal of 35 U.S.C. § 112 Rejection

In the Final Action dated October 19, 2001 claims 21, 22, and 41 were rejected under 35 U.S.C. § 112, ¶ 2. This rejection no longer appears in Examiner's Answer and therefore is regarded as being withdrawn by the Examiner pursuant to MPEP § 1208.

1

## Bosak Cannot Be Relied Upon As Prior Art

A central question in this Appeal is whether the Bosak reference is prior art. Bosak is directed to a discussion of the XML language. The Bosak reference appears to be an electronic or Internet publication retrieved from the URL:

**http://ibiblio.org/pub/sun-info/standards/xml/why/xmlapps.htm.**

MPEP § 2128 specifically states that "If the publication does not include a publication date (or retrieval date), it cannot be relied upon as prior art under 35 U.S.C. 102(a) or (b)." Bosak does not include a publication date or a retrieval date and therefore cannot be relied upon as a basis for rejecting the pending claims in the Application.

In the first Office Action dated May 23, 2001 the Office asserted that a "Last revised" date of "1997.03.10." in the text of Bosak corresponds to a publication date. However, the Bosak reference and the Office have provided no reliable evidence to indicate that this "Last revised" date is a publication date or a retrieval date. In the second Office Action dated October 19, 2001 the Office asserted that a "Last Modified" date of 3/10/1997, associated with the Bosak reference, corresponds to a "posting (and therefore, publication) date." However, as admitted in the Examiner's Answer at page 12, line 8, this date only corresponds to the date for the file "xmlapps.htm" which is accessed at the URL associated with the Bosak reference.

A file date of an HTML file is not a publication date or a retrieval date and thus cannot be relied upon as a basis for establishing a prior art date for a reference. The Office has supplied no evidence that the Bosak reference was publicly available or published on the Internet prior to the date the Examiner first retrieved the Bosak reference with his browser.

The Examiner in his Answer has attached a further HTML document downloaded from the web entitled "Extensible Markup Language (XML)". The document lists various Web related conferences including a conference in San Diego that allegedly occurred in March 1997. Associated with the description of the San Diego conference is a hyperlink which points to the URL associated with the Bosak reference. The Examiner in his Answer alleges that the "Extensible Markup Language (XML)" document provides evidence of the date of the Bosak article. Applicant disagrees.

As admitted in the Examiner's Answer the "Extensible Markup Language (XML)" document is not prior art. Further, the document includes numerous dates that are as recent as March 2002. Thus the new document presented in the Examiner's Answer can only be used by the Office to establish that the Bosak reference may have existed on the Internet as of March 2002. As this date is well after Applicant's priority date of October 19, 1998 and filing date of January 19, 1999, it cannot be used to establish that the Bosak reference is prior art.

Further the Examiner alleges in his Answer that the hyperlink and label in the "Extensible Markup Language (XML)" document indicates that the Bosak reference "was presented" at the San Diego Conference held in March 1997. Other than the label and hyperlink in the "Extensible Markup Language (XML)" document, the Examiner has shown no other evidence that the Bosak reference or any portion of the Bosak reference was handed out, displayed, presented or otherwise publicly disclosed at the San Diego Conference. Therefore, because the "Extensible Markup Language (XML)" is not considered prior art by the Examiner, it cannot be relied upon to prove the prior public use or disclosure of the Bosak reference at a San Diego Conference.

3

Further, the allegation in the Examiner's Answer that the Bosak reference "was presented" at the San Diego Conference is a new ground of rejection based on the alleged presentation or public use of the Bosak material prior to Applicant's priority and filing dates. This presentation or public use rejection is in addition to the allegation that the Bosak reference was published on the Internet and therefore qualifies as a prior art publication. Previous to the Examiner's Answer the rejections of the claims were based solely on the Bosak publication. The Examiner's Answer now includes the additional ground of rejection that the author of the Bosak reference presented material corresponding to "XML, Java, and the future of the web" at the March 1997 conference in San Diego. The "public use" allegation corresponds to a new ground of rejection that is not permitted in an Examiner's Answer, MPEP §1208.

37 C.F.R. § 1.193(1)(2) expressly prohibits the entry of a new ground of rejection in an Examiner's Answer. Under MPEP §1208 if a new ground of rejection is necessary, prosecution must be reopened. For this reason, Applicant has filed herewith a petition under 37 C.F.R. § 1.181(a) which requests that the Examiner's Answer be withdrawn.

As the Office has provided no reliable evidence to show that the Bosak reference was published or the Bosak material was presented prior to Applicant's priority or filing dates, the Office has not met its burden of showing that the Bosak reference is a prior art publication or that the Bosak presentation is a prior art public use under 35 U.S.C. § 102(b) and 35 U.S.C. § 103(a). As rejections of claims 1-44, 50, and 52-56 are based fully or in part on the Bosak publication and Bosak presentation, the rejections of claims 1-44, 50, and 52-56 should be withdrawn on this basis.

### Prima Facie Case of Obviousness
### Not Established By The Examiner

With respect to the combination of Rivett-Carnac and Bosak, Applicant in his Appeal Brief specifically pointed out that the Examiner has not shown how Rivett-Carnac could be modified to include the features of Bosak. In response, at page 14, lines 1-4, the Examiner's Answer asserts that the Examiner need not demonstrate the details of how such a combination of Rivett-Carnac and Bosak is carried out. Applicant disagrees.

When the motivation to combine the teachings of the references is not immediately apparent, **It is the duty of the examiner to explain why the combination of the teachings is proper**, MPEP §2143.03. Thus by asserting that the Examiner need not demonstrate the details of how such a combination is carried out, the Examiner has admitted that a Prima Facie Case of Obviousness has not been established.

In the Action claims 1-11, 23-27 and 33-40 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Rivett-Carnac in view of Bosak. The Examiner's Answer asserts that Rivett-Carnac teaches a framework for transaction processing systems for a bank where the user interface is decoupled from the business logic. However, Rivett-Carnac does not disclose or suggest an automated transaction machine. Further, Rivett-Carnac does not disclose or suggest instruction documents which include a plurality of command instructions.

The Examiner's Answer further asserts that it would have been obvious to one of ordinary skill at the time of the invention to have provided such a banking transaction system (Rivett-Carnac) with XML and style sheets as described by Bosak so that the data handling and transaction logic can be constructed without regard to output/interface, relying on style sheets to define the arrangement of the XML content. The Examiner's Answer asserts that such an

5

approach would be obvious for an ATM cash dispensing machine so that many geographically dispersed machines (end users) can access the financial transaction system over a controlled network.

Applicant disagrees. Bosak cannot overcome the deficiencies of Rivett-Carnac as it does not disclose or suggest the recited features which are not found in Bosak. Furthermore, the Examiner's Answer has failed to show how Rivett-Carnac could be modified by Bosak to include the recited features and relationships. The Examiner's Answer is devoid of any prior art teaching, suggestion, or motivation for combining the features of references. Neither Rivett-Carnac nor Bosak alone or in combination disclose or suggest the steps, features, and relationships that are specifically recited in the claims.

The attempt to combine Rivett-Carnac with Bosak is clearly an attempt at hindsight reconstruction of Applicant's claimed invention, which is legally impermissible and does not constitute a valid basis for a finding of obviousness. *In re Fritch*, 22 USPQ2d 1780 (Fed. Cir. 1992). The rejections, which lack the necessary evidence and rationale, are based on knowledge gleaned only from Applicant's disclosure. For example, a reason provided for the motivation to combine is "so that many geographically dispersed machines (end users) can access the financial transaction system over a controlled network". However, the only hint of such reasoning comes directly from Applicant's own novel disclosure. It follows that it would not have been obvious to one having ordinary skill in the art to have combined the references in the manner alleged. Furthermore, without a proper motivation to combine, which is the current situation, a rejection based on obviousness is improper (MPEP § 2143.01). Thus, it is respectfully submitted that the 35 U.S.C. § 103(a) rejections should be withdrawn.

The applied references, taken alone or in combination, neither disclose nor suggest the recited steps, features and relationships. Thus, it would not have been obvious to one having ordinary skill in the art to have combined the references to have produced the recited invention. The Office does not factually support any *prima facie* conclusion of obviousness. If the Office does not produce a *prima facie* case, then the Applicant is under no obligation to submit evidence of nonobviousness (MPEP § 2142). Applicant respectfully submits that such is the current situation. Therefore, the rejections are improper and should be withdrawn.

### Applicant Respectfully Takes Issue With Many Assertions in the Answer

Applicant stands steadfastly to the positions stated in his Brief. These positions are not repeated herein for the sake of brevity, however, there are several statements in the Answer that deserve to be addressed specifically.

For example, many of Applicant's claims recite an "automated transaction machine." The Specification indicates at page 1, lines 9-23, that a common type of automated transaction machine used by consumers is an automated teller machine ("ATM"). ATMs enable customers to carry out banking transactions such as dispensing of cash, making deposits, transferring funds between accounts, payment of bills and account balance inquiries. The Specification further indicates that other automated transaction machines may allow customers to charge against accounts or to transfer funds. Other types of automated transaction machines may print or dispense items of value such as coupons, tickets, wagering slips, vouchers, checks, food stamps, money orders, scrip or travelers checks. Furthermore, the Specification states that "For purposes of this disclosure an automated transaction machine shall encompass any device which carries out transactions including transfers of value."

In the Examiner's Answer, it is argued that any computer instructions when processed can be taken to be "transactions", and therefore a computer which carries out instructions automatically is taken to be an automated transaction machine. Applicant disagrees.

The Specification defines an automated transaction machine as a device which carries out transactions including transfers of value. The use of the word "including" indicates that the automated transaction machine may perform other transactions which presumably do not include value. However, for purposes of Applicant's disclosure an automated transaction machine is a device that must carry out at least some transactions including transfers of value.

Thus, a generic computer, as described in the Bosak reference, which is not disclosed as being an automated transaction machine, and is not disclosed as carrying out transactions including transfers of value, cannot be characterized as the automated transaction machine recited in the claims. With reference to claim 31, if Applicant intended the claim to recite a generic computer, Applicant would not have recited "An automated transaction machine" in the preamble and "the machine" throughout the body of the claim. Further, claim 31 recites the separate element of "a computer" which is "in the machine". Given the assertion in the Examiner's Answer that an automated transaction machine is a computer, such a phrase would correspond to reciting a computer is in a computer.

The Examiner's Answer attempts to refute this logic at page 13, lines 1-3, by suggesting that Applicant's broad definition of the transaction machine containing a computer can be met by a processor inside a computer case. However, such an analogy would imply that the "automated transaction machine" is a computer case and not a computer as previously asserted in the Examiner's Answer. Such an interpretation does not correspond to a logical reading of the claims. Also such an interpretation is not supported by the Specification. Thus, the "automated

8

transaction machine" recited in the claims such as claim 31 does not read on a generic computer or processor which carries out computer instructions.

The Examiner's Answer argues that a standard browser may include integrated event processing for button clicks. However, Applicant's claims do not recite a standard browser for processing button clicks. Rather Applicant's invention is directed to an automated transaction machine that includes separate event processor software components which are sent events responsive to a document. At page 13, lines 9-15, the Examiner's Answer indicates that the Examiner does not see the existence of separate event processor software component language in the claims. However, claim 1 clearly recites that the automated transaction machine includes the separate elements of at least one event processor software component, a transaction machine interface (TMI) and a document in operative connection with the computer. Thus Applicant's claims recite features such as event processor software components which are not found in the hypothetical standard browser described in the Examiner's Answer.

In addition Applicant denies the allegation in the Examiner's Answer that Applicant asserted that it would have been obvious to one of ordinary skill at the time of the invention to have included printers and the requisite printer driver to operate the printers. This assertion was made by the Examiner in the Action dated October 19, 2001 when arguing that any software, including print driver software, is taken to be an instruction document as recited in the claims.

Applicant disagrees with this assertion. Neither Applicant's claims nor the Specification recite or define an instruction document as being a printer driver. Further neither Bosak or any of the cited references define an instruction document as being a printer driver. Further the ordinary meaning of the term "instruction document", even in the context of the computer arts, does not encompass a printer driver software. Thus the Examiner's hypothetical printer driver

9

software example does not establish that the features and elements recited in Applicant's claims are disclosed or suggested in the prior art.

### Features Recited in Claims 45 and 47 Are Supported by the Specification

The Examiner's Answer maintains the objection of claims 45 and 47 pursuant to 35 U.S.C. § 132. It is respectfully submitted that claims 45 and 47 do not introduce new matter into the disclosure of the invention and each of these claims is supported by the original specification and original claims.

Claims 45 and 47 are similar to claim 17 of the original claims which indirectly depends from claims 12 and 13. Like claim 17, claims 45 and 47 recite at least one output or display device associated with a first input device of a first type and a second input device of a second type different than the first type. Like claim 17, claims 45 and 47 further recite that a first user interface is output through the at least one first output device responsive to a set of command instructions; and a second user interface is output through the at least one output device responsive to the set of command instructions. In addition, as with claim 17, claims 45 and 47 recite that at least one transaction function device is operative responsive to a first input from the first input device; and the at least one transaction function device is operative responsive to a second input from the second input device.

Further, as disclosed in the Specification, claim 45 recites that the first user interface is output when the first input device of the first type is enabled; and the second user interface is output when the second input device of the second type is enabled. Also as disclosed in the Specification, claim 47 recites that the first user interface screen includes at least one first visual element adapted for selection using the first type of input device, and the second user interface

screen includes at least one second visual element adapted for selection using the second type of input device.

The Examiner's Answer asserts that these features of claims 45 and 47 could not be found in the Specification. Applicant disagrees. Support for these features and relationships is found in the Specification, for example at page 19, line 17 to page 20, lines 3. Here the Specification discloses that embodiments of the present invention enables the use of substantially identical instruction documents to control the interfaces and devices of ATMs with different types of input devices such as function keys, keys in keypads or keyboards, touch screens or audio inputs. In addition Figure 9 shows an example of two different user interface views (1591, 1592) with different visual elements (1521, 1522) which are produced responsive to a common set of instructions (203) and responsive to different corresponding devices found in ATMs. Further claims 45 and 47 correspond to claim 17 which was not objected to and was included with the Application as filed.

In addition the Examiner's Answer asserts with respect to claim 45, that two input devices operatively connected to the same computer does not have original support in the Specification. However, the Specification at page 3, lines 19-21, clearly states that an automated transaction machine includes a computer and the computer is defined as including input devices (plural) such as a keypad or touchscreen. Further Figure 1 and the Specification at page 7, lines 18-19, clearly discloses an ATM with multiple input devices (12) such as function keys (8), a keypad (12), a touch screen (9), and a card reader (7). In addition, with reference to Figure 2 the Specification states at page 8, lines 1-4, that the computer (10) includes at least one input device

21 and that the input devices may be of different types as previously discussed with reference to ATM (3) in Figure 1.

It is respectfully submitted that claims 45 and 47 are supported by the original specification and satisfy the requirements of 35 U.S.C. § 132.

## Conclusion

The evidence of record and the statutory tests all suggest that Applicant's claimed invention is novel and unobvious. Allowance of all the pending claims is respectfully requested.

Respectfully submitted,

Ralph E. Jocke          Reg. No. 31,029
231 South Broadway
Medina, Ohio 44256
(330) 721-0000